# Exhibit 6

**ORDER NO. 2023-008**

| | | |
|---|---|---|
| **IN THE MATTER OF:** | § | **BEFORE:** |
| | § | |
| **NEXO CAPITAL INC.** | § | **THE BANKING** |
| | § | **COMMISSIONER OF TEXAS** |
| | § | |
| **GEORGE TOWN, CAYMAN ISLANDS** | § | **AUSTIN, TRAVIS COUNTY, TEXAS** |

**CONSENT ORDER**

On this day, in the matter of Nexo Capital Inc. (Respondent) was submitted to me, Charles G. Cooper, Banking Commissioner (Commissioner) of the State of Texas, for consideration and action.

1. Respondent is a George Town, Cayman Islands based fintech company that provides virtual currency-related products and services.

2. The Texas Department of Banking (Department) has jurisdiction over Respondent and the subject matter of this proceeding pursuant to *Texas Finance Code* (Finance Code) Chapter 151 (Chapter 151). The Commissioner has the authority to issue this Consent Order (Order) and to assess administrative penalties pursuant to Finance Code §§ 151.706 and 151.707.

3. Respondent has been properly notified of its right to an administrative hearing under Chapter 151.

4. The undersigned representative of Respondent has full authority to enter into and bind Respondent to the terms and conditions of this Consent Order.

5. The statutory provisions at issue in this matter include, but are not limited to, Finance Code §§ 151.301, 151.302, 151.702, 151.706, and 151.707.

6. Any violation of this Order could subject Respondent to additional regulatory or enforcement actions authorized by Chapter 151 and other provisions of Texas law. Nothing in this Order diminishes the regulatory or enforcement powers of the Department, the Commissioner, or the Finance Commission of Texas under Chapter 151 or other applicable law.

7. For purposes of this proceeding, Respondent knowingly and voluntarily waives:

Consent Order                                                                                                 Page 1

a.   Service upon Respondent of this Order;

b.   The right to present defenses to the allegations in this proceeding;

c.   Notice and hearing prior to imposition of this Order;

d.   The filing of proposed findings of fact and conclusions of law;

e.   The issuance of a proposal for decision by an administrative law judge;

f.   The filing of exceptions and briefs with respect to such proposal for decision;

g.   Any review of this Order by the Texas Finance Commission; and

h.   Judicial review of this Order as provided by *Texas Government Code* § 2001.171 et seq., and any other challenge to the validity of this Order.

8.   Respondent and the Commissioner agree to this Order solely for the purpose of this proceeding, and without Respondent admitting or denying any violations of law or regulations. This Order does not constitute an admission by Respondent that Chapter 151 or a rule adopted, or order issued under Chapter 151 has been violated.

9.   The Commissioner has considered this matter and finds as follows:

a.   Respondent provides retail customers with a number of products and services involving the exchange, transfer, custody, and/or issuance of fiat currency and sovereign currency-backed stablecoins.

b.   Under Finance Code § 151.301(b)(4), money transmission means "the receipt of money or monetary value by any means in exchange for a promise to make the money or monetary value available at a later time or different location." The term includes, "selling or issuing stored value…" The Finance Code defines engaging in the business of money transmission as receiving compensation or expecting to receive compensation, directly or indirectly, for conducting money transmission. Finance Code § 151.302(b). The Department has determined

Consent Order                                                                                                           Page 2

that the Respondent has engaged in licensable money transmission because Respondent receives a customer's fiat currency or stablecoins in exchange for a promise to make them available at a later time. Moreover, Respondent has engaged in licensable activity by issuing a stored value product in the form of sovereign currency-backed stablecoins.

c.  On December 29, 2022, Respondent informed the Department of its wishes to withdraw its pending temporary license application due to its withdrawal from the US market.

d.  On January 19, 2023, Respondent agreed to the NASAA Working Group Multistate Term Sheet (Term Sheet) which, in part, requires payment of up to $22,500,000 in settlement payments to 53 state jurisdictions for claims relating to unauthorized securities and money transmission activity.

e.  Respondent affirmed that as of January 26, 2023, Respondent ceased signing up new Texas customers and ceased accepting new funds from existing Texas customers. Respondent further disabled the Exchange Service functionality in Texas, other than for the sole purpose of allowing customers to (i) exchange exotic digital assets to more readily available digital assets, or (ii) sell digital assets for cash, in each case so that a customer can withdraw its funds.

f.  Finance Code § 151.302(a) provides that "a person may not engage in the business of money transmission or advertise, solicit, or hold itself out as a person that engages in the business of money transmission" without a license unless it is an authorized delegate of a license holder, is excluded from licensure under Chapter 151, or has been granted an exemption under Chapter 151.

g.  As described above, the Department has concluded that: (i) Respondent is conducting money transmission in Texas; (ii) Respondent is neither licensed by the Department nor determined by the Department to be excluded from licensure under Chapter 151; and (iii) Respondent is

Consent Order                                                                                                          Page 3

not an authorized delegate of a license holder. Consequently, the Commissioner finds that Respondent has violated Finance Code § 151.302.

h.   As required by Finance Code § 151.707(d), the Commissioner has considered the seriousness of the violations, Respondent's compliance history, and Respondent's good faith in attempting to comply with Chapter 151.

i.   Based on these findings and based on the representations made by Respondent as to the volume of transactions and length of time it has been conducting an unlicensed money transmission business in Texas, the Commissioner finds that a penalty of $212,464.15 is appropriate.

10.   Respondent has agreed to comply with the terms that are set out in the Order below.

11.   Nothing in this Order shall prohibit Respondent from obtaining a money transmission license from the Department in the future.

12.   This Order does not restrict the Department with respect to any enforcement action or other recourse regarding any other violations by Respondent not now known to the Department that come to the attention of the Department. Nothing herein shall be construed to limit Respondent's right to contest any future finding or determination of non-compliance.

**Order**

It is hereby ORDERED, ADJUDGED, and DECREED that:

1.   Respondent will pay to the Department an administrative penalty in the amount of $212,264.15.

a.   Payment of the administrative penalty shall be made in accordance with the following:

i.   $70,754.72 within 7 days of the effective date of this Order;

ii.   $47,169.81 within 90 days of the effective date of this Order;

iii.   $47,169.81 within 180 days of the effective date of this Order; and

iv.   $47,169.81 within 270 days of the effective date of this Order.

2.  On or before March 15, 2023, Respondent will notify all Texas customers that they are required to withdraw the entirety of their assets from the Nexo platform by April 1, 2023; this notice shall explain in reasonably clear, plain language the customers' withdrawal options and identify that unclaimed assets can become subject to Texas abandoned property laws. This notification must be made in writing, and a copy of the notice must be sent contemporaneously to the Department.

3.  Respondent will process all withdrawal orders that are received until such time as the assets are returned or escheated pursuant to chapters 72 and 74 of the Texas Property Code.

    a.  Any customer funds not voluntarily withdrawn by April 1, 2023 will be segregated from other assets under the management and control of Respondent in "Legacy Accounts." Such funds are for unclaimed digital assets of customers and will not be used for any purpose other than to return to such customers or to be escheated in accordance with applicable law.

    b.  By April 1, 2023, all customer funds held by Respondent shall be free of counterparty obligations, and after that date Respondent will not convert, pledge, rehypothecate, sell, lend, stake or otherwise transfer, dispose of or use any amount of customer funds. No interest will accrue in or otherwise be applied to Legacy Accounts.

    c.  Respondent will ensure Legacy Account holders have access to their Legacy Accounts for the sole purpose of making withdrawals by any such Legacy Account holder or their representative. Withdrawals may be in the form of transfers of digital assets to personal wallets or by selling the digital assets and transferring the fiat proceeds, at the discretion of the Legacy Account holder.

d.  Respondent shall comply with all laws and applicable regulations relating to unclaimed virtual assets, including without limitation chapters 72 and 74 of the Texas Property Code.

4.  Respondent will provide the Department with progress reports regarding the status of its withdrawal as it pertains to Texas customers, including outstanding amounts held in Legacy Accounts, starting April 15, 2023, and then within 45 days of each calendar quarter (e.g., quarters ending March 31, June 30, September 30, and December 31) thereafter with respect to any Texas customer funds that remain in Legacy Accounts until all such funds have been returned or escheated.

**Effective Date**

This Order against Respondent is effective on the date signed by the Commissioner and is final and non-appealable as of that date.

Signed on this 3rd day of March, 2023.

/s/ Charles G. Cooper
Charles G. Cooper
Commissioner, Department of Banking

**AGREED AS TO FORM AND SUBSTANCE**

Nexo Capital Inc.

/s/Antoni Trenchev
By: Antoni Trenchev

Date: March 3, 3023

**APPROVED AS TO FORM:**

/s/ Marcus Adams
Marcus Adams
Deputy General Counsel
Texas Department of Banking

Date: March 3, 2023