# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| PETER FAGAN, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Cause No. 4:24-cv-00466 |
| | § | |
| NEXO CAPITAL, INC. and ANTONI | § | |
| TRENCHEV, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Peter Fagan ("Dr. Fagan") files this First Amended Complaint against Defendants Nexo Capital, Inc. ("Nexo Capital") and Antoni Trenchev (collectively, "Defendants") and alleges the following:

### INTRODUCTION

1.     This is a simple case, despite any complexities that may surround Nexo Capital's corporate forms and business model. In short, Defendants—the operators of an international cryptocurrency platform—stole assets worth millions of dollars from Dr. Fagan, an occupational medicine specialist from a small town in Texas.

2.     Dr. Fagan opened an account with Nexo Capital and purchased its Earn Interest Product ("EIP"). The EIP allows investors to tender certain cryptocurrency assets to Nexo Capital, which Nexo Capital then deposits into interest-yielding accounts.

3.     As of March 2022, Nexo Capital's EIP had 112,000 United States investors and $2.7 billion in assets from United States investors.

4. On January 19, 2023, the Securities Exchange Commission ("SEC") found that Nexo Capital's EIP was an unregistered security and ordered Nexo Capital to (1) pay $45 million in fines and (2) cease all business with United States investors by April 1, 2023.

5. In the month leading up to the April 1, 2023 deadline, Nexo Capital methodically transferred millions of dollars' worth of Dr. Fagan's assets to accounts that Dr. Fagan cannot access. In a thinly veiled attempt to disguise this theft, Nexo Capital locked Dr. Fagan out of his account until May 2023—weeks after his assets were stolen.

6. Dr. Fagan repeatedly alerted Nexo Capital of this theft. Indeed, as early as March 15, 2023, Dr. Fagan wrote to Nexo Customer Support and Presiyan Rashkov, a Nexo employee, stating that "[i]f [he] do[esn't] hear back from [Nexo] within 24 hours on how to proceed[,] [he] can only assume that *someone, internal to Nexo, is trying to steal my funds*" (emphasis added).

7. After Nexo Capital stole Dr. Fagan's assets, Nexo Capital, at the direction of Dr. Fagan's attorney, finally allowed Dr. Fagan to access his account. When Dr. Fagan logged in, he confirmed that essentially all of his assets were gone.

8. To date, despite multiple requests, Nexo Capital has refused to return the stolen assets to Dr. Fagan or otherwise make him whole.

## PARTIES

9. Plaintiff Peter Fagan is in individual residing in Comanche County, Texas.

10. Defendant Nexo Capital, Inc. is a Cayman Islands corporation with an address of Two Artillery, 161 Shedden Road, 2nd Floor, George Town, P.O. Box 799,

Grand Cayman KY KY1-1103. It can be served via the procedures set forth in the Hague Service Convention.

11. Defendant Antoni Trenchev is an individual who, on information and belief, resides in United Arab Emirates. As a director of Nexo Capital, Inc., he can be served via the procedures set forth in the Hague Service Convention.

## JURISDICTION

12. The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because complete diversity exists and the amount in controversy exceeds $75,000. The Court also has subject matter jurisdiction under 28 U.S.C. § 1331 because Dr. Fagan alleges violations of federal law.

13. The Court has personal jurisdiction over Defendants because they did business in Texas, sold products and services to consumers in Texas, and—through both settlements with Texas regulators and correspondence to its customers—conceded they were subject to Texas jurisdiction and law.

14. Defendants abuse their corporate form to perpetrate fraud and as an unfair device to achieve inequitable results. Defendants also organize and operate their corporate forms as mere tools or business conduits of "Nexo" as a whole. Defendants publicly refer to "Nexo" as a single entity—"the world's leading digital assets institution." Ex. 1 at 1, available at https://www.linkedin.com/company/nexofinance/about/; *see also* Ex. 2 at 1, available at https://nexo.com/about-us ("Nexo is the world's leading and most trusted lending institution in the digital finance industry."); Ex. 3 at 2, available at https://support.nexo.com/article/in-which-jurisdictions-is-your-product-available ("Nexo

is a global company."). Defendants represent that "the company's [*i.e.*, Nexo's] mission is to maximize the value and utility of digital assets by offering a comprehensive suite of products." *See* Ex. 1 at 1.

15.     Defendants likewise represent to their customers that they are doing business with only "Nexo." Indeed, Defendants intentionally disguise to customers which Nexo entities they are interacting with by defining "Nexo" to mean "any holding company, subsidiary or entity belonging to the Nexo group of companies." *See, e.g.*, Ex. 4 at 1, available at https://nexo.com/earn-terms.

16.     Simply put, Defendants operate or are part of an interrelated web of entities. *See, e.g.*, Ex. 5, Tex. Securities Board Consent Order ¶ 5 ("Nexo Group comprises business entities organized primarily in European countries and territories, including but not limited to Nexo Inc., Nexo Capital, Inc., and Nex o Financial LLC."). These entities are organized and operate as the tool and/or business conduit of "Nexo." *See, e.g.*, *id.* ¶ 6 ("Antoni Trenchev is a co-founder and Managing Partner of the Nexo Group and a director and manager of certain companies within the Nexo Group, including Nexo Capital. Antoni Trenchev is responsible for supervising day-to-day business activities of the Nexo Group companies."). Defendants use this web of entities to shield themselves from liability while simultaneously hiding behind the umbrella name "Nexo" to confuse consumers as to who they are doing business with.

17.     Defendants purposefully availed themselves of the privilege of doing business in Texas. During the relevant period, Defendants marketed and sold products and services

in Texas and to consumers in Texas. Defendants conducted business with consumers in Texas and solicited funds from them in exchange for their products and services.

18.     Defendants operate and/or operated a highly interactive website: nexo.com. That website invites Texas consumers to, among other things: (1) create or sign into a Nexo account; (2) buy cryptocurrency assets on the Nexo platform; (3) borrow funds from Nexo; (4) exchange cryptocurrency assets on the Nexo platform; (5) sign up for a "Nexo Card"; (6) join loyalty programs; and (7) refer others to Nexo.



19.     The website also allowed Texas consumers to contact "Nexo Customer Support" (which, as detailed below, Dr. Fagan did) and "sign up for updates" from Nexo. Simply put, Defendants' website allowed them to communicate with Texas residents, contract with Texas residents, and conduct business in Texas. Defendants' targeting of and interactions with Texans were not hypothetical. They occurred thousands of times to the tune of tens of millions of dollars.

20.      Consumers in Texas, including Dr. Fagan, purchased products and services from Nexo as a result of Nexo's interactive website. Indeed, "[a]s of July 31, 2022, there were 5,769 Texas EIP accounts earning interest with a total Texas EIP savings wallet value of $70,090,000." *See* Ex. 5, Tex. Securities Board Consent Order ¶ 8. Put differently, through just one of their multiple product lines, Defendants had conducted business

transactions with nearly six thousand Texans and solicited over \$70M in funds from those Texans.

21.    Unfortunately, much of that business was illegal. Defendants entered into settlements, including with Texas regulators, for \$45M as a result. Defendant Nexo Capital, Inc. entered a Consent Order with the Texas State Securities Board in which it was banned from, among other things, offering unregistered securities to new Texas investors and fined \$212,264.15. Ex. 5, Tex. Securities Board Consent Order ¶¶ 47–48. Notably with regard to Defendants' disregard of the corporate form:

- The Consent Order defined "Nexo" to mean "Nexo Group, Nexo, Inc., Nexo Capital, Inc., Nexo Financial, LLC, and their affiliates, successors, and assignees."

- The Consent Order bound "Nexo Capital, Inc., its parent and affiliates, and their respective successors and assigns."

- Defendant Nexo Capital, Inc. consented to entry of the Order on behalf of itself "and the Nexo Group, Nexo Inc., Nexo Financial LLC, and Antoni Trenchev."

*Id.* at 1, 17. Acting on behalf of the entire web of Nexo entities, including Defendants here, Nexo Capital "admit[ted] the jurisdiction of the Texas State Securities Board" to impose these penalties.

22.    Defendant Nexo Capital also entered a settlement with the Banking Commissioner of Texas in which it consented to jurisdiction by Texas regulators and agreed to pay an administrative penalty for violating Texas law in its dealings with Texas consumers. Ex. 6, Banking Commissioner of Texas Consent Order.

23.    Following entry of these settlements, Defendants—using their collective "Nexo" identity—sent targeted communications to Texas consumers, including Dr. Fagan. Ex. 7 at 1. This "Update for Clients from Texas," signed by "The Nexo Team," informed

Dr. Fagan and other Texans that "[a]s you are a US Client from Texas, we ask that you

begin planning the withdrawal of your funds" by April 1, 2023:

**Update for Clients from Texas**

Dear Peter,

As you are probably aware, on January 19, 2023, we        our settlement with the US Securities and Exchange Commission (SEC), the North American Securities Administrators Association (NASAA), consisting of all 50 US States and three territories, the Attorney General of New York, the Texas Department of Banking, the Washington Consumers Services Division and the Alaska Division of Banking and Securities, which was concluded on a no-admit-no-deny basis and closed all multi-year-long inquiries into Nexo.

In light of this, we would like to remind you that we will be stopping our Earn Interest Product for all US clients, which includes US citizens and US residents (including US territories) on April 1, 2023, and all fixed terms will then be unlocked. **As you are a US client from Texas, we ask that you begin planning the withdrawal of your funds at a convenient time by this date.**

*Id.*

24.     Defendants also expressly acknowledged that Texas law could apply to Texas

consumers' cryptocurrency assets:

<div style="border:1px solid black; padding:10px;">

## What happens if I do not withdraw my assets on time?

If you fail to withdraw all funds from the Savings Wallet of your Nexo account by April 1, 2023, please be aware that any unclaimed assets can become subject to Texas abandoned property laws.

</div>

*Id.*

25. In sum, Defendants abuse their corporate form to perpetrate fraud and as an unfair device to achieve inequitable results. Defendants also organize and operate their corporate forms as mere tools or business conduits of "Nexo" as a whole. With that in mind, Defendants are subject to personal jurisdiction because they operated an interactive website that targets Texas consumers; through that website, sold goods and services to Texas consumers, conducted business transactions with nearly six thousand Texas consumers, and solicited and received over $70M from Texas consumers; admitted to Texas jurisdiction by Texas regulators; admitted Texas law applies to Texas consumers' cryptocurrency assets on the Nexo platform; and sent targeted communications to Texas consumers. For all these reasons, Defendants are subject to personal jurisdiction.

## VENUE

26. Defendants are not residents of the United States. Therefore, venue is proper in this district under 28 U.S.C. § 1391(c)(3), which states that "a defendant not resident in the United States may be sued in any judicial district."

27. The Nexo website includes links to several sets of "Terms and Conditions," each of which purport to be "governed exclusively by the substantive law of the Cayman

Islands" and dictate that "[a]ny dispute arising out of or in connection with the Agreement (the General Terms), unless amicably settled between the parties, shall be referred to the competent court in the Cayman Islands, determined as per the procedural law of the Cayman Islands."

28.     These choice of law and forum selection clauses are unenforceable several reasons. First, the Terms and Conditions are not valid contracts due to lack of mutual assent. The Terms and Conditions purport to "govern the relations between [users of Nexo's services] and any holding company, subsidiary or entity belonging to the Nexo group of companies." The Terms and Conditions do not actually name any specific entities. Users cannot assent to be contractually bound to an unknown number of unidentified entities. Because the Terms and Conditions are not valid contracts, the choice of law and forum selection clauses contained therein are similarly invalid.

29.     Even if the Court finds that the parties entered into a valid contract, the choice of law provision and forum selection clause are unenforceable.

30.     First, the choice of law provision is unenforceable because the Cayman Islands has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice. While Nexo Capital is a Cayman Islands entity, its principal place of business is in London, and none of its executives resides in the Cayman Islands. Dr. Fagan is a resident of Texas. He accessed Nexo Capital's website in Texas, invested in Nexo Capital's EIP from his computer in Texas, and communicated with Nexo Capital employees from Texas. Moreover, the application of Cayman Islands law would be contrary to a fundamental policy of Texas. Nexo Capital's EIP was an unregistered security.

As a result, the SEC ordered that Nexo Capital cease doing business in the United States. But rather than allowing Dr. Fagan to withdrawal his assets from his account, Nexo Capital stole those assets by transferring them to another individual or entity. Texas has a strong public policy to make investors (and victims of theft) whole. For these and other reasons, Texas law, rather than Cayman Islands law, applies to this dispute.

31. The forum selection clause is similarly unenforceable because it was procured by fraud. As described in more detail below, in January 2023, the SEC issued a Cease-And-Desist Order finding that Nexo Capital's EIP was an unregistered security being sold to United States investors and ordering that Nexo Capital (and its affiliated entities) cease the EIP as to all United States investors by April 1, 2023, and exit the United States entirely shortly thereafter. Nexo Capital, likely fearing an onslaught of lawsuits by United States investors, promptly changed its Terms and Conditions to include a Cayman Islands forum selection clause. The Cayman Islands does not offer the same protections for investors as the United States.

32. Moreover, the forum selection clause is unenforceable as a matter of public policy. Dr. Fagan has claims for violations of the Exchange Act and the Texas Securities Act, both of which contain anti-waiver provisions. If Dr. Fagan were required to file his claims in the Cayman Islands, he would be deprived of the legal protections that the laws of Texas and the United States are intended to provide for investors. By statute, Dr. Fagan could not waive his rights under the Exchange Act and the Texas Securities Act. Therefore, the forum selection clause is unenforceable.

33. Finally, it would be unreasonable to enforce the forum selection clause in this dispute. The Terms and Conditions on Nexo Capital's website were not negotiated at arm's length. Dr. Fagan is an occupational medicine specialist residing in Comanche, Texas—a town of less than 5,000 people. Nexo Capital operates an international cryptocurrency platform. Its EIP alone, as of March 2022, had 112,000 United States investors and $2.7 billion in assets from United States investors. Nexo Capital stole millions of dollars of assets from Dr. Fagan. It would be fundamentally unfair to force him to use the resources he has left to hire a lawyer and litigate this lawsuit in the Cayman Islands. Such a result would effectively deprive Dr. Fagan of his day in court. For these and other reasons, the forum selection clause should not be enforced.

## RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

34. Nexo Capital is vicariously liable for the acts and omissions of its executives, employees, and agents.

## FACTUAL ALLEGATIONS

### A. Nexo Capital's "Earned Interest Product"

35. Founded in 2018, Nexo Capital offers various financial services and products related to crypto assets, including the EIP, which Nexo Capital[1] began offering to United States investors in June 2020.

36. The EIP allows investors to tender to Nexo Capital certain crypto assets, which Nexo then deposits into interest-yielding accounts.

---

[1] Nexo Capital Inc. is the entity that actually conducts the EIP offering. However, this is not disclosed on the website, which is also operated by Nexo Capital Inc. Rather, the website simply uses the name "Nexo" without further clarification.

37.     Per Nexo Capital's website, to earn interest with the EIP, an investor must simply transfer assets to his or her Nexo account or purchase crypto directly on the Nexo Exchange. After that, Nexo Capital claims that the investor "will start earning compounding interest after a minimum of 24 hours of [the] transfer" [sic].[2]

38.     Nexo Capital purportedly determines each customer's interest rate based on, among other thing, the specific crypto asset provided to Nexo Capital by the investor and the duration of time the investor committed to maintaining the asset with Nexo Capital (*i.e.*, the longer the time period, the higher the interest rate).

39.     Nexo Capital offers the EIP under flexible and fixed terms. Under flexible terms, there is no holding period and investors can withdraw their crypto assets and earned interest at any time. Under fixed terms, as long as an investor has opted out of automatic renewal, he or she can withdraw their crypto assets and interest at the end of a defined term.

40.     Nexo Capital claims that it is able to pay interest on investors' assets because the company "safeguards [the] assets and maintains stable rates through overcollateralized, crypto-backed institutional lending and stringent management practices." Because of those safety measures, Nexo Capital claims any risk to investors is "very low."[3]

41.     Nexo Capital goes on to list the following as purported benefits of the EIP[4]:

---

[2] *See* Ex. 8 at 4, available at https://support.nexo.com/article/earn-high-yielding-annual-interest-on-crypto-assets-explained (last visited May 22, 2024).

[3] *Id.* at 10.
[4] *Id.* at 10-11.

**The benefits of the Earn Interest Product**
- High-yield savings with an annual interest rate of up to 15%
- Daily interest payouts
- Full flexibility: Exchange or withdraw funds at any time
- #ZeroFees: No fees, no minimum contribution requirements
- Insurance on custodial assets by Ledger Vault
- Nexo's Crypto Credit Lines are overcollateralized at 200-500%, ensuring that all funds are backed by assets

42.     Ledger Vault provides Nexo Capital with "institutional-grade self-custody that is accessible 24/7/365 and fully addresses [Nexo Capital's] retail and institutional clients' needs for instant services." Per Nexo Capital, Ledger Vault allows Nexo Capital to have "instant access to funds."[5]

**B.    Nexo Capital's Statements Related to Asset Security**

43.     On its website, Nexo Capital claims that "[t]he security of the assets held in your Nexo Account is *guaranteed* by [Nexo Capital's] comprehensive insurance, robust infrastructure, and numerous licenses and registrations worldwide."[6]

44.      Specifically, Nexo lists the following as supporting "Platform and data security":

---

[5] Ex. 9 at 1, available at https://nexo.com/blog/nexo-security-infrastructure-grows-with-ledger-vault-partnership (last visited May 22, 2024).

[6] Ex. 10 at 3-4, available at https://support.nexo.com/article/security-and-insurance (last visited May 22, 2024).

**Platform and data security**

- **2FA Authentication:** SMS verifications, email verifications, authenticator app support
- **Biometric Identification:** Using fingerprint or face recognition
- **Whitelisting:** Manage your crypto addresses or improve the security of your account even further by enabling Address Whitelisting. Instructions can be found here
- **Withdrawal Confirmations & Log-in Alerts**
- **Data Protection and Confidentiality:** Your personal information is contained behind secured networks and is only accessible to a limited number of persons who are required to keep the information confidential. All sensitive/credit information you supply is encrypted via Secure Socket Layer (SSL) technology.
- **Service and Organisation Controls (SOC) 2 Type 2 Compliance audit:** Our extensive SOC 2 validation conducted by A-LIGN, a renowned cybersecurity and compliance firm, guarantees that Nexo's security infrastructure is of the highest standard, thus ensuring the safety of the enterprise and minimizing risks for all clients and investors. Being SOC 2 compliant, Nexo utilizes the most rigorous security policies, impeccable risk assessment, data protection, and state-of-the-art cybersecurity.

45. With respect to withdrawals, Nexo Capital explains that when an investor tries to withdraw funds, Nexo Capital will send a confirmation email to the email address associated with that investor's Nexo account[7]:

---

[7] Ex. 11 at 7, available at https://support.nexo.com/article/how-do-i-withdraw-crypto-assets-i-have-stored-at-nexo#:~:text=Important%3A%20Withdrawal%20confirmation%20emails%20are,unlimited%2C%20and%20%20free%20of%20charge (last visited May 22, 2024).



46.     The investor must confirm the withdrawal within 30 minutes; otherwise, the withdrawal is rejected.

**C.   The Securities Exchange Commission Bars Nexo Capital from Offering the EIP to United States Citizens**

47.     In reality, Nexo Capital was able to pay interest to some investors because the company effectively operates a Ponzi scheme. On January 19, 2023, the Securities Exchange Commission released a Cease-and-Desist Order against Nexo Capital Inc. (the "SEC Order"). *See* Ex. 12. As part of the SEC Order, the SEC determined that Nexo Capital pooled investor funds and used the funds to generate income for Nexo Capital's business by, among other things, (1) staking, lending, and engaging in arbitrage on purportedly "decentralized" finance platforms; (2) investing in certain crypto assets; (3) loaning funds to retail and institutional borrowers; and (4) entering into options and swap contracts with respect to the crypto assets tendered.

48.     Nexo Capital relied on the revenue generated from the foregoing activities to fund interest payments to EIP investors and to generate income and profits for Nexo Capital itself.

49.     Ultimately, the SEC determined that Nexo Capital, via its EIP product, was selling an unregistered security. As a result, per agreement, the SEC ordered Nexo Capital to (1) pay $22.5 million to the SEC, (2) cease the EIP as to all U.S. investors by April 1, 2023, and (3) exit United States shortly thereafter.

50.     In parallel actions, Nexo Capital agreed to pay an additional $22.5 million in fines to settle similar charges by state regulatory authorities.

**D.   Nexo Capital Unlawfully Steals Millions of Dollars' Worth of Dr. Fagan's Crypto Assets**

51.     Dr. Fagan opened an account with Nexo Capital's EIP in February 2021 on fixed terms. He proceeded to buy and deposit certain cryptocurrencies through Nexo Capital, and Nexo Capital held those assets in its custody.

52.     In late January or early February 2023, Nexo Capital notified Dr. Fagan that Nexo was ceasing operations in Texas and that he was required to transfer his account balance from the Nexo platform by April 1, 2023.

53.     After receiving that email, Dr. Fagan tried to access his account but was locked out and denied access due to issues with Nexo's two-factor authentication ("2FA") system. 2FA is an identity and access management security method that requires two forms of identification to access resources and data. Nexo's 2FA required (1) the password for the customer's account and (2) a code that could be received via an authentication apps (such as Authy), email, or SMS, depending on the customer's preference. Dr. Fagan used the

Authy app to receive his 2FA code. However, when trying to access his Nexo account in February 2023, Nexo would not allow Dr. Fagan access based on the code supplied by Dr. Fagan's Authy app.

54.     Dr. Fagan alerted Nexo Capital to this issue via Nexo's 24/7 chat line and requested that Nexo Capital disable 2FA. Per Nexo's protocol, Nexo will disable 2FA on a customer's account if the customer provides Nexo with specific personal information. Dr. Fagan provided Nexo with the requested information, and on February 12, 2023, Nexo Customer Support responded that "everything is in order" and that Nexo had "disabled the 2FA verification." *See* Ex. 13.

55.     Dr. Fagan was then able access his account and confirm the balances of the ten cryptocurrencies which Nexo Capital was holding on Dr. Fagan's behalf. Dr. Fagan also confirmed that each of the ten cryptocurrencies were invested in Nexo Capital's EIP under a fixed term and therefore would not be available to withdrawal until mid-March 2023.

56.     At that time, Dr. Fagan specifically opted out of the autorenewal program so that his cryptocurrencies would be available for withdrawal in mid-March 2023.

57.     On March 2, 2023, Presiyan Rashkov, a Nexo employee, emailed Dr. Fagan regarding his fixed-term cancellation request:

From: **Presiyan Rashkov** presiyan.rashkov@nexo.io
Subject: Peter <> Nexo <> Your Fixed Term Cancellation Request
Date: March 2, 2023 at 1:08 AM
To: Peter Fagan pgfmtnhi@aol.com

Hey Peter,
I am reaching out with regard to your Fixed Term cancellation request.

Just want to double confirm that you would like your terms to be cancelled, before proceeding to escalating the case for manual review.

Looking forward to hearing from you.
--
Best regards,

Relationship Manager

**Unlock the Power
of Your Crypto**
nexo.io

*See* Ex. 14 at 1.

58.     Dr. Fagan replied to Mr. Rashkov's email on March 10, 2023, explaining that he is "unstacking[8] [sic] [his] crypto tokens" in response to Nexo's email stating that Nexo would be ceasing operations in the United States. *Id.*

59.     "Staking" crypto is the practice of locking digital tokens to a blockchain network in order to earn rewards. While staked, crypto tokens cannot be withdrawn. Here, Dr. Fagan had "staked" his crypto in Nexo Capital's EIP. As he explained to Mr. Rashkov, however, Dr. Fagan intended to "unstake" his cryto so that he could withdraw it before the April 1, 2023 deadline set forth in Nexo's emails. *Id.*

60.     That same day (March 10, 2023), Dr. Fagan attempted to access his Nexo account, but he was again locked out and denied access due to issues with Nexo's 2FA.

---

[8] Dr. Fagan intended to write "unstaking."

61.     Dr. Fagan promptly contacted Nexo to establish his identity pursuant to Nexo protocols and reestablish access to his account, as he had successfully done only one month prior.

62.     Joseph, an employee at Nexo,[9] responded to Dr. Fagan later that day, noting that it had "reviewed the provided information, and everything is in order":

> Dear Peter,
>
> Thank you for getting back to us.
>
> Kindly be informed that we have reviewed the provided information, and everything is in order.
>
> Therefore, I have forwarded your case to our relevant department, and as soon as your account is reactivated and your 2FA disabled, we will inform you in this email thread.
>
> Please do not hesitate to contact us in case you have any further questions.
>
> As the world's largest and most trusted lender in the digital asset industry, we thank you for choosing Nexo and becoming part of our mission to decentralize global finance!
>
>
> Kind Regards,
> Joseph

*See* Ex. 15.

63.     Despite this representation, Nexo did not reactivate Dr. Fagan's account or disable 2FA.

---

[9] The email does not include Joseph's last name. The email was sent from Nexo Customer Service (support@nexo.io), however, which indicates that Joseph is employed by Nexo in some capacity.

64. On March 15, 2023, Nexo sent Dr. Fagan an email entitled "Update for Clients from Texas." That email reiterated that Nexo would be ceasing its EIP for all U.S. clients on April 1, 2023:

> In light of this, we would like to remind you that we will be stopping our Earn Interest Product for all US clients, which includes US citizens and US residents (including US territories) on April 1, 2023, and all fixed terms will then be unlocked. **As you are a US client from Texas, we ask that you begin planning the withdrawal of your funds at a convenient time by this date.**

*See* Ex. 16 at 2.

65. That email further stated that this change "does not affect Nexo's platform, which is fully functioning and *processing transactions in real time, as always*, in order to support you in this transitional period" (emphasis added). *Id.*

66. Over the next two weeks, desperate to withdraw his funds before the April 1, 2023 deadline, Dr. Fagan made multiple attempts to access his account and alert Nexo of the possibility of misconduct or other nefarious activity that could be occurring in his account.

67. First, on March 15, 2023, Dr. Fagan responded to Nexo's "Update for Clients from Texas," explaining that he could not withdraw his funds because someone at Nexo had frozen his account. *Id.* at 1. He asked Nexo to reauthorize his account, and stated that if he did not "hear back from [Nexo] within 24 hours on how to proceed," he could "*only assume that someone, internal to Nexo, is trying to steal [his] funds.*" *Id.* (emphasis added). Dr. Fagan forwarded that email to Mr. Rashkov. *See id.*

68. Next, on March 19, 2023, Dr. Fagan emailed Nexo's security department, summarizing his numerous attempts in the preceding weeks to access his account. *See* Ex. 17. Dr. Fagan again emphasized his concern that someone at Nexo was stealing his funds, stating that he "strongly believe[s] that Nexo has an internal attacker who has made [Dr. Fagan's] funds unavailable to [Dr. Fagan] while allowing this attacker to access [Dr. Fagan's] funds, all after [Dr. Fagan] cancelled the fixed term staking." *Id.*

69. Unfortunately, Dr. Fagan's concerns were warranted. Between February 28, 2023, and March 20, 2023—the exact time that Dr. Fagan was trying to access his account—Nexo Capital unlawfully misappropriated assets worth millions of dollars from Dr. Fagan's account. Specifically, someone at Nexo Capital[10] accessed Dr. Fagan's account and stole nearly all of Dr. Fagan's funds over the course of seventeen transactions:

| Type of Transaction | Type of Crypto | Amount in Crypto | Amount in USD as of transaction date | Amount in USD as of May 13, 2024 | Details | Date |
|---|---|---|---|---|---|---|
| Withdrawal | EOS | -914.1332 | $1,118.51 | $718.18 | EOS withdrawal | March 5, 2023 at 6:56 pm |
| Withdrawal | NEXO BNB | -0.672821 | $194.24 | $400.41 | BNB withdrawal | March 5, 2023 at 6:37 pm |
| Withdrawal | XLM | -16,585.23 | $1,461.19 | $1,733.62 | XLM withdrawal | March 5, 2023 at 6:18 pm |
| Withdrawal | NEXO NEXO | -5,476.69600000 | $3,534.11 | $6,778.51 | NEXO withdrawal | March 5, 2023 at 6:17 pm |
| Withdrawal | BTC | -0.00325325 | $72.99 | $205.34 | BTC withdrawal | March 5, 2023 at 6:14 pm |
| Withdrawal | ETH | -71.99182 | $112,629.04 | $212,492.50 | ETH withdrawal | March 5, 2023 at 6:00 pm |

[10] Nexo Capital claims that has "never been hacked," which would preclude the possibility that a third party stole the assets.

| | | | | | | |
|---|---|---|---|---|---|---|
| Withdrawal | ETH | -318 | $498,280.56 | $938,615.16 | ETH withdrawal | March 4, 2023 at 5:52 pm |
| Withdrawal | ETH | -315 | $494,288.55 | $929,760.30 | ETH withdrawal | March 3, 2023 at 5:50 pm |
| Withdrawal | ETH | -304 | $500,688 | $897,292.48 | ETH withdrawal | March 2, 2023 at 5:47 pm |
| Withdrawal | XRP | -5,702.00 | $2,188.88 | $2,893.56 | XRP withdrawal | March 1, 2023 at 1:12 am |
| Withdrawal | BCH | -18 | $2,416.32 | $7,958.16 | BCH withdrawal | March 1, 2023 at 1:06 am |
| Withdrawal | LTC | -89 | $8,698.86 | $7,214.34 | LTC withdrawal | March 1, 2023 at 12:45 am |
| Withdrawal | NEXO BNB | -579 | $175,384.89 | $344,574.48 | BNB withdrawal | March 1, 2023 at 12:28 am |
| Withdrawal | LINK | -5,917.92 | $44,561.40 | $70,223.90 | LINK withdrawal | March 1, 2023 at 12:13 am |
| Withdrawal | NEXO BNB | -4 | $1,211.64 | $2,380.48 | BNB withdrawal | March 1, 2023 at 12:07 am |
| Withdrawal | BTC | -0.59 | $13,951.46 | $37,240.45 | BTC withdrawal | March 1, 2023 at 12:00 am |
| Withdrawal | ETH | -143 | $229,643.70 | $422,081.66 | ETH withdrawal | February 28, 2023 at 11:47 pm |
| **TOTALS** | | | $2,090,324.34 | $3,882,563.53 | | |

70. Dr. Fagan did not receive any notifications or confirmations related to these withdrawals and transfers.

71. To boot, these withdrawals and transfers should have been prohibited by Nexo Capital's own policies regarding fixed term EIPs. As explained above, under fixed terms, an investor cannot withdraw his or her crypto assets and interest until the end of a defined term. Dr. Fagan's fixed term did not end until mid-March 2023, yet nearly all of his assets were gone by March 5, 2023.

72.     On March 20, 2023, Nathalie,[11] a Nexo employee, sent the following email to Dr. Fagan:

> Dear Peter,
>
> Following a recent review of your account, we regret to inform you that we have identified reasonable grounds to terminate our business relationship with you. The relationship will be deemed terminated by the time of receiving this notice. Our decision has been made in accordance with either one or all of the following:
>
> Chapter XIV. of the Wallet Terms;
> Chapter XIII. of the Credit Terms;
> Chapter XI. of the Earn Terms;
> Chapter X. of the Exchange Terms;
>
> Please note that this decision is final and irreversible.
>
> Please withdraw all of your remaining Digital Assets within 15 days. Thereupon, your account will be closed.
>
> We appreciate your understanding and cooperation.
>
> Kind Regards,
> Nathalie

*See* Ex. 18.

73.     Dr. Fagan responded to this notice, explaining that he had been attempting to withdraw his assets for weeks, but someone had blocked his account and he had "not been able to get anyone at Nexo to help [him]." *Id.*

74.     On March 24, 2023, Dr. Fagan again emailed Nexo Customer Support and copied Mr. Rashkov, again asking Nexo to re-activate his account so he could withdraw his funds. *See* Ex. 19.

---

[11] The email does not include Nathalie's last name. The email was sent from the address accountinfo@nexo.com, however, which indicates that Nathalie is employed by Nexo in some capacity.

75. In April 2023, after weeks of silence from Nexo Capital, Dr. Fagan engaged an attorney to contact Nexo Capital on his behalf. Nexo Capital responded to Dr. Fagan's attorney on April 27, 2023, stating, among other things, that Dr. Fagan's account had been significantly diminished.

76. At Dr. Fagan's attorney's insistence, Nexo Capital finally allowed Dr. Fagan to access his account in or around May 2023. At that time, Dr. Fagan reviewed his account's transaction history and saw the transfers and withdrawals detailed above. Dr. Fagan did not request, authorize, or approve any of these transactions.

77. The only remaining asset in Dr. Fagan's account was 1,139.33 of ETHW (*i.e.*, wrapped ether). Oddly, Dr. Fagan never purchased ETHW, further suggesting that someone at Nexo Capital tampered with his account.

78. Dr. Fagan relayed this information to his attorney, who proceeded to contact Nexo Capital by phone. For months, Nexo Capital feigned ignorance and delayed resolution of the issue. Ultimately, Dr. Fagan's attorney sent a demand letter to Nexo Capital (and other entities) on November 9, 2023. Nexo Capital confirmed receipt of the demand letter and organized a conference call with Dr. Fagan and his attorney in or around December 2023. Nexo Capital again delayed resolution of the issue, thus necessitating this lawsuit.

79. In June 2023, Dr. Fagan traded his remaining ETHW for 1.086 of ETH. He then requested to withdraw the ETH (worth $2,125.07). In response to that request, Nexo sent Dr. Fagan emails confirming that his "withdrawal request has been received and is being processed," and stating that "[i]f [Plaintiff] did not request th[ese] withdrawal[s]," to

"please <u>contact [Nexo]</u> immediately and secure [Plaintiff's] Nexo Wallet by <u>resetting your password</u>." (emphasis in original). *See* Exs. 20-21.

80.     Nexo also sent Dr. Fagan a "Withdrawal Confirmation" for his withdrawal request, which required Dr. Fagan to click a link to affirmatively confirm the withdrawal. Per those emails, Plaintiff had only 30 minutes to confirm the withdrawal or else it would be auto rejected. These emails all ended with a note saying that the "security of the assets held in your Nexo Account is ***guaranteed***." (emphasis added).

81.     Ultimately, Dr. Fagan was able to salvage only $2,125.07 from his Nexo account. *See* Ex. 22. The assets that Nexo Capital stole from Dr. Fagan are now worth nearly $4 million.

**E.    Nexo Capital's Theft of Dr. Fagan's Assets Coincides with Other Nexo Issues**

82.     The timing of the withdrawals and transfers from Dr. Fagan's account—*i.e.*, February 28, 2023, to March 20, 2023—is suspect for at least three reasons.

83.     First, Nexo had recently agreed to pay $22.5 million to the SEC and up to $22.5 million to be divided equally amongst the states and territories that joined in the settlement. As explained above, several states joined in the settlement in early 2023. And each tranche of withdrawals from Dr. Fagan's account hovered around $400-500k— approximately the amount that Nexo had to pay to each participating state.

84.     Second, in January 2023, Bulgaria launched an investigation into Nexo based on suspected organized crime, money laundering, financing terrorism, breach of international sanctions, and fraud. In connection with this investigation, Bulgarian law

enforcement arrested four of Nexo's executives: Antoni Trenchev, Trayan Nikolov, Kosta Kanchev, and Kalin Metodiev.

85.     Finally (and relatedly), Nexo and one of its cofounders, Georgi Shulev, have been in litigation for years regarding $12 million in assets stored on a Ledger hardware wallet that Mr. Shulev allegedly stole from Nexo. As part of that dispute, Nexo contends that Mr. Shulev, who left Nexo in 2019, knows certain "seed phrases" that are required to access Nexo assets, including, but not limited to, various amounts of BTC, USDT, ETH, BNB, XRP, and XML—some of the same types of assets that were stolen from Dr. Fagan.

## CAUSES OF ACTION

### COUNT I – CONVERSION

#### (NEXO CAPITAL INC.)

86.     Dr. Fagan realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

87.     Dr. Fagan owned all of the assets in his Nexo account. Defendant Nexo Capital, as the offeror and seller of EIP accounts and operator of the EIP platform, had access to these assets. Per Nexo Capital's security protocols, no third parties had access to the assets.

88.      Dr. Fagan initially consented to Nexo Capital's custody of his assets. However, that consent ended when Dr. Fagan began requesting withdrawal of the assets in March 2023.

89.     Despite Nexo Capital's representations that Dr. Fagan's assets could be withdrawn at the end of Dr. Fagan's EIP fixed term, Nexo Capital refused to process

Plaintiff's repeated requests for withdrawal. This occurred despite the fact that Nexo Capital purports to have immediate access to all assets via Ledger Vault.

90.     Rather, Nexo Capital unlawfully transferred the assets to an unknown account without obtaining Dr. Fagan consent.

91.     Dr. Fagan formally demanded return of the funds via a Demand Letter sent on November 14, 2023. To date, Nexo Capital has not returned the assets.

92.     Due to these actions, Dr. Fagan has been damaged in an amount to be determined at trial.

## COUNT II – VIOLATION OF THE TEXAS THEFT LIABILITY ACT

### (NEXO CAPITAL INC.)

93.     Dr. Fagan realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

94.     Dr. Fagan owned all of the assets in his Nexo account. Defendant Nexo Capital, as the offeror and seller of EIP accounts and operator of the EIP platform, had access to these assets. Per Nexo Capital's security protocols, no third parties had access to the assets.

95.      Dr. Fagan initially consented to Nexo Capital's custody of his assets. However, that consent ended when Dr. Fagan began requesting withdrawal of the assets in March 2023.

96.     Despite Nexo Capital's representations that Dr. Fagan's assets could be withdrawn at the end of Dr. Fagan's EIP fixed term, Nexo Capital refused to process Dr.

Fagan's repeated requests for withdrawal. This occurred despite the fact that Nexo Capital purports to have immediate access to all assets via Ledger Vault.

97. Rather, Nexo Capital unlawfully transferred the assets to an unknown individual without obtaining Dr. Fagan's consent.

98. Nexo Capital made these transfers in order to deprive Dr. Fagan of the assets.

99. Due to these actions, Dr. Fagan has been damaged in an amount to be determined at trial.

100. Per Tex. Civ. Prac. & Rem. Code § 134.005(b), Dr. Fagan seeks his costs and reasonable and necessary attorneys' fees incurred in connection with this action.

### COUNT III – VIOLATION OF EXCHANGE ACT (15 U.S.C. § 78J(B))

### (NEXO CAPITAL INC., ANTONI TRENCHEV)

101. Dr. Fagan realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

102. As determined by the SEC, the EIP is a security.

103. Dr. Fagan purchased the EIP from Nexo Capital based on the following representations Nexo Capital made on its publicly available website:

- Fixed term EIPs can be "withdrawn at the term's due date."

- Ledger Vault allows Nexo to have "instant access to funds."

- The security of the assets held in your Nexo Account is guaranteed by [Nexo's] comprehensive insurance, robust infrastructure, and numerous licenses and registrations worldwide.

- As part of its platform and data security, Nexo provides "withdrawal confirmations and log-in alerts."

- An investor must confirm a withdrawal within 30 minutes or the withdrawal is rejected.

104. Nexo Capital did not disclose that it would allow unauthorized withdrawals and/or transfers from Dr. Fagan's account.

105. Nexo Capital made these material statements (and omission) with the intent to deceive, manipulate, or defraud investors. Alternatively, Nexo Capital made these statements (and omission) with severe recklessness.

106. Dr. Fagan would not have purchased the EIP if Nexo Capital Inc. (1) had not made these representations and/or (2) had disclosed that it would allow unauthorized withdrawals or transfers from Dr. Fagan's account.

107. Antoni Trenchev is a director and manager of Nexo Capital. In that capacity, he controls Nexo Capital, and therefore, he and Nexo Capital are jointly and severally liable for the acts alleged above. *See* 15 U.S.C. § 78t.

108. Due to these actions, Dr. Fagan has been damaged in an amount to be determined at trial.

### COUNT IV – VIOLATION OF TEXAS SECURITIES ACT (TEX. GOV'T CODE § 4008.051(A))

#### (NEXO CAPITAL INC., ANTONI TRENCHEV)

109. Dr. Fagan realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

110. As determined by the SEC, the EIP is a security.

111. Dr. Fagan purchased the EIP from Nexo Capital based on the following representations Nexo Capital made on its publicly available website:

- Fixed term EIPs can be "withdrawn at the term's due date."

- Ledger Vault allows Nexo to have "instant access to funds."

- The security of the assets held in your Nexo Account is guaranteed by [Nexo's] comprehensive insurance, robust infrastructure, and numerous licenses and registrations worldwide.

- As part of its platform and data security, Nexo provides "withdrawal confirmations and log-in alerts."

- An investor must confirm a withdrawal within 30 minutes or the withdrawal is rejected.

112. Nexo Capital did not disclose that it would allow unauthorized withdrawals and/or transfers from Dr. Fagan's account.

113. Nexo Capital made these material statements (and omission) with the intent to deceive, manipulate, or defraud investors. Alternatively, Nexo Capital made these statements (and omission) with severe recklessness.

114. Dr. Fagan would not have purchased the EIP if Nexo Capital Inc. (1) had not made these representations and/or (2) had disclosed that it would allow unauthorized withdrawals or transfers from Dr. Fagan's account.

115. Antoni Trenchev is a director and manager of Nexo Capital Inc. In that capacity, he controls Nexo Capital Inc., and therefore, he and Nexo Capital Inc. are jointly and severally liable for the acts alleged above. *See* Tex. Gov't Code § 4008.055(a).

116. Due to these actions, Dr. Fagan has been damaged in an amount to be determined at trial.

### COUNT V – COMMON LAW FRAUD

### (NEXO CAPITAL INC.)

117. Dr. Fagan realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

118. Dr. Fagan purchased the EIP from Nexo Capital based on the following representations Nexo Capital made on its publicly available website:

- Fixed term EIPs can be "withdrawn at the term's due date."

- Ledger Vault allows Nexo to have "instant access to funds."

- The security of the assets held in your Nexo Account is guaranteed by [Nexo's] comprehensive insurance, robust infrastructure, and numerous licenses and registrations worldwide.

- As part of its platform and data security, Nexo provides "withdrawal confirmations and log-in alerts."

- An investor must confirm a withdrawal within 30 minutes or the withdrawal is rejected.

119. Nexo Capital did not disclose that it would allow unauthorized withdrawals and/or transfers from Dr. Fagan's account.

120. Nexo Capital intentionally or recklessly made these representations with the intent that Plaintiff rely on them and purchase the EIP.

121. Dr. Fagan would not have purchased the EIP if Nexo Capital (1) had not made these representations and/or (2) had disclosed that it would allow unauthorized withdrawals or transfers from Dr. Fagan's account.

122. Due to these actions, Dr. Fagan has been damaged in an amount to be determined at trial.

### COUNT VI – VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT

### (NEXO CAPITAL INC.)

123. Dr. Fagan realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

124. Dr. Fagan's Nexo account was established for personal purposes; he did not use the account for any commercial reasons.

125. Nexo Capital is a financial institution, as that term is defined in the Electronic Funds Transfer Act. As detailed above, Nexo Capital transferred Dr. Fagan's funds from his account to an unknown account that Dr. Fagan cannot access.

126. Nexo Capital did not (1) share documentation of these electronic transfers with Dr. Fagan (15 U.S.C. § 1693d) or (2) expeditiously investigate and correct the errors associated with the unauthorized electronic fund transfer (15 U.S.C. § 1693f).

127. Dr. Fagan notified Nexo Capital of the unauthorized electronic fund transfers associated with his account on a number of occasions, as detailed above. Nexo Capital, however, failed to provisionally recredit Dr. Fagan's account, did not make a good faith investigation into the alleged error, and did not have a reasonable basis for believing that Dr. Fagan's account was not in error.

128. Due to these actions, Dr. Fagan has been damaged in an amount to be determined at trial.

### COUNT VII – MONEY HAD AND RECEIVED

### (NEXO CAPITAL INC.)

129. Dr. Fagan realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

130. Dr. Fagan owned all of the assets in his Nexo account. Those assets are now in the possession of Nexo Capital or one of its employees or agents.

131. The assets belong to Dr. Fagan in equity and good conscience.

132. Due to these actions, Dr. Fagan has been damaged in an amount to be determined at trial.

133. In connection with this equitable cause of action, Dr. Fagan requests an accounting and the imposition of a constructive trust.

## COUNT VIII – NEGLIGENCE

### (NEXO CAPITAL INC.)

134. Dr. Fagan realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

135. Nexo Capital, as the seller of the EIP, owed Dr. Fagan a duty of care.

136. Nexo Capital breached that duty by transferring and/or withdrawing Dr. Fagan's funds and redirecting them to an account that does not belong to Dr. Fagan and that Dr. Fagan does not have access to.

137. This breach of duty caused Dr. Fagan damage in an amount to be determined at trial.

## COUNT IX – UNJUST ENRICHMENT

### (NEXO CAPITAL INC.)

138. Dr. Fagan realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

139. Nexo Capital wrongfully retains access to Dr. Fagan's cryptocurrency assets by virtue of fraud, duress, and/or the taking of an undue advantage.

140. This wrongful retention caused Dr. Fagan damage in an amount to be determined at trial.

141. In connection with this equitable cause of action, Dr. Fagan requests an accounting and the imposition of a constructive trust.

## COUNT X – CONSTRUCTIVE TRUST

### (NEXO CAPITAL INC.)

142. Dr. Fagan realleges and incorporates by reference each of the preceding paragraphs as if fully set forth in this claim for relief.

143. Nexo Capital fraudulently stole Dr. Fagan's readily identifiable cryptocurrency assets and has been unjustly enriched as a result.

144. This fraudulent conduct entitles Dr. Fagan to the imposition of a constructive trust.

## REQUEST FOR RELIEF

Dr. Fagan prays for judgment against Defendants in the maximum amount allowed by law, including, but not limited to, the following:

- In connection with Count I, the value of Dr. Fagan's stolen assets at the time of conversion plus punitive damages because the conversion was fraudulent, reckless, and/or made with the conscious disregard of Dr. Fagan's rights and/or an accounting, disgorgement, and the imposition of a constructive trust;

- In connection with Count II, the damages resulting from the theft plus statutory damages, costs, and attorneys' fees and/or an accounting, disgorgement, and the imposition of a constructive trust;

- In connection with Count III, out of pocket loss calculated by the difference between what Plaintiff would have received in the transaction (how much the assets are worth today) and the actual amount Plaintiff received ($0).

- In connection with Count IV, the consideration Dr. Fagan paid for the security plus interest;

- In connection with Count V, general damages to compensate for Dr. Fagan's loss including benefit-of-the-bargain and out-of-pocket damages, plus exemplary damages.

- In connection with Count VI, three times the damages Dr. Fagan sustained in connection with Nexo Capital, Inc.'s failure to comply with the relevant section of the Electronic Funds Transfer Act;

- In connection with Count VII, all assets in the possession of Nexo Capital that lawfully belong to Dr. Fagan and/or an accounting and the imposition of a constructive trust;

- In connection with Count VIII, damages sufficient to compensate Dr. Fagan for the harm that has been caused;

- In connection with Count IX, all assets in the possession of Nexo Capital that lawfully belong to Dr. Fagan and/or an accounting and the imposition of a constructive trust;

- Pre- and post-judgment interest on all amounts owed to Dr. Fagan at the highest amount allowed by law;

- Exemplary and punitive damages at the maximum amount allowed by law;

- All other relief that the Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Dr. Fagan demands a jury trial for all claims and issues so triable.

May 24, 2024                          Respectfully submitted,


                                      **REESE MARKETOS LLP**


                                      By: */s/ Tyler J. Bexley*
                                          Tyler J. Bexley
                                          Texas Bar No. 24073923
                                          tyler.bexley@rm-firm.com
                                          Jamison M. Joiner
                                          Texas Bar No. 24093775
                                          jamison.joiner@rm-firm.com
                                          Allison N. Cook
                                          Texas Bar No. 24091695
                                          allison.cook@rm-firm.com
                                          750 N. Saint Paul St. Ste. 600
                                          Dallas, Texas 75201-3201
                                          Telephone: (214) 382-9810
                                          Facsimile: (214) 501-0731


                                      **ATTORNEYS FOR PLAINTIFF**