**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| PETER FAGAN, <br><br> Plaintiff, <br><br> v. <br><br> NEXO CAPITAL, INC. and ANTONI TRENCHEV, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> §    Civil Action No.: 4:24-cv-00466-ALM <br> § <br> § <br> § <br> § <br> § |

**DEFENDANT'S MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS, OR IN THE ALTERNATIVE MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF TEXAS, FORT WORTH DIVISION, PURSUANT TO 28 U.S.C. § 1404, AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND ............................................................................... 1

    A.    Fagan's Allegations in his First Amended Complaint. ............................. 1

    B.    The Contracts Governing the Parties' Relationship .................................. 3

STATEMENT OF THE ISSUES ......................................................................... 6

ARGUMENT ....................................................................................................... 6

    I.    THE COURT SHOULD GRANT NEXO'S MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS BASED ON THE MANDATORY FORUM SELECTION CLAUSE IN THE TERMS AND CONDITIONS POINTING TO LONDON, ENGLAND ................. 6

        A.    Standard of review. ............................................................ 6

        B.    Fagan agreed to a valid and enforceable, mandatory forum selection clause pointing to the courts of London, England. ........... 7

        C.    Fagan Does Not Carry the Heavy Burden of Overcoming the Presumption of Enforceability. ................................................ 10

        D.    Courts Have Rejected the Arguments Against Enforcement Raised by Fagan and Routinely Enforce Mandatory Forum Selection Clauses Pointing to English Courts. ............................... 12

    II.    ALTERNATIVLY, THE COURT SHOULD GRANT NEXO'S MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404 IN FAVOR OF THE NORTHERN DISTRICT OF TEXAS, FORT WORTH DIVISION—WHERE THE PLAINTIFF RESIDES AND ALL RELEVANT U.S.-BASED CONDUCT OCCURRED ............................ 16

        A.    The private interest factors weigh in favor of transfer. ....... 18

        B.    The public interest factors weigh in favor of transfer. ........ 20

CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
358 F.3d 337 (5th Cir. 2004) ................................................................................................18

*All. Health Grp. LLC v. Bridging Health Options LLC*,
553 F.3d 397 (5th Cir. 2008) ..................................................................................................6

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013)..............................................................................................................6, 16

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ................................................................................................20

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947)................................................................................................................20

*Haynsworth v. Corporation*,
121 F.3d 956, 969 (5th Cir. 1997) ..............................................................................13, 14, 15

*In re HTC Corp.*,
889 F.3d 1349 (Fed. Cir. 2018)..............................................................................................16

*Matthews v. Tidewater Crewing, Ltd.*,
658 F. Supp. 3d 332, 347 (E.D. La. 2023).................................................................7, 13, 15

*Ney v. 3i Grp., P.L.C.*,
No. 21-50431, 2023 U.S. App. LEXIS 24783 (5th Cir. Sept. 19, 2023)............................6, 7

*Noble House, L.L.C. v. Certain Underwriters at Lloyd's, London*,
67 F.4th 243 (5th Cir. 2023) ..................................................................................................9

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
549 U.S. 422 (2007).................................................................................................................7

*Skoglund v. PetroSaudi Oil Servs. (Venez.)*,
No. 18-386, 2018 U.S. Dist. LEXIS 198496 (E.D. La. Nov. 20, 2018) .................................13

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988).................................................................................................................17

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) ............................................................................................18, 20

*In re Volkswagen AG,*
   371 F.3d 201 (5th Cir. 2004) ..............................................................................................20

*In re Volkswagen of Am., Inc.,*
   545 F.3d 304 (5th Cir. 2008) (en banc) ...........................................................................18, 20

*Young v. Valt X Holdings, Inc.,*
   336 S.W.3d 258, 266 (Tex. Ct. App. 2010) ........................................................................15

**Statutes**

28 U.S.C. § 1391(b)(2) .........................................................................................................17

28 U.S.C. § 1391(c)(3)..........................................................................................................16

28 U.S.C. § 1404...................................................................................................1, 6, 16, 17, 19

15 U.S.C. § 1693....................................................................................................................2

15 U.S.C. § 78j......................................................................................................................2

Texas Gov't Code § 4001.001. ..............................................................................................2

Tex. Civ. Prac. & Rem. Code § 134.001 ...............................................................................2

**Rules**

Fed. R. Civ. P. 12(b)(2)..........................................................................................................1

Local Rule CV-7(1) ...............................................................................................................6

Local Rule CV-11 ..................................................................................................................22

iii

Defendants Nexo Capital Inc. ("Nexo") and Antoni Trenchev ("Trenchev") move this Court to dismiss Plaintiff Peter Fagan's ("Plaintiff" or "Fagan") First Amended Complaint ("FAC") on *forum non conveniens* ("FNC") grounds, or in the alternative, transfer this action to the Northern District of Texas, Fort Worth Division, pursuant to 28 U.S.C. § 1404.

## INTRODUCTION

This lawsuit should not have been filed in Texas, but in London. The Court should dismiss without prejudice on FNC grounds because the terms and conditions of Fagan's cryptocurrency account contains a mandatory forum selection clause requiring that all disputes be heard in the courts of London, England. If the Court declines to enforce the choice of forum contractually agreed by the parties, the Court should exercise its discretion to transfer this matter to the Northern District of Texas, Fort Worth Division, where Fagan resides and all relevant U.S.-based events occurred. The Eastern District of Texas, Sherman Division, has no connection to this lawsuit other than the fact that Fagan strategically chose to file suit in this district.[1]

## FACTUAL BACKGROUND

### A.  Fagan's Allegations in his First Amended Complaint.

Plaintiff alleges he is an occupational medicine specialist residing in Comanche County, Texas.  FAC (May 24, 2024) ¶¶ 1, 9, 33, ECF No. 2. Nexo is a Cayman Islands corporation.  FAC ¶ 10.  Plaintiff alleges that Defendant Antoni Trenchev ("Trenchev") resides in the United Arab Emirates. FAC ¶ 11. Nexo is an "international cryptocurrency platform" that previously provided cryptocurrency accounts and services to customers in the United States. FAC ¶ 1. Fagan was one

---

[1] Contemporaneously with this FNC/transfer motion, Defendants are filing a motion to dismiss Plaintiff's First Amended Complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) (as to Defendant Trenchev) and 12(b)(6) for failure to state a claim (as to all Defendants).  If the Court grants the present motion, it will eliminate the need for the Court to decide the Rule 12 motion and will conserve the resources of the Court.

of Nexo's customers who "opened an account with Nexo Capital and purchased its Earn Interest Product ('EIP')." *Id.* ¶ 2. The EIP paid interest (in the form of additional cryptocurrency) on certain cryptocurrency assets deposited on the Nexo platform. FAC ¶ 37. Fagan alleges that he deposited over $2 million worth of cryptocurrency on the Nexo platform in order to earn interest.[2]

The thesis of Fagan's lawsuit is that Nexo—not a third-party hacker—"stole" over $2 million of his cryptocurrency assets that were held in his Nexo account and invested in the EIP. *See* FAC ¶ 1 ("Defendants—the operators of an international cryptocurrency platform—stole assets worth millions of dollars from Dr. Fagan"); ¶ 7 ("After Nexo Capital stole Dr. Fagan's assets . . . ."); ¶ 30 ("Nexo Capital stole those assets . . . ."); ¶ 33 ("Nexo Capital stole millions of dollars of assets from Dr. Fagan."); ¶ 69 ("Nexo Capital unlawfully misappropriated assets worth millions of dollars from Dr. Fagan's account.") Fagan's FAC goes "all in" on this theft-by-Nexo theory, arguing in a footnote that his allegations "would preclude the possibility that a third party stole the assets." *Id.* ¶ 69 n.10.

Based on these allegations Fagan asserts claims against Nexo for conversion (Count I), violation of the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code § 134.001 *et seq.* ("TTLA") (Count II), violation of the Exchange Act, 15 U.S.C. § 78j *et seq.* (Count III), violation of the Texas Securities Act, Tex. Gov't Code § 4001.001 *et seq.* ("TSA") (Count IV), common law fraud (Count V), violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA") (Count VI), money had and received (Count VII), negligence, (Count VIII), unjust enrichment (Count IX), and constructive trust (Count X). Fagan asserts two securities claims

---

[2] While Nexo offers a different product that allows its customers to obtain credit lines secured by their cryptocurrency deposits, Fagan does not plead that Nexo's credit line product is at issue in this lawsuit.

against Trenchev, in his personal capacity, for violation of the Exchange Act (Count III) and the TSA (Count IV) only.

### B. The Contracts Governing the Parties' Relationship.

The parties' relationship with respect to the EIP and the various services associated with Fagan's Nexo account are governed by certain terms and conditions (*i.e.*, contracts), including the Nexo Earn Interest Product General Terms and Conditions ("Earn Terms") and the Nexo Services General Terms and Conditions ("Services Terms").[3] *See* Affidavit of Augustus Greaves (Aug. 26, 2024) ("Greaves Aff.") ¶ 5. The Earn Terms, as they appeared on May 4, 2024, are attached to, referenced and quoted in Fagan's Complaint. FAC ¶¶ 27-32.

Nexo offers various cryptocurrency services to its customers who use its online platform and app. Greaves Aff. ¶ 3. One of those services is the Earn Interest Product ("EIP"), which pays interest (in the form of additional cryptocurrency) on certain cryptocurrencies that are deposited on the Nexo platform, subject to the terms and conditions governing the EIP. *Id.* Plaintiff Peter Fagan opened his Nexo account on February 19, 2021. *Id.* ¶ 4. As a condition of using Nexo's platform, Dr. Fagan agreed to be bound by certain terms and conditions, which are posted on Nexo's website. *Id.* ¶ 5. Those terms and conditions include the Earn Terms and Services Terms. *Id.*

Fagan deposited nearly all of his cryptocurrency assets in his Nexo account between February 24 and April 12, 2021. *Id.* ¶ 8. The alleged unauthorized withdrawals occurred between February 28 and March 5, 2023. *Id.* ¶ 9; FAC ¶ 69. Pursuant to the Earn Terms, before the EIP was phased out in the United States, Nexo customers could opt for an EIP with a flex term ("Flex

---

[3] The Nexo Services General Terms and Conditions was referred to as the Nexo Wallet Services General Terms and Conditions for those versions issued before December 14, 2022. Greaves Aff. ¶ 5 n.1.

Term") or a fixed term ("Fixed Term"). Greaves Aff. ¶ 10. As a general matter, the Fixed Term

offered a higher interest rate than the Flex Term product. *Id.* As stated in Section IV(5) of the Earn

Terms, the EIP for a Fixed Term could be automatically renewed, if the customer opted-in to

automatic renewal in his or her Nexo Account, and each new Fixed Term will be governed by the

Earn Terms effective on the date of renewal. *Id.*; *see also id.* Ex. 3.

Fixed Terms were created in Dr. Fagan's account between March 9, 2021 and February 13,

2023. *Id.* ¶ 11. Those Fixed Terms were initially created in March and April 2021 and then auto-

renewed. *Id.* ¶¶ 11, 12. The last withdrawal from Dr. Fagan's account occurred on June 3, 2023.

*Id.* ¶¶ 9, 14. Dr. Fagan's account was credited with approximately $259,688 in EIP interest during

the life of his account, based on the market value of the cryptocurrency interest on the date it was

credited to the account. *Id.* ¶ 22.

At Fagan's account opening, the Services Terms contained a mandatory forum selection

clause pointing to the courts of London, England. *Id.*, Ex. 2, § XVIII. Between March 9, 2021 and

June 3, 2023—during the time period when Fagan's Fixed Terms were first created and then auto-

renewed—both the Earn Terms and the Services Terms contained a mandatory forum selection

clause pointing to the courts of London, England. *Id.* ¶ 21. The mandatory forum selection clause

pointed to the courts of London, England for all versions of the Earn Terms and Services Terms

effective between March 9, 2021 and June 3, 2023. *Id.* It states the following:

XIII. GOVERNING LAW AND JURISDICTION

1.  The Agreement shall be governed exclusively by the substantive law of England
    and Wales.

2.  Any dispute arising out of or in connection with the Agreement (the General
    Terms), unless amicably settled between the Parties, shall be referred to the
    competent court in London, England, determined as per the procedural law of
    England and Wales. You agree that any dispute resolution proceeding subject
    to the Applicable Law under the preceding sentence shall be conducted only on

4

> an individual basis and not as a plaintiff or class member in any purported class, consolidated or representative action or proceeding. No court or other dispute resolution authority can consolidate or join more than one claim and can otherwise preside over any form of a consolidated, representative, or class proceeding. Any relief awarded cannot affect other Clients of Nexo.

*See* Earn Terms and Service Terms, Greaves Aff., Ex. 3, § XIII; Ex. 4, § XVIII.

Section XIV(4) of the Earn Terms also states the following:

> Nexo shall reserve its right to amend or supplement these General Terms from time to time. Any such amendments or supplements shall become valid and in full force as of the date of their publishing on the Nexo Platform unless otherwise indicated, while they shall not affect the current terms of your active Nexo Earn Interest Products for a Fixed Term. You shall regularly check the Nexo Platform to inform yourself about any such amendments or supplements. By continuing to use the Nexo Earn Interest Product, after any such amendments or supplements have taken effect, you thereby indicate your acceptance of the amended or supplemented General Terms. If you do not wish to be bound by any amendments or supplements to these General Terms, you shall discontinue your use of the Nexo Earn Interest Product immediately.

Greaves Aff., Ex. 3, § XIV.

The provisions of the Earn Terms addressing the withdrawal of digital assets cross-referenced the Services Terms (Ex. 3, § XIV(2)), which contain several provisions related to the customer's obligation to maintain the security of her or her account. For example, Section IV(7) of the Services Terms provides:

> You are solely responsible for keeping your device safe and maintaining adequate security and control of your username, password and shall be solely responsible for any access to and use of the Nexo Services through your device, regardless of whether such access may have been made without your knowledge, authority or consent. We will not be liable to you for any loss or damage resulting from such use. In case your device has been lost or stolen or has been accessed or used in an unauthorized manner, you shall notify Nexo of this and if the device has been accessed or used in an unauthorized manner, you shall, as soon as possible, reset the password.

Greaves Aff., Ex. 4, § IV(7).

5

Section XIX(4) of Services Terms further provides that the customer "shall be fully responsible for the security and authenticity of all instructions sent through the Nexo Platform and you shall be bound by all such instructions. We will assume that all the instructions received from your Nexo Account are coming from you and we shall not be obliged to verify this." *Id*., § XIX(4).

## STATEMENT OF THE ISSUES

Pursuant to Local Rule CV-7(1), Defendants identify the following issues for the Court to decide in this dispositive motion:

1. Whether the Court should dismiss the action without prejudice on FNC grounds because the mandatory forum selection clause in the terms and conditions points to the courts of London, England.

2. Whether the Court should transfer the action to the Northern District of Texas, Fort Worth Division, pursuant to 28 U.S.C. § 1404, because Fagan resides there and all relevant U.S.-based events happened there.

## ARGUMENT

**I.   THE COURT SHOULD GRANT NEXO'S MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS BASED ON THE MANDATORY FORUM SELECTION CLAUSE IN THE TERMS AND CONDITIONS POINTING TO LONDON, ENGLAND**

### A.   Standard of review.

"[T]he appropriate way to enforce a [forum selection] clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). "Federal law applies to determine the enforceability of forum selection clauses in both diversity and federal question cases." *All. Health Grp. LLC v. Bridging Health Options LLC*, 553 F.3d 397, 399 (5th Cir. 2008). The Court may consider facts outside the pleadings when ruling on FNC motions, including evidence in affidavits. *See Ney v. 3i*

6

*Grp., P.L.C.*, No. 21-50431, 2023 U.S. App. LEXIS 24783, at *8-9 (5th Cir. Sep. 19, 2023) ("We find that when evaluating a motion to dismiss based on a forum selection clause, a court may consider matters outside the pleadings."). The Court may also consider the underlying contract containing the forum selection clause, such as the Earn Terms cited throughout the FAC, when ruling on a FNC motion. *See id.* at 9. (holding that the district court did not err on considering the terms of a contract that was "central to" and "repeatedly reference[d]" in the plaintiff's pleading); *see also* FAC (ECF No. 2) ¶ 15 (quoting the Earn Terms and stating that the contract is "available at https://nexo.com/earn-terms"); FAC ¶¶ 27-33 (arguing that the forum selection clause in the Earn Terms is unenforceable). "[D]istrict courts need not conduct a choice of law determination prior to consideration of a motion to dismiss on *forum non conveniens* grounds." *Matthews v. Tidewater Crewing, Ltd.*, 658 F. Supp. 3d 332, 347 (E.D. La. 2023).

"[A] district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection. In particular, a court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). Consequently, the Court should decide the FNC issue first, which could obviate the need for it to decide anything else.

**B.      Fagan agreed to a valid and enforceable, mandatory forum selection clause pointing to the courts of London, England.**

Fagan deposited cryptocurrency on Nexo's platform in order to earn passive interest on his cryptocurrency deposits through Nexo's Earn Interest Product ("EIP") the Terms and Conditions for which contain a mandatory forum selection clause in London.  Greaves Aff. ¶¶ 5-7; *Supra* at 1-2.  The interest was payable as additional cryptocurrency. In order to gain the benefit of these

interest payments, Fagan entered into a contractual relationship with Nexo that was governed by the Nexo's Earn Terms, which are posted on Nexo's website. Greaves Aff. ¶ 5.

Fagan created his Fixed Terms between March 9, 2021 and February 13, 2023. *Id*. ¶¶ 8-13. For example, his largest Fixed Term of 1008.44 ETH (the cryptocurrency Ether) was first created on April 12, 2021, with an approximate market value on that date of $2.1 million, and auto-renewed monthly until the last automatic renewal on February 13, 2023. *Id* at ¶¶ 11,13.  Fagan pleads the value of the cryptocurrency assets he deposited or earned through interest on the Nexo platform exceeded $2 million. FAC ¶ 69. In exchange for agreeing to the Earn Terms, including its mandatory forum selection clause described below, Fagan received substantial benefits, including interest rates that earned him over a quarter million dollars ($250,000) in interest over the life of his account. Greaves Aff. ¶ 22.

Upon Fagan's account opening in February 2021, the Services Terms contained the mandatory forum selection clause pointing to London, England. Greaves Aff., Ex. 2, § XVIII. The Earn Terms and Services Terms in effect between March 9, 2021 and February 13, 2023—when Fagan's Fixed Terms were first created and then auto-renewed—contained the mandatory forum selection clause, set forth above, pointing to London, England. *Id.* ¶ 21. Section XII of the Earn Terms, containing the mandatory forum selection clause pointing to London, England, remained the same from March 5, 2021 until June 3, 2023, when Fagan made his last withdrawal. *Id*. Fagan did not create or renew any Fixed Terms after February 13, 2023.[4] *Id.* ¶ 13.

---

[4] Fagan's FAC cites to the current Earn Terms effective as of May 6, 2024 and observes that the mandatory forum selection clause in the current Earn Terms points to the Cayman Islands. Nexo did not amend the Earn Terms to change the mandatory forum selection clause from London to the Cayman Islands until November 30, 2023. Greaves Aff. ¶¶ 21, 27.

When recently enforcing a mandatory forum selection clause pointing to the courts of England and Wales, the Fifth Circuit explained the proper FNC analysis. *Noble House, LLC v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 248 (5th Cir. 2023). In the "usual" case without a forum selection clause, to obtain a FNC dismissal, "a party must demonstrate (1) the existence of an available and adequate alternative forum and (2) that the balance of relevant private and public interest factors favor dismissal." *Id.*

However, the presence of a forum selection clause simplifies the "usual" FNC analysis in two ways. First, Fagan's choice of forum "merits no weight" because, by contracting for a specific forum, "the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Id*. Second, the private-interest factors "weigh entirely in favor of the preselected forum;" so, the "district court may consider arguments about public-interest factors only." *Id.* "Hence, a valid forum-selection clause controls the *forum non conveniens* inquiry 'in all but the most unusual cases.'" *Id.*

Nexo selected London as the venue for resolution of all disputes with all of its customers during this particular time period for compelling reasons—Nexo is an international company providing services in multiple jurisdictions (including the United Kingdom), it provides its services in English and London is an English-speaking jurisdiction, London is strategically positioned between continental Europe (where Nexo has substantial operations) and its customers in North America, and the courts of England and Wales have an international reputation as being a jurisdiction that respects the rule of law—with an established and well regarded body of law and an independent judiciary. Greaves Aff. ¶¶ 23, 26.

Additionally, during the time from the opening of Fagan's account in February 2021 through his final withdrawal in June 2023, Nexo conducted business and provided services to

9

customers in the United Kingdom.  *Id.* ¶ 24. Further, the "Nexo group of companies" referenced in the Earn and Services Terms include two Nexo entities incorporated in the United Kingdom—Nexo Financial Services Ltd. and Nexo Clearing and Custody Ltd.[5] *Id.* ¶ 25. This mandatory forum selection clause pointing to London courts is a material risk-allocation component of the Earn Terms and directly impacts the interest rates and other terms that Nexo was willing to offer its customers in the United States. *Id.* ¶ 25. The parties' contracted-for expectations would be disrupted if the Court did not enforce the Earn Terms as written and the Court should therefore dismiss Fagan's Complaint. *See id.*

### C.    Fagan Does Not Carry the Heavy Burden of Overcoming the Presumption of Enforceability.

"The presumption of enforceability [of a forum selection clause] may be overcome, however, by a clear showing that the clause is 'unreasonable' under the circumstances." *Id.* Unreasonableness potentially exists where:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Id.*

Fagan—not Nexo—bears the "heavy burden of establishing that a *forum non conveniens* dismissal is unwarranted." *Id.* at 252. Fagan does not and cannot meet this heavy burden.

First, there is no evidence that the forum selection clause was the product of fraud or overreaching. Fagan was a sophisticated investor who had unlimited time to review the Earn

---

[5] Nexo Clearing was recently dissolved via voluntary strike-off on July 30, 2024 but Nexo Financial remains on active status as of the date of filing this motion. Greaves Aff. ¶ 25 n.2.

10

Terms before he created and auto-renewed his Fixed Terms over a two-year period, reaping over a quarter million dollars in interest during that time. Greaves Aff. ¶¶ 11-13, 22.  The Earn Terms are clearly written and concise—at approximately nine pages—and are available for download on Nexo's website, as Fagan pleads in his FAC.  FAC ¶ 27; Greaves Aff. ¶¶ 5-7; 15-20. As the Fifth Circuit recently explained, Fagan is "presumed to have read the contract to which it agreed." *Id.* at 251. Nor is there any plausible argument that the forum selection clause was fraudulently inserted—the mandatory clause pointing to London was in the Earn Terms from before Fagan opened his first Fixed Term, through all his auto-renewals over a period of two years, until his final withdrawal on June 3, 2023. Greaves Aff. ¶¶ 12-14.  The Help Center material attached as Exhibits 3, 8, 10, and 11 of the FAC shows that Nexo provides extensive guidance to its U.S. customers regarding the operation of the EIP described in the Earn Terms.

Second, there is no evidence that Fagan will for all practical purposes be deprived of his day in Court because of the grave inconvenience of the selected forum. If in-person travel is required, Fagan can easily travel to London on multiple non-stop flights from Texas and can have his pick of talented counsel in the U.K.'s capital city. When a mandatory forum selection clause exists, the parties to the contract "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation," and any purported inconvenience or unfairness was "clearly foreseeable at the time of contracting." *Id.* at 251.

Third, there is no unfairness to litigation of this multi-million dollar dispute in an English court—multiple courts in the United States have recognized that England is a fair and impartial jurisdiction.

11

Finally, there is no evidence that enforcement of the forum selection clause would contravene a strong public policy of the forum state. England has laws that regulate the conduct at issue here—allegations of theft and conversion, negligence, and fraud. To the extent Fagan's claims are predicated on statutory securities violations under the Exchange Act or TSA, multiple courts have ruled that the presence of such claims does not defeat enforcement of the clause, as explained below.

The private interest factors are irrelevant to the enforceability of the forum selection clause, and the public interest factors support enforcement. While Fagan might claim to have a local interest in having a localized controversy decided at home, Nexo has a countervailing interest in having all disputes with its international customers decided by a single court in a neutral jurisdiction like the U.K. Greaves Aff. ¶ 26. Fagan does not plead that there are "administrative difficulties flowing from court congestion" that make Texas federal courts greatly superior to English courts. English courts have a greater familiarity with the English law that governs pursuant to the choice of law clause in the Earn and Services Terms. Greaves Aff., Ex. 3, § XIII; Ex. 4, § XVIII. Nor is this case fairly characterized as a "localized controversy"—Fagan is not a resident of the Eastern District of Texas and the relevant U.S. events did not occur in this district. FAC ¶ 9; Greaves Aff. ¶ 28. The residents of Sherman and surrounding areas have no interest, much less a substantial interest, in serving on a jury to decide this dispute between an out-of-district resident and a foreign company concerning events that did not happen here.

**D.    Courts Have Rejected the Arguments Against Enforcement Raised by Fagan and Routinely Enforce Mandatory Forum Selection Clauses Pointing to English Courts.**

In his FAC, Fagan argues that the mandatory forum selection clause is unenforceable because: (1) the terms and conditions do not list every Nexo affiliate by its full legal name; (2)

12

the chosen forum has "no substantial relationship to the parties or the transaction"; (3) the anti-waiver provisions of the Exchange Act and TSA bar enforcement; (4) enforcement would be against Texas public policy "to make investors (and victims of theft) whole"; (5) the forum selection clause was "procured by fraud"; and (6) the forum selection clause was "unreasonable" because it was not "negotiated at arm's length." FAC ¶¶ 27-33. None of these arguments have merit. Courts in the Fifth Circuit routinely enforce mandatory forum selection clauses pointing to English courts and have rejected the same arguments against enforcement that Fagan raises here. *See Haynsworth v. Corporation*, 121 F.3d 956, 969 (5th Cir. 1997) (enforcing mandatory clause pointing to English courts); *Skoglund v. PetroSaudi Oil Servs. (Venez.)*, No. 18-386, 2018 U.S. Dist. LEXIS 198496, at *26-27 (E.D. La. Nov. 20, 2018) (same); *Matthews*, 658 F. Supp. 3d at 349 (same).

As to Fagan's argument that the forum selection clause is unenforceable  because the terms and conditions fail to identify Nexo Capital Inc. by its full legal name, that argument is baseless. The terms are clear. They state that "[t]hese Nexo Earn Interest Product General Terms and Conditions ('General Terms') govern the contractual relations between you ('Client' or 'you') and any holding company, subsidiary or entity belonging to the Nexo group of companies ('Nexo' or 'we'), . . . in regard to your use of the Nexo Earn Interest Product, and constitute a legally binding agreement ('Agreement') between the Parties." Greaves Aff., Ex. 3, § 1. Like a multitude of website terms and conditions and settlement agreements executed every day in the United States, the contract does not list the full legal name of each and every Nexo affiliate. But that is not necessary because there was a meeting of the minds that Fagan was entering a contractual relationship with all Nexo affiliates, and the identity of the legal names of those affiliates is an

13

objective and verifiable fact. Indeed, Fagan pleads considerable detail regarding the identity of Nexo affiliates, including Nexo Capital Inc. FAC ¶¶ 14-25, 35.

In *Haynsworth*, the Fifth Circuit enforced a mandatory forum selection clause pointing to English courts and rejected fraud and overreaching, unreasonableness, public policy, and anti-waiver arguments similar to the ones asserted by Fagan. 121 F.3d at 963. As to fraud and overreaching, the Fifth Circuit explains that "the claims of fraud or overreaching must be aimed straight at the FS/COL clause in order to succeed," and allegations of fraud as to other contractual provisions or events are irrelevant to enforcement of the mandatory forum selection clause. *Id.* at 963-965. Fagan's allegations that Nexo committed fraud by stealing his money and misrepresenting the security of the Nexo platform are irrelevant to the enforceability of the forum selection clause appearing in black-and-white in the terms and conditions. *See id.* at 965 ("The FS/COL clause was straightforward and was a prominent part of the one-and-one-half-page General Undertaking, and the plaintiffs are presumed to have known what it said."). Fagan had full access to the terms and conditions and had the option to invest on a different cryptocurrency platform if he was unsatisfied with the forum selection clause of the contract to which he agreed. *See id.* ("The duty was the plaintiffs' to read the plain terms of the agreement, not Lloyd's to lecture them about it."). The Fifth Circuit also rejected arguments similar to Fagan's with respect to overreaching, unreasonableness, and arm's length transaction, concluding that the plaintiffs' arguments that the contract was a "take-it-or-leave-it offer," one of "adhesion," and was not "subject to negotiation." *Id.* While Nexo contends that Fagan was a sophisticated, accredited investor who deposited millions worth of cryptocurrency and earned hundreds of thousands in interest, the Fifth Circuit noted that mandatory forum selection clauses are enforced even against an "unsophisticated" plaintiff with a disparity in bargaining power. *Id.*

14

The Fifth Circuit also rejected the anti-waiver and public policy arguments advanced by Fagan, noting that English courts are "a forum that American courts repeatedly have recognized to be fair and impartial." *Id.* at 965. In rejecting the argument that "contravenes public policy as embodied in the antiwaiver provisions of federal securities law, Texas securities law, and the Texas DTPA," the Fifth Circuit noted that "[w]e have not hesitated to force plaintiffs to litigate their claims of securities fraud in that nation, differences between English and American remedies notwithstanding." *Id.* at 965-966; *see also id.* at 969. Texas' own courts have approvingly cited *Haynsworth* and reached the same conclusion, showing that the Texas claims asserted by Fagan are not so sacrosanct as to nullify the contractually agreed forum. S*ee Young v. Valt X Holdings, Inc.*, 336 S.W.3d 258, 266 (Tex. Ct. App. 2010) ("We consequently hold that the antiwaiver provisions of federal and Texas securities laws do not bar enforcement of the forum-selection cause [pointing to Ontario, Canada] in this case.").

District courts following *Haynsworth* have reached similar results, enforcing mandatory forum selection causes over the objections that Fagan asserts here. The *Matthews* court held that a mandatory forum selection clause with the same text as the Nexo clause compelled the plaintiff to litigate claims sounding in both tort and contract in London courts. *Matthews*, 658 F. Supp. 3d at 348 (enforcing clause addressing "any dispute[] arising out of or in connection with" the contract). The fact that Fagan is a Texas resident does not defeat enforcement of the clause, given the "mix of nationalities involved in the facts of this case"—here an American plaintiff suing a Cayman Islands corporation with substantial operations in Europe and customers around the world, and also suing a Bulgarian citizen who resides in the UAE. *Id.* at 349; Trenchev Aff. ¶¶ 4-5. Furthermore, "with modern conveniences of electronic filing and videoconferencing," it is often unnecessary for a plaintiff to physically be present in the other jurisdiction." *Matthews*, 658

15

F. Supp. 3d at 349. The Court should therefore dismiss Plaintiff's First Amended Complaint on FNC grounds.

## II.  ALTERNATIVLY, THE COURT SHOULD GRANT NEXO'S MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404 IN FAVOR OF THE NORTHERN DISTRICT OF TEXAS, FORT WORTH DIVISION—WHERE THE PLAINTIFF RESIDES AND ALL RELEVANT U.S.-BASED CONDUCT OCCURRED

If the Court denies Nexo's motion to dismiss on FNC grounds, it should exercise its discretion to transfer this action to the Northern District of Texas, Fort Worth Division, in the strict alternative, and without ruling on Nexo's Rule 12 arguments below (which can and should be decided by the transferee court). 28 U.S.C. § 1404(a) "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." *Atl. Marine*, 571 U.S. at 60. Fagan resides in that district and division, and all relevant U.S.-based events occurred there. The Eastern District of Texas, Sherman Division, has no connection to the parties or events giving rise to this dispute.[6]  Dr. Fagan resides in De Leon, Texas, which is located in Comanche County, Texas. Greaves Aff. ¶ 28. To Nexo's knowledge, all of the alleged events and actions related to Dr. Fagan's claims either occurred in Comanche County or outside the United States, and no events or actions related to Dr. Fagan's claims occurred in Sherman, Texas or the surrounding area. *Id.* ¶¶ 29-30. All of Nexo's witnesses with knowledge of this matter reside outside the United States. *Id.* ¶ 31. There is no reason to burden this Court

---

[6] Fagan was able to sue Nexo in the Eastern District of Texas, Sherman Division, because Nexo Capital Inc. is a foreign (Cayman Islands) corporation, and the federal venue statute "uses broad language to deny venue protection to any 'defendant not resident in the United States,' with no exclusion of foreign corporations." *In re HTC Corp.*, 889 F.3d 1349, 1360-61 (Fed. Cir. 2018) (citing 28 U.S.C. § 1391(c)(3)).

with a case involving people that live and events that occurred over 200 miles away in Comanche County, Texas.[7]

28 U.S.C. § 1404(a) permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). When considering a motion to transfer venue under § 1404(a), a court must determine whether (1) the proposed transferee forum is one where the action might have been brought initially; (2) the transfer is convenient to the parties and witnesses; and (3) the transfer is in the interest of justice. *See* 28 U.S.C. § 1404(a). All of these factors are present here and weigh in favor of transfer.

As a threshold matter, if not in London as required by the forum selection clause, Fagan could and should have brought this action in the Northern District of Texas, Fort Worth Division. Fagan resides in Comanche, Texas, which sits in that district and division. FAC ¶¶ 9, 33; Greaves Aff. ¶ 28. All of the alleged events and actions underlying Fagan's claims either occurred in the transferee district or outside of the United States. Fagan opened his Earned Interest Account with Nexo, deposited digital assets into that account, and communicated with Nexo from Comanche County, Texas. FAC ¶¶ 9, 33; Greaves Aff. ¶ 29. Moreover, the allegedly stolen digital assets left his account while Fagan resided in Comanche County. Venue would therefore be appropriate in the transferee district under 28 U.S.C. § 1391(b)(2) because it is the "district in which a substantial part of the events or omissions giving rise to the claim occurred." Conversely, there is no

---

[7] The Court can take judicial notice of the fact that Google Maps shows the drive from Sherman, Texas to Comanche County, Texas to be between 203 and 211 miles, depending on the route chosen.

17

connection between this action at the Eastern District of Texas, Sherman Division.  None of the parties resides in the district, and none of the alleged actions underlying and/or giving rise to Fagan's claims occurred in the transferor district.

Further, private and public interest factors favor transfer of this action to the Northern District of Texas.  *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) ("[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight").

### A.    The private interest factors weigh in favor of transfer.

The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). Here, each of the private interest factors weigh in favor of transfer or are neutral. None weigh in favor of denying transfer.

First, the sources of proof in this action are more easily accessed from the Northern District than the Eastern District.  Fagan resides in the Northern District and would maintain all records relevant to this action in that district. Nexo maintains any relevant records outside of the United States that would be available in either district. Fagan's physical devices through which he accessed the Nexo website and/or app—his computer, smart phone, and computer equipment— are all located in the Northern District. Because this case implicates a third-party compromise/hack of Fagan's account, Fagan's physical devices, internet connection, routers, and VPN and other software installed on those devices, are all relevant to the dispute. The location of the evidence outside the Eastern District weighs in favor of transfer.  *See In re TikTok, Inc.*, 85 F.4th 352, 358

18

(5th Cir. 2023) ("this factor weighs in favor of transfer where the current district lacks any evidence relating to the case").

Second, the availability of compulsory process to secure the attendance of witnesses weighs in favor of transfer. Most if not all domestic witnesses to this matter likely reside in Comanche County, Texas, which is over 200 miles away from Sherman.  Consequently, likely witnesses are definitely outside the 100-mile subpoena range of the Eastern District, but could be within the range of the Northern District.

Third, given the distance between Comanche County and the Court, any witnesses would be subject to excessive travel and attendant costs, further weighing in favor of transfer.  The Fifth Circuit uses a "100-mile" test when assessing this factor. *Id.* at 361. The Northern District of Texas, Fort Worth Division is approximately half the distance to Comanche County than the Eastern District of Texas, Sherman Division. "When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *Id.* This is an "obvious conclusion" because "it is more convenient for witnesses to testify at home[,]" and "additional distance means additional travel time . . . meal and lodging expenses" and time "witnesses must be away from their regular employment." *Id.* Witnesses also suffer "personal costs associated with being away from work, family, and community" when they testify far from home. *Id.*

Finally, there are no practical problems that would prevent the case from being "easy, expeditious, and inexpensive" to try in the Northern District, while the factors, highlighted above, indicate that trial in the Eastern District would be inconvenient and difficult for all involved.

19

### B.      The public interest factors weigh in favor of transfer.

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen*, 545 F.3d at 315. Here, factors one, three and four are the same in each district and are therefore neutral.  However, factor two, "the local interest in having localized interest decided at home" weighs heavily in favor of transfer. Important to this factor is "the location of the injury, witnesses, and the [p]laintiff's residence." *Def. Distributed v. Bruck,* 30 F.4th 414, 435 (5th Cir. 2022). This factor also recognizes that "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). As discussed above, Fagan resides in the Northern District and the alleged events and underlying acts, including the alleged theft of his digital assets, occurred in the Northern District.  *TikTok*, 85 F.4th at 364 ("[T]he place of the alleged wrong is one of the most important factors in venue determinations"). This factor therefore strongly weighs in favor of transfer of this case to the Northern District. As in *TikTok*, in which the Fifth Circuit granted mandamus to require transfer, "[t]he only thing connecting this case to the [Eastern District] is [Fagan's] decision to file suit there." *Id.* at 366.

As Plaintiff could have brought this action in the Northern District of Texas and all private public and private factors weigh in favor of transfer, the Court should exercise its discretion to transfer this case to the Northern District of Texas, Fort Worth Division.

20

## CONCLUSION

For the foregoing reasons, Defendants Nexo Capital Inc. and Antoni Trenchev respectfully request that this Court dismiss Plaintiff's First Amended Complaint on *forum non conveniens*, or in the alternative, exercise its discretion to transfer this action to the Northern District of Texas, Fort Worth Division, and for any other relief the Court may deem appropriate.

Dated:  August 26, 2024                          Respectfully submitted,

*/s/ Ian S. Shelton*
Ian S. Shelton (SBN 24056305)
BAKER & MCKENZIE LLP
800 Capitol Street, Suite 2100
Houston, TX 77002
Phone: (713) 427-5029
Fax: (713) 427-5099
ian.shelton@bakermckenzie.com

Alexander P. Fuchs (*pro hac vice* forthcoming)
EVERSHEDS SUTHERLAND (US) LLP
1114 Avenue of Americas
The Grace Building, 40th Floor
New York, NY 10036
Phone: (212) 389-5000
Fax: (212) 389-5099
alexfuchs@eversheds-sutherland.com

*Attorneys for Defendants Nexo Capital Inc. and*
*Antoni Trenchev*

21

## DESIGNATION OF LEAD ATTORNEY

Pursuant to Local Rule CV-11, Defendants designate Mr. Ian S. Shelton of Baker & McKenzie LLP as lead attorney for the matter.

*/s/ Ian S. Shelton*
Ian S. Shelton

22

23

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 26, 2024, the foregoing document was filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Ian S. Shelton
Ian S. Shelton