**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| PETER FAGAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | Civil Action No.: 4:24-cv-00466-ALM |
| NEXO CAPITAL, INC. and ANTONI | § | |
| TRENCHEV, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MOTION TO DISMISS ANTONI TRENCHEV PURSUANT TO RULE
12(B)(2) AND MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) AND
INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

FACTUAL BACKGROUND.................................................................................................2

      A.    Fagan's Allegations in his First Amended Complaint................................2

      B.    The Contracts Governing the Parties' Relationship...................................5

STATEMENT OF THE ISSUES.............................................................................................6

ARGUMENT .........................................................................................................................7

I.     THE COURT SHOULD GRANT NEXO'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AS TO DEFENDANT ANTONI TRENCHEV SUED IN HIS INDIVIDUAL CAPACITY.........................................................7

      A.    Fagan fails to allege that Trenchev was personally involved in the alleged theft. ................................................................................................8

      B.    Fagan fails to adequately plead general or specific jurisdiction. ...............10

      1.    The Court does not have general jurisdiction over Trenchev ....................10

      2.    The Court does not have specific jurisdiction over Trenchev ...................10

II.    ALTERNATIVELY, THE COURT SHOULD GRANT NEXO'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM................................................12

      A.    Plaintiffs Texas Theft Liability and Conversion Claims Should be Dismissed................................................................................................12

      B.    The Court Should Dismiss the Negligence Claim .....................................16

      C.    The Court Should Dismiss the Federal and State Securities Claims .........16

      D.    The Court Should Dismiss the Common Law Fraud Claim.......................20

      E.    The Court Should Dismiss the EFTA Claim .............................................21

      F.    The Court Should Dismiss Plaintiff's Equitable Claims ...........................24

CONCLUSION.....................................................................................................................26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Arbitrage Plaintiffs Group v. Tchuruk*,
  291 F.3d 336 (5th Cir. 2002) ...................................................................................................18

*ACS Partners, LLC v. GFI Mgmt. Servs., Inc.*,
  No. H-15-1111, 2015 U.S. Dist. LEXIS 171424 (S.D. Tex. Dec. 23, 2015)............................10

*Advanced Laser Prods., Inc. v. Signature Stock Transfer, Inc.*,
  No. 3:98-CV-1624-D, 1999 U.S. Dist. LEXIS 5179 (N.D. Tex. Apr. 12, 1999) .....................17

*Aries Bldg. Sys. v. Vanguard Univ. of S. Cal.*,
  No. 4:19-CV-3307, 2021 U.S. Dist. LEXIS 215576 (S.D. Tex. July 14, 2021).......................16

*Basic v. Bprotocol Found.*,
  No. A-23-CV-533-RP, 2024 U.S. Dist. LEXIS 135377 (W.D. Tex. July 31,
  2024) .................................................................................................................................11, 19

*Baxter v. PNC Bank Nat. Ass'n*,
  541 F. App'x 395 (5th Cir. 2013) ...................................................................................6, 15, 24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................................12

*Berry v. Indianapolis Life Ins. Co.*,
  608 F. Supp. 2d 785 (N.D. Tex. 2009) .....................................................................................12

*BMG Direct Mktg., Inc. v. Peake*,
  178 S.W.3d 763 (Tex. 2005).....................................................................................................25

*Bochicchio v. Smith Barney, Harris Upham & Co.*,
  647 F. Supp. 1426 (S.D.N.Y. 1986)..........................................................................................17

*Burbank v. Compass Bank*,
  No. 1:15-CV-60, 2016 U.S. Dist. LEXIS 92518 (E.D. Tex. Mar. 29, 2016) ..........................20

*Cadle Co. v. Mims (In re Moore)*,
  608 F.3d 253 (5th Cir. 2010) ...................................................................................................25

*Cambria Cnty. Emps. Ret. Sys. v. Venator Materials PLC*,
  532 F. Supp. 3d 440 (S.D. Tex. 2021) ......................................................................................11

*Coppola v. Applied Elec. Corp.*,
  No. 98 Cv. 3149, 1998 U.S. Dist. LEXIS 14855 (E.D.N.Y. July 28, 1998) ...........................17

*Cress v. Nexo Fin. LLC*,
    No. 23-cv-00882-TSH, 2023 U.S. Dist. LEXIS 182136 (N.D. Cal. Oct. 10,
    2023) .......................................................................................................................... *passim*

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)....................................................................................................10

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008) ......................................................................................20

*Fin. Acquisition Partners LP v. Blackwell*,
    440 F.3d 278 (5th Cir. 2006) ......................................................................................12

*Firequip, Inc. v. Frac, LLC*,
    No. MO:17-CV-00073-RAJ, 2018 U.S. Dist. LEXIS 228924 (W.D. Tex. Jan.
    10, 2018) .....................................................................................................................14

*Flickinger v. Harold C. Brown & Co., Inc.*,
    947 F.2d 595 (2d Cir. 1991).........................................................................................17

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
    960 S.W.2d 41 (Tex. 1998)...........................................................................................14

*Fortune Prod. Co. v. Conoco, Inc.*,
    52 S.W.3d 671 (Tex. 2000)...........................................................................................25

*Frey v. First Nat'l Bank Sw.*,
    602 F. App'x 164 (5th Cir. 2015) ................................................................................20

*Hou-Tex, Inc. v. Landmark Graphics*,
    26 S.W.3d 103 (Tex. App. 2000)..................................................................................14

*Lamar Homes, Inc. v. Mid—Continent Cas. Co.*,
    242 S.W.3d 1 (Tex. 2007).............................................................................................13

*Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs.*,
    787 F.3d 716 (5th Cir. 2015) .......................................................................................14

*Lone Star Fund V (U.S.) LP v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) .........................................................................................5

*Margaux Warren Park Partners, Ltd. v. GE Bus. Fin. Servs. (In re Margaux
    Warren Park Partners, Ltd.)*,
    Nos. 08-43388, 09-04022, 2009 Bankr. LEXIS 4128 (Bankr. E.D. Tex. Dec.
    15, 2009) .....................................................................................................................15

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010)......................................................................................................19

iv

*Nat'l Architectural Prods. Co. v. Atlas-Telecom Servs.—USA, Inc.*,
No. 3:06-cv-0751-G, 2007 U.S. Dist. LEXIS 51182 (N.D. Tex. July 13, 2007) ....................10

*Natour v. Bank of Am., N.A.*,
No. 4:21-CV-00331, 2022 U.S. Dist. LEXIS 110685 (E.D. Tex. June 22, 2022) ..................................................................................................................................13

*Nero v. Uphold HQ Inc.*,
688 F. Supp. 3d 134 (S.D.N.Y. 2023).................................................................................23

*One Place Capital v. Oakes*,
No. 4:18-CV-829-SDJ-KPJ, 2021 U.S. Dist. LEXIS 166805 (E.D. Tex. Aug. 2, 2021) ..................................................................................................................................13

*Payne v. Wells Fargo Bank, N.A.*,
No. 3:12-CV-5219-M (BF), 2015 U.S. Dist. LEXIS 39325 (N.D. Tex. Jan. 20, 2015) ..................................................................................................................................24

*Pervasive Software, Inc. v. Lexware GmbH & Co. KG*,
688 F.3d 214 (5th Cir. 2012) .............................................................................................10

*In re Powers*,
261 F. App'x 719 (5th Cir. 2008) .......................................................................................13

*Pratt v. S. Austin Family Practice Clinic LLP*,
No. A-18-CV-173-LY, 2021 U.S. Dist. LEXIS 168393 (W.D. Tex. June 7, 2021) ..................................................................................................................................14

*Pratt v. S. Austin Family Practice Clinic, LLP*,
*report and recommendation adopted*, 2021 U.S. Dist. LEXIS 168251 (W.D. Tex. July 26, 2021) .....................................................................................................14

*Pross v. Katz*,
784 F.2d 455 (2d Cir. 1986).................................................................................................17

*Randolph v. Comerica Bank*,
No. 3:13-CV-4810-B-BH, 2014 U.S. Dist. LEXIS 60129 (N.D. Tex. Mar. 3, 2014) ..................................................................................................................................21

*Ranieri v. AdvoCare Int'l, L.P.*,
336 F. Supp. 3d 701 (N.D. Tex. 2018) ...............................................................................25

*Reed v. State*,
717 S.W.2d 643 (Tex. Ct. App.—Amarillo 1986, no writ) ..............................................13

*Rider v. Uphold HQ Inc.*,
657 F. Supp. 3d 491 (S.D.N.Y. 2023) ................................................................................23

v

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*,
620 F.3d 465 (5th Cir. 2010) ...................................................................................19

*Rolls-Royce Corp. v. Heros, Inc.*,
576 F. Supp. 2d 765 (N.D. Tex. 2008) ...................................................................10

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*,
607 F.3d 1029 (5th Cir. 2010) .................................................................................12

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
549 U.S. 422 (2007).................................................................................................2

*Soileau v. MidSouth Bancorp Inc.*,
No. 6:19-CV-00537, 2020 U.S. Dist. LEXIS 47763 (W.D. La. Feb. 26, 2020)......21

*Stanley Indus. of S. Fla. v. J.C. Penney Co,.*,
No. 3:05-CV-2499-L, 2006 U.S. Dist. LEXIS 63109 (N.D. Tex. Aug. 18,
2006) .......................................................................................................................14

*Stonebridge Life Ins. Co., v. Pitts*,
236 S.W.3d 201 (Tex. 2007).....................................................................................25

*Sw. Bell. Tel. Co. v. DeLanney*,
809 S.W.2d 493 (Tex. 1991)......................................................................................14

*TIB-The Indep. BankersBank v. Canyon Cmty. Bank*,
13 F. Supp. 3d 661 (N.D. Tex. 2014) .......................................................................24

*In re TXNB Internal Case*,
483 F.3d 292 (5th Cir. 2007) ...................................................................................15

*Villarreal v. First Presidio Bank*,
744 F. App'x 204, 205 (5th Cir. 2018) ....................................................................24

*Vinson v. AmeriHome Mortg. Co., LLC*,
No. 4:22-cv-0928-P, 2023 U.S. Dist. LEXIS 63074 (N.D. Tex. Apr. 11, 2023).....16

*Welsh v. Correct Care Recovery Sols.*,
No. 5:18-CV-020-BQ, 2023 U.S. Dist. LEXIS 233310 (N.D. Tex. Dec. 27,
2023) .......................................................................................................................16

*Wesolek v. Layton*,
871 F. Supp. 2d 620 (S.D. Tex. 2012) .....................................................................18

*Whittington v. Mobiloil Fed. Credit Union*,
No. 1:16-CV-482, 2017 U.S. Dist. LEXIS 184463 (E.D. Tex. Sep. 14, 2017).......21

*Winkley v. State*,
   123 S.W.3d 707 (Tex. Ct. App.—Austin 2003, no pet.) .......................................................13

*Yuille v. Uphold HQ Inc.*,
   686 F. Supp. 3d 323 (S.D.N.Y. 2023)...............................................................................20, 22

**Statutes**

15 U.S.C. § 78t.......................................................................................................................8

15 U.S.C. § 1693...................................................................................................................20

15 U.S.C. § 1693a(2) ...............................................................................................20, 21, 22

15 U.S.C. § 1693a(7) .....................................................................................................21, 23

15 U.S.C. § 1693a(7)(C).................................................................................................21, 23

15 U.S.C. § 1693m...............................................................................................................20

15 U.S.C. § 1693m(a) ..........................................................................................................21

15 U.S.C. § 1693m(g)..........................................................................................................21

15 U.S.C. § 78j(b)........................................................................................................4, 8, 19

Tex. Civ. Prac. & Rem. Code § 134.002(a)..........................................................................13

Tex. Civ. Prac. & Rem. Code § 134.003(a)..........................................................................13

Tex. Gov't Code § 4008.055(a) .............................................................................................9

**Other Authorities**

12 C.F.R. § 1005.2(m)(3)................................................................................................21, 22

Fed. R. Civ. P. 9(b) ........................................................................................7, 12, 18, 20

Fed. R. Civ. P. 12(b) ............................................................................................................7

Fed. R. Civ. P. 12(b)(6)...................................................................................................1, 12

Pursuant to Rules 12(b)(2) and (b)(6) of the Federal Rules of Civil Procedure, Defendants Nexo Capital Inc. ("Nexo") and Antoni Trenchev ("Trenchev") move to dismiss Trenchev from this action due to lack of personal jurisdiction and dismiss Plaintiff Peter Fagan's ("Plaintiff" or "Fagan") First Amended Complaint ("FAC") in its entirety for failure to state a claim.

## INTRODUCTION

Fagan asserts claims against Defendants Nexo and Trenchev arising from the alleged theft of cryptocurrency from Fagan's Nexo account. Personal jurisdiction is lacking with respect to Trenchev, and Fagan fails to state a claim with respect to the remaining claims against Nexo.

Trenchev, a Bulgarian citizen who resides in the United Arab Emirates ("UAE"), is not subject to personal jurisdiction in Texas. Fagan fails to plead any personal connection between Trenchev and the "theft" alleged in this lawsuit. Fagan's conclusory allegation that Trenchev is the "control person" of Nexo is insufficient to establish jurisdiction over this foreign resident, as one federal court recently held when it dismissed a state-law securities claim against Trenchev. The two claims asserted against Trenchev in his individual capacity should therefore be dismissed.

The Court should also dismiss all Plaintiff's claims for failure to state a claim. Fagan's claims are predicated on the false theory that Nexo, an established financial institution, stole the cryptocurrency from his account.  In fact, it was a third-party hack of Fagan's email account that led to the theft his cryptocurrency. However, even if this Court accepts as true Fagan's theft-by-Nexo theory, Fagan's claims are inadequately pled or fail as a matter of law. First, all of his claims, including theft and negligence, are barred by the economic loss rule because the parties' relationship is governed by contract. Second, Plaintiff's two securities fraud claims fail because the alleged theft of a security does not state a claim for securities fraud, the transactions at issue were not covered domestic transactions, and he fails to plead the purported fraud with particularity

1

in any event. Third, Plaintiff's Electronic Funds Transfer Act ("EFTA") claim suffers from at least five legal defects, including being barred by the one-year statute of limitations. Fourth, the equitable claims are barred by the existence of a contract, an adequate remedy at law, and the fact that certain counts are not stand-alone claims. Finally, the claims requiring identification of specific and identifiable assets—conversion, Texas Theft Liability Act , and constructive trust— do not apply given the nature of the EIP.

Contemporaneously with the filing of this motion, Defendants have also filed a motion to dismiss on *forum non conveniens* grounds or in the alternative to transfer venue to the Northern District of Texas, Fort Worth Division.  Defendants respectfully request the Court resolve the issue raised in that motion, and only address the issues raised herein if that motion is denied.  *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) ("[A] district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection. In particular, a court need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case.")

## FACTUAL BACKGROUND

### A.    Fagan's Allegations in his First Amended Complaint.

Plaintiff alleges he is an occupational medicine specialist residing in Comanche County, Texas. Pl.'s First Am. Compl. (May 24, 2024) ("FAC") ¶¶ 1, 9, 33, ECF No. 2. Nexo is a Cayman Islands corporation. FAC ¶ 10. Plaintiff alleges that Defendant Antoni Trenchev ("Trenchev") resides in the United Arab Emirates. *Id.* ¶ 11.  Nexo is an "international cryptocurrency platform" that previously provided cryptocurrency accounts and services to customers in the United States. *Id.* ¶ 1. Fagan was one of Nexo's customers who "opened an account with Nexo Capital and

2

purchased its Earn Interest Product ('EIP')."[1] *Id.* ¶ 2. The EIP paid interest (in the form of additional cryptocurrency) on certain cryptocurrency assets deposited on the Nexo platform.  *Id.* ¶ 37.  Fagan alleges he deposited over $2 million worth of cryptocurrency on the Nexo platform in order to earn interest.

At some unspecified point in February 2023, Fagan claims he could not access his Nexo account due to issues with the two-factor authentication ("2FA") system. *Id.* ¶ 53. Fagan allegedly reported the issue to Nexo customer service, and on February 12, 2023, was informed that 2FA was disabled. *Id.* ¶ 54.  At an unspecified point after February 12, Fagan allegedly accessed his account and opted out of the autorenewal program so that his cryptocurrencies would be available for withdrawal in mid-March 2023.  *Id.* ¶¶ 55, 56. On March 10, 2023, Fagan claims he was again locked out of his account "due to issues with Nexo's 2FA system." FAC  ¶ 60. Fagan alleges that "Nexo Capital unlawfully misappropriated assets from [Fagan's] account." *Id.* ¶¶ 69, 76. Specifically, Fagan contends someone at Nexo accessed his account and stole approximately $2 million in cryptocurrency through seventeen transactions occurring between February 28 and March 5, 2023. *Id.* ¶ 69.

The thesis of Fagan's lawsuit is that Nexo Capital Inc.—not a third-party hacker—"stole" over $2 million of his cryptocurrency assets from his Nexo account and committed "theft." *See Id.* ¶ 1 ("Defendants—the operators of an international cryptocurrency platform—stole assets worth millions of dollars from Dr. Fagan"); ¶ 7 ("After Nexo Capital stole Dr. Fagan's assets . . . ."); ¶ 30 ("Nexo Capital stole those assets . . . ."); ¶ 33 ("Nexo Capital stole millions of dollars of assets from Dr. Fagan."); ¶ 69 ("Nexo Capital unlawfully misappropriated assets worth millions of

---

[1] Nexo offers a different product that allows its customers to obtain credit lines secured by their cryptocurrency deposits, Nexo's credit line product is not at issue in this lawsuit.

dollars from Dr. Fagan's account.") Fagan's complaint goes "all in" on this theft-by-Nexo theory, arguing in a footnote that his allegations "would preclude the possibility that a third party stole the assets." *Id.* ¶ 69 n.10.

Fagan asserts claims against Nexo for conversion (Count I), violation of the Texas Theft Liability Act ("TTLA") (Count II), violation of the Exchange Act (Count III), violation of the Texas Securities Act ("TSA") (Count IV), common law fraud (Count V), violation of the Electronic Funds Transfer Act ("EFTA") (Count VI), money had and received (Count VII), negligence, (Count VIII), unjust enrichment (Count IX), and constructive trust (Count X). Fagan asserts two securities claims against Trenchev, in his personal capacity, for violation of the Exchange Act (Count III) and the TSA (Count IV) only.

To be clear, Nexo, an internationally known cryptocurrency platform, denies it stole Fagan's—or any customer's—cryptocurrency. Yet Nexo understands Fagan is the master of his complaint and the Court may assume his non-conclusory factual allegations are true for purposes of this motion to dismiss. Given the serious and criminal nature of these allegations, however, Nexo wishes to inform the Court that, after Fagan filed his complaint, Nexo voluntarily cooperated with Fagan's counsel, participated in phone conferences, provided detailed documents and chain analyses, and patiently explained Fagan was likely the unfortunate victim of third-party hackers who obtained compromised Fagan's email account (the username and password for which is easily accessible on a popular Russian-language forum due to at least 14 separate data breaches), which they then used to access Fagan's Nexo account and steal his funds. After providing this information, Nexo offered to stipulate to allow Fagan to amend his FAC to drop his theft-by-Nexo allegations and assert whatever claims he thought were warranted. He refused to amend or drop

4

even one count of his FAC. Thus, to the extent the Court considers the merits, it should evaluate Fagan's claims against the false factual predicate Fagan pleads.

### B.      The Contracts Governing the Parties' Relationship.

The parties' relationship with respect to the EIP and the various services associated with Fagan's Nexo account are governed by certain terms and conditions (*i.e.*, contracts), including the Nexo Earn Interest Product General Terms and Conditions ("Earn Terms") and the Nexo Services General Terms and Conditions ("Services Terms").[2] The Earn Terms, as they appeared on May 4, 2024, are attached to, referenced and quoted in Fagan's Complaint.  FAC ¶¶ 27-32.

Fagan alleges he opened his Nexo account and purchased the EIP in February 2021 (*id.* ¶ 51) and, maintained the product on fixed terms through, at least, February 13, 2023, when he opted out of the fixed term. *Id.* ¶ 55.   Copies of the Earn and Service Terms in effect during this period are attached to the August 26, 2024 Affidavit of Augustus Greaves ("Greaves Decl.").[3]   During the relevant time period between March 9, 2021 and February 13, 2023, Section XIV(4) of the Earn Terms stated the following:

> Nexo shall reserve its right to amend or supplement these General Terms from time to time. Any such amendments or supplements shall become valid and in full force as of the date of their publishing on the Nexo Platform unless otherwise indicated, while they shall not affect the current terms of your active Nexo Earn Interest Products for a Fixed Term. You shall regularly check the Nexo Platform to inform yourself about any such amendments or supplements. By continuing to use the Nexo Earn Interest Product, after any such amendments or supplements have taken effect, you thereby indicate your acceptance of the amended or supplemented General Terms. If you do not wish to be bound by any amendments or supplements to these General Terms, you shall discontinue your use of the Nexo Earn Interest Product immediately.

Greaves Aff., Ex. 3.

---

[2] The Nexo Services General Terms and Conditions was referred to as the Nexo Wallet Services General Terms and Conditions for those versions issued before December 14, 2022.

[3] The Court can consider these terms in deciding Defendant's Motion to Dismiss as versions are attached to the FAC and they are repeatedly referenced in the FAC.  *Lone Star Fund V (U.S.) LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

The provisions of the Earn Terms addressing the withdrawal of digital assets cross-referenced the Services Terms, which contain several provisions related to the customer's obligation to maintain the security of their account. For example, Section IV(7) of the Services Terms provides:

> You are solely responsible for keeping your device safe and maintaining adequate security and control of your username, password and shall be solely responsible for any access to and use of the Nexo Services through your device, regardless of whether such access may have been made without your knowledge, authority or consent. We will not be liable to you for any loss or damage resulting from such use. In case your device has been lost or stolen or has been accessed or used in an unauthorized manner, you shall notify Nexo of this and if the device has been accessed or used in an unauthorized manner, you shall, as soon as possible, reset the password.

Greaves Aff., Ex. 4.

Section XIX(4) of Services Terms further provides that the customer "shall be fully responsible for the security and authenticity of all instructions sent through the Nexo Platform and you shall be bound by all such instructions. We will assume that all the instructions received from your Nexo Account are coming from you and we shall not be obliged to verify this." *Id*.

## STATEMENT OF THE ISSUES

Pursuant to Local Rule CV-7(1), Defendants identify the following issues for the Court to decide in this dispositive motion:

1. Whether the Court should dismiss the two securities claims against Defendant Antoni Trenchev for lack of personal jurisdiction because Trenchev had no personal involvement in the alleged theft of cryptocurrency described in the FAC.

2. Whether the Court should dismiss for failure to state a claim because:

   a. Plaintiffs Texas Theft Liability and Conversion claims are not adequately pled and are barred by economic loss rule and because there is no identifiable *res*.

6

b.  the securities claims are barred because allegations of theft do not state a securities fraud claim;

c.  the securities claims, and the common law fraud claim, are barred because they are not pled with Rule 9's required particularity;

d.  the EFTA claim is barred on five different statutory grounds, including the one-year statute of limitations;

e.  Plaintiff's negligence claim is bared by both the contract between the parties and the economic loss rule, and is otherwise belied by Plaintiff's allegations of intention wrongdoing on the part of Nexo; and

f.  the equitable claims for money had and received, unjust enrichment, and constructive trust are barred because contract governs the parties' relationship, Fagan has an adequate remedy at law, and the latter two claims are not stand-alone causes of action;

## ARGUMENT

### I.  THE COURT SHOULD GRANT NEXO'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AS TO DEFENDANT ANTONI TRENCHEV SUED IN HIS INDIVIDUAL CAPACITY.

Nexo and Trenchev assert all arguments under Rule 12(b) in the strict alternative to their FNC motion to dismiss and § 1404 motion to transfer. If and only if the Court denies both those motions, Defendant Antoni Trenchev moves to dismiss Fagan's federal and Texas securities claims against him (Counts III and IV) for lack of personal jurisdiction. Trenchev is not subject to general jurisdiction in Texas—Fagan pleads that Trenchev is a Bulgarian citizen and resident of the United Arab Emirates. Nor is there any basis for specific jurisdiction over Trenchev in Texas.  His sole connection to Fagan and the two securities claims asserted against him in this action is his role as

7

director and purported "control person" of Defendant Nexo Capital.  But this is insufficient to subject him to personal jurisdiction in Texas, as one federal court recently concluded with respect to similar securities claims asserted against Trenchev personally. *See Cress v. Nexo Fin. LLC,* No. 23-cv-00882-TSH, 2023 U.S. Dist. LEXIS 182136, at *22 (N.D. Cal. Oct. 10, 2023) (granting motion to dismiss state-law securities claims against Trenchev based on lack of personal jurisdiction). This Court should reach the same conclusion as the *Cress* court and dismiss Trenchev from this action for lack of personal jurisdiction because Fagan does not plead Trenchev had any direct personal involvement in the purported cryptocurrency theft and conversion.

> **A.      Fagan fails to allege that Trenchev was personally involved in the alleged theft.**

Fagan asserts claims against Trenchev personally for violation of the Exchange Act, 15 U.S.C. § 78j(b) (Count III), and violation of the Texas Securities Act, Tex. Gov't Code § 4008.051(a) (Count IV). FAC ¶¶ 101-116.  His allegations as to Trenchev for both counts are generic and conclusory, with no allegation that Trenchev played any personal role in the meritless theft allegations that underlie Fagan's FAC. As to Count III, the alleged false representations that form the basis of the Exchange Act claim are based on a bullet point list of "representations Nexo Capital Made on its publicly available website" regarding the terms and security associated with his Nexo account. *Id.* ¶ 103. Fagan does not allege that Trenchev personally made those statements to him or otherwise had any other sort of personal involvement in the conduct. *Id.* Indeed, the only allegation specific to Trenchev as to Count III is that "Antoni Trenchev is a director and manager of Nexo Capital" and that " [i]n that capacity, he controls Nexo Capital, and therefore, he and Nexo Capital are jointly and severally liable for the acts alleged above. *See* 15 U.S.C. § 78t." *Id.* ¶ 107. Thus, Fagan seeks to predicate personal Exchange Act liability on Trenchev based solely on his

purported status as a corporate officer and his conclusory allegation that Trenchev "controls" Nexo.

Fagan's allegations as to Count IV are similarly generic and conclusory. In fact, the allegations supporting Fagan's state law securities claim are nearly identical to the allegations supporting his federal securities claim. *Compare Id.*  ¶¶ 101-108 (Count III), *with* ¶¶ 109-116 (Count IV). Again, the only allegation in Count IV specific to Trenchev is that "Antoni Trenchev is a director and manager of Nexo Capital Inc." and that in "that capacity, he controls Nexo Capital Inc., and therefore, he and Nexo Capital Inc. are jointly and severally liable for the acts alleged above. See Tex. Gov't Code § 4008.055(a)." *Id.* ¶ 116.

A review of the allegations as to Trenchev outside of Counts III and IV confirm that Fagan does not allege any specific conduct that Trenchev directed towards Fagan or Texas. Instead, Fagan alleges generalities regarding Trenchev's leadership role at Nexo. These allegations include that Trenchev: (1) is a "director and manager of certain companies with the Nexo Group" (*id.* ¶ 16); (2) was referenced in a Consent Order (*i.e.*, a settlement) with the Texas Securities Board[4] (¶ 21); and was allegedly the target of a criminal investigation in Bulgaria (¶ 84). That is it. While the FAC is rife with false allegations that Nexo "stole assets worth millions of dollars from Dr. Fagan" (*Id.* ¶ 1), there is not one plausible allegation personally linking Trenchev to this purported theft beyond his mere status as a corporate officer or director of Nexo or its affiliates.

---

[4] As shown in Exhibit 5 of the FAC, Trenchev signed the Consent Order in his capacity as "Managing Director" for Nexo Capital Inc. ECF 2-5 at 20. The Consent Order identifies the "sole Respondent Nexo Capital Inc.," does not identify Trenchev as a party in his personal capacity, and does not reflect that Trenchev signed the document in his personal capacity. ECF 2-5 at 2. Nor does the Consent Order contain any admission of wrongdoing by Trenchev in his personal capacity.

**B.      Fagan fails to adequately plead general or specific jurisdiction.**

It is Fagan's burden to present prima facie evidence that personal jurisdiction exists for each claim he asserts. *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012); *Rolls-Royce Corp. v. Heros, Inc*., 576 F. Supp. 2d 765, 772 (N.D. Tex. 2008) ("Personal jurisdiction must exist for each claim asserted against a defendant."). Fagan has failed to meet this burden with respect to the claims asserted against Trenchev.

**1.      The Court does not have general jurisdiction over Trenchev.**

General jurisdiction exists only when the defendant's contacts with the forum state are so "continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). There is no general jurisdiction over Trenchev because he is not "at home" in Texas. Far from it. Trenchev is a Bulgarian citizen, and Fagan pleads that Trenchev "is an individual who, on information and belief, resides in United Arab Emirates. As a director of Nexo Capital, Inc., he can be served via the procedures set forth in the Hague Service Convention." *See* August 26, 2024 Affidavit of Antoni Trenchev ("Trenchev Aff.") ¶ 4; FAC ¶ 11. Trenchev is not a U.S. citizen, is not a resident of Texas or the United States, does not own real property in Texas or the United States, and does not regularly conduct business there. *Id*. ¶¶ 6-11. In the absence of general jurisdiction, personal jurisdiction over Trenchev is only appropriate in Texas if Fagan can establish that the standard for specific jurisdiction is satisfied.  It is not.

**2.      The Court does not have specific jurisdiction over Trenchev.**

Cress asserts securities claims predicated on Trenchev role as a director and "control person" of Nexo, but the Court must still have jurisdiction over the control person. *ACS Partners, LLC v. GFI Mgmt. Servs., Inc.*, No. H-15-1111, 2015 U.S. Dist. LEXIS 171424,at *6 (S.D. Tex.

10

Dec. 23, 2015) ("[a]n individual's status as an officer, director, or majority shareholder of a corporation alone is insufficient to support the exercise of personal jurisdiction.") *see also Nat'l Architectural Prods. Co. v. Atlas-Telecom Servs.—USA, Inc.*, No. 3:06-cv-0751-G, 2007 U.S. Dist. LEXIS 51182, at *20 (N.D. Tex. July 13, 2007) (holding that corporate officer defendant was not subject to specific personal jurisdiction because "these is no indication that [defendant] had any direct contact with plaintiff, in Texas or any other state...[t]o the extent that the claims against [defendant] relate to Texas, they do so only through the 'mere fortuity' that [plaintiff] happens to be a resident of Texas").

Here, Fagan does not allege any contacts between Trenchev and Texas outside of his role as director and purported "control person" of Nexo Capital. "Generic and conclusory allegations of control over a company are insufficient as a matter of law to plead specific jurisdiction." *See Basic v. Bprotocol Found.*, No. A-23-CV-533-RP, 2024 U.S. Dist. LEXIS 135377, at *13 (W.D. Tex. July 31, 2024) (recommending dismissal of securities claims against foreign individual defendants who allegedly controlled a cryptocurrency protocol for lack of personal jurisdiction); *Cambria Cnty. Emps. Ret. Sys. v. Venator Materials PLC*, 532 F. Supp. 3d 440, 452 (S.D. Tex. 2021) (granting dismissal of securities claims against foreign control person for lack of personal jurisdiction because there was no plausible allegation of his personal involvement in the alleged misconduct).

Another federal court in California recently dismissed similar securities claims against Trenchev for lack of personal jurisdiction, and denied jurisdictional discovery, this Court should do the same. *Cress*, 2023 U.S. Dist. LEXIS 182136, at *22. Here, Trenchev is not alleged to have signed any contacts or have any communications regarding any other issue with Fagan whatsoever. Trenchev had no communication or involvement with Fagan whatsoever. Trenchev Aff. ¶¶ 14-20.

11

This Court should reach the same conclusion as the *Cress* court and dismiss the claims against Trenchev. *Id.* at *21-22 ("Cress's only other allegations that Trenchev was involved in the Cress-Nexo relationship are conclusory allegations that Trenchev exercised control over Nexo and directed and/or authorized the sale of NEXO Tokens to Cress. ECF No. 1 ¶ 14. These allegations are insufficient.").

## II.    ALTERNATIVELY, THE COURT SHOULD GRANT NEXO'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief may be granted, Fagan must plead "enough facts to state a claim to relief that is plausible on its face," and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 555 (2007). Moreover, claims for fraud and violations of the anti-fraud provisions of federal and state securities laws are subject to the heightened pleading requirements of Rule 9(b), which require Fagan to identify the "who, what, when, where, and how" of the events constituting the claim. *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 796 (N.D. Tex. 2009); *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006) (holding heightened pleading standards of Private Securities Litigation Reform Act apply to claims for violation of Sec. 10(b) of Exchange Act, which incorporates, at a minimum, "the 'who, what, when, where, and how' requirements of Rule 9(b).")

### A.    Plaintiffs Texas Theft Liability and Conversion Claims Should be Dismissed.

Plaintiffs Texas Theft Liability ("TTLA") and Conversion claims predicated on Plaintiffs' theft-by Nexo theory are inadequately plead, barred by the economic loss doctrine, and should be

12

dismissed.    First, unlawful appropriation of Plaintiff's property is an essential element of both Plaintiff's TTLA and Conversion claims. *See One Place Capital v. Oakes*, No. 4:18-CV-829-SDJ-KPJ, 2021 U.S. Dist. LEXIS 166805, at \*12-13 (E.D. Tex. Aug. 2, 2021) (To prevail on a claim of conversion, the plaintiff must show "defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights"); Texas Penal Code. Tex. Civ. Prac. & Rem. Code § 134.003(a) ("[a] person who commits theft is liable for the damages resulting from the theft."); § 134.002(a) (defining "theft" as "unlawfully appropriating property").  Aside from conclusory allegations that Nexo "stole" his cryptocurrency, Plaintiff does not offer any well pled allegations or facts to establish that Nexo (as opposed to a third-party hacker) appropriated the cryptocurrency in question.

Second, Plaintiff fails to adequately plead that Nexo intended to appropriate his property to support his TTLA claim. "[T]o succeed on a TTLA claim, the plaintiff must show that the defendant intended to unlawfully appropriate the property or obtain the services in question." *Natour v. Bank of Am., N.A.*, No. 4:21-CV-00331, 2022 U.S. Dist. LEXIS 110685, at \* (E.D. Tex. June 22, 2022) (citing *Winkley v. State*, 123 S.W.3d 707, 713 (Tex. Ct. App.—Austin 2003, no pet.)). "The intent to deprive contemplated under § 31.03 must exist at the time of taking or exchange." *In re Powers*, 261 F. App'x 719, 722 (5th Cir. 2008) (citing *Reed v. State*, 717 S.W.2d 643, 645 (Tex. Ct. App.—Amarillo 1986, no writ)).  Plaintiff alleges that Nexo "unlawfully transferred the assets to an unknown individual" without Fagan's consent and "in order to deprive" Fagan of the assets.  FAC ¶¶ 97, 98.  But these allegations do address Nexo's intent or establish that Nexo intended to appropriate Fagan's assets.  Plaintiff's TTLA must therefore be dismissed.

Third, both Plaintiff's TTLA and Conversion claims are barred by the economic loss rule. The economic loss rule "generally precludes recovery in tort for economic losses resulting from

13

the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid—Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Sw. Bell. Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991)); *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 107 (Tex. App. 2000). ("Under the economic loss rule, economic damages are not recoverable unless they are accompanied by actual physical harm to persons or their property.") "In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. of S. Fla. v. J.C. Penney Co,.*, No. 3:05-CV-2499-L, 2006 U.S. Dist. LEXIS 63109, at *11 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc*., 960 S.W.2d 41, 45-47 (Tex. 1998)).

Here, Nexo's obligations with respect to the EIP and the cryptocurrency Fagan deposited on the Nexo platform, including any obligations to prevent unauthorized transfers of those assets, are governed by the Earn and Services Terms. Plaintiff's TTLA and Conversion claims, which are merely sensationalized attempts to hold Nexo liable for breaches of the Earn and Service Terms, are barred by economic loss rule. *See Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs*., 787 F.3d 716, 725 (5th Cir. 2015) ("Several Texas cases have applied the economic loss rule to claims for misappropriating property entrusted under a contract."); *Pratt v. S. Austin Family Practice Clinic LLP*, No. A-18-CV-173-LY, 2021 U.S. Dist. LEXIS 168393, at *15 (W.D. Tex. June 7, 2021), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 168251, at *3 (W.D. Tex. July 26, 2021) (dismissing with prejudice claims for fraud, conversion, misappropriation, and TTLA); *See also Firequip, Inc. v. Frac, LLC*, No. MO:17-CV-00073-RAJ, 2018 U.S. Dist. LEXIS 228924, at *9 (W.D. Tex. Jan. 10, 2018) (concluding that "Plaintiff's conversion and TTLA claims were bared

14

by economic loss rule … where it makes sense to defer to the parties bargained-for agreement as to the allocation of economic losses they might incur over the course of their business relationship."). Plaintiff's TTLA and Conversion claims should therefore be dismissed.

Finally, the Court should dismiss the Conversion and TTLA claims because the cryptocurrency subject to the EIP is fungible and not specifically identifiable. Actions for conversion of money are available in Texas only where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper. *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (internal citations and quotation marks omitted). Similarly, in order to establish a constructive trust, the proponent must prove, among other things, tracing to an identifiable *res*. *Baxter v. PNC Bank Nat. Ass'n*, 541 F. App'x 395, 398 (5th Cir. 2013). The TTLA similarly requires that any property or money allegedly stolen was a "specific chattel." *Margaux Warren Park Partners, Ltd. v. GE Bus. Fin. Servs. (In re Margaux Warren Park Partners, Ltd.)*, Nos. 08-43388, 09-04022, 2009 Bankr. LEXIS 4128, at *8 (Bankr. E.D. Tex. Dec. 15, 2009). Section XIV(3) of the Earn Terms provides that Nexo is able to offer interest through the EIP because Nexo deploys its customer's cryptocurrency in various yield-producing assets, stating that Nexo "might convert any Digital Assets in regard to which you use the Nexo Earn Interest Product into other Digital Assets for investment purposes. Any such investment will be made in our name only and you will have no benefits and liabilities from it." Greaves Aff., Ex. 3. Because Nexo had no contractual obligation to segregate and maintain the same cryptocurrency that Fagan transferred onto the platform, Fagan fails to state a claim for those counts requiring specifically identifiable assets.

15

**B.      The Court Should Dismiss the Negligence Claim**.

The Court should also dismiss Plaintiff's negligence claim based on the economic loss rule described above and a few additional reasons. First, the economic loss rule bars claims for "negligent performance of a contract." *Aries Bldg. Sys. v. Vanguard Univ. of S. Cal.*, No. 4:19-CV-3307, 2021 U.S. Dist. LEXIS 215576, at *8 (S.D. Tex. July 14, 2021). Second, there is no legal duty between contracting parties that can give rise to a negligence claim. *Vinson v. AmeriHome Mortg. Co., LLC*, No. 4:22-cv-0928-P, 2023 U.S. Dist. LEXIS 63074, at *4 (N.D. Tex. Apr. 11, 2023). Here, Plaintiff alleges that Nexo "as seller of the EIP, owed Dr. Fagan a duty of care." FAC ¶ 135.  Any duty owed to Fagan in sale of the EIP to ensure the safety of his cryptocurrency on the Nexo platform is a product of the Earn and Services Terms and not common law. Third, the concept of intentional theft is irreconcilable with negligence. *See Welsh v. Correct Care Recovery Sols.*, No. 5:18-CV-020-BQ, 2023 U.S. Dist. LEXIS 233310, at *57 (N.D. Tex. Dec. 27, 2023) ("Because Welsh's claims and evidence allege willful acts, Welsh cannot recover on a negligence theory.") Plaintiff alleges throughout the FAC that Nexo intentionally stole his cryptocurrency.  *See* FAC ¶ 1 ("Defendants—the operators of an international cryptocurrency platform—stole assets worth millions of dollars from Dr. Fagan"); ¶ 7 ("After Nexo Capital stole Dr. Fagan's assets . . . ."); ¶ 30 ("Nexo Capital stole those assets . . . ."); ¶ 33 ("Nexo Capital stole millions of dollars of assets from Dr. Fagan."); ¶ 69 ("Nexo Capital unlawfully misappropriated assets worth millions of dollars from Dr. Fagan's account.").  These allegations of intentional unlawful conduct on the part of Nexo, while false, undermine Plaintiff's negligence claim.

**C.      The Court Should Dismiss the Federal and State Securities Claims.**

Assuming for the sake of argument that any securities were involved, the Court should dismiss Plaintiff's federal and Texas securities claims because they are not adequately pled and

16

otherwise are not actionable.  First, Fagan's federal and state securities claims should be dismissed because theft of securities cannot substantiate a securities fraud claim, and Fagan's claims are not pled with particularity. As a threshold matter, the purported conversion or theft of alleged securities does not state a claim for securities fraud. *Advanced Laser Prods., Inc. v. Signature Stock Transfer, Inc.*, No. 3:98-CV-1624-D, 1999 U.S. Dist. LEXIS 5179, at *9 (N.D. Tex. Apr. 12, 1999) (a claim founded solely on conversion or theft of securities is not recognizable under § 10(b) and Rule 10b-5); *see, also, Pross v. Katz*, 784 F.2d 455, 459 (2d Cir. 1986) ("The complaint here alleges no more than a conversion of property that happened to involve securities. We are unwilling to extend the reach of the securities laws to every conversion or theft of a security. . . . As presently drafted, the complaint does not allege that [defendant] induced [plaintiff] to take steps at the time of the purchase and sale of the latter's investments that contributed directly to the later fraudulent conversion."); *Bochicchio v. Smith Barney, Harris Upham & Co.*, 647 F. Supp. 1426, 1430 (S.D.N.Y. 1986) ("The conversion of securities, even if it occurs from a brokerage account, does not state a claim under § 10(b)."); *Flickinger v. Harold C. Brown & Co., Inc.,* 947 F.2d 595, 598 (2d Cir. 1991) ("Section 10(b) is not violated by a fraudulent scheme that, some time after a purchase of securities, divests the purchaser of ownership").

Rather, to state a securities claim the fraud must have been integral to the plaintiff's purchase or sale of the security. *Id.* "Simply the fact that the converted property comprises securities does not transform plaintiff's claim of conversion to one for securities fraud." C*oppola v. Applied Elec. Corp.*, No. 98 Cv. 3149, 1998 U.S. Dist. LEXIS 14855, at *8-9 (E.D.N.Y. July 28, 1998).  Here, Fagan's securities claims are predicated entirely on the alleged theft of the cryptocurrency placed with Nexo as part of the EIP.  FAC ¶ 104 ("Nexo Capital did not disclose that it would allow unauthorized withdrawals and/or transfers from [Fagan's] account."); ¶ 112

17

(same).  Because theft of securities cannot substantiate a securities fraud claim, the Court should dismiss Fagan's claims.

Second, Plaintiffs securities claims are not pled with particularity as required by Rule 9(b) and the PSLRA.  *Wesolek v. Layton*, 871 F. Supp. 2d 620, 635 (S.D. Tex. 2012); *ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F.3d 336, 350 (5th Cir. 2002)("[A] plaintiff pleading a false or misleading statement or omission as the basis for a section 10(b) and Rule l0b-5 securities fraud claim must, to avoid dismissal … (1) specify the [sic] each statement alleged to have been misleading, i.e., contended to be fraudulent; (2) identify the speaker; (3) state when and where the statement was made; (4) plead with particularity the contents of the false representations; (5) plead with particularity what the person making the misrepresentation obtained thereby; and (6) explain the reason or reasons why the statement is misleading, i.e., why the statement is fraudulent").

The five bullet-point misrepresentations Fagan identified in support of each of his securities claims relate to account security features that might be relevant to preventing a *third-party threat actor* from compromising Fagan's account. But those representations are irrelevant to Fagan's allegation that *Nexo* stole his funds. Defying common sense and the detailed assistance Nexo provided, Fagan nonetheless goes out of his way to plead his complaint based on a Nexo theft theory rather than a third-party hacker theory—stating that his allegations "preclude the possibility that a third party stole the assets." FAC ¶ 69 & n.10. Fagan also does not allege when these purported misleading statements were made. Notably, these statements appear to come various exhibits attached to Fagan's Complaint, but every website citation, printout and screenshot in the FAC states that the information was gathered when Fagan's attorneys "last visited May 22, 2024."  FAC fn. 2, 5, 6, 7; ¶¶ 41, 44, 45; Exs. 1-4, 8, 10-11.  Crucially, Fagan does not allege that

18

the statements appeared on the website in early 2021, or that he reviewed them prior to purchasing the EIP.  Fagan also does not explain why the cited statements are false.

Third, Fagan fails to plead any recoverable loss tied to the alleged fraud. He does not plead that his EIP declined in value or that he did not receive the interest to which he was entitled; he pleads only that his cryptocurrency was stolen *after* he earned the interest. In the *Cress* action, the court dismissed the state law securities fraud claim based on the EIP because the plaintiff failed to plead any fraud-based losses associated with that particular alleged security. *See Cress*, 2023 U.S. Dist. LEXIS 182136, at *44 (dismissing claim because "the value of the Earn Account was actually higher at the time of liquidation and Cress benefitted financially from interest while he possessed it"). The same is true here.

Finally, Fagan's securities claims predicated on the purchase of the EIP should be dismissed because his purchase of the EIP was not a domestic transaction subject to the Exchange Act or TSA. *See S&D Trading Acad., LLC v. AAFIS, Inc*., 336 F. App'x 443, 447-48 (5th Cir. 2009) ("Texas courts generally look to decisions of the federal courts to interpret the Texas Securities Act because of the obvious similarities between the state and federal laws."). For private actions, the Exchange Act applies only to "[1] securities listed on domestic exchanges, and [2] domestic transactions in other securities." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). Here, Fagan fails to plausibly plead that his purchase of EIP from a foreign cryptocurrency platform was a covered domestic transaction.  *See Basic*, 2024 U.S. Dist. LEXIS 135377, at *22-29 (concluding that foreign cryptocurrency investment was not a covered domestic transaction even though the purchase was initiated in the United States). The transactions here are "so predominantly foreign as to be impermissibly extraterritorial" because "even if a transaction occurs in the United States, the features and incidents of the transaction may nevertheless be so

19

foreign that it is not regulated by § 10(b)." *Cavello Bay Reinsurance Ltd. v. Stein*, 986 F.3d 161, 166 (2d Cir. 2021). Aside from the allegation that a Texas resident purchased the EIP, all of the pleaded conduct relevant to Nexo's actions, and all pleaded facts regarding EIP, are based on Nexo's conduct, events, and investment activity that occurred outside the United States.

### D.     The Court Should Dismiss the Common Law Fraud Claim.

Fagan's common law fraud claim fails for the same reason as does his securities fraud claims. To state a claim for fraud, Fagan must "sufficiently allege (1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010). The Fifth Circuit has required in order to meet the Rule 9(b) standard, a party, at a minimum, must set forth the "who, what, when, where, and how" of the alleged fraud. *See Burbank v. Compass Bank*, No. 1:15-CV-60, 2016 U.S. Dist. LEXIS 92518, at *11 (E.D. Tex. Mar. 29, 2016). Fagan's conclusory allegations that Defendants had fraudulent intent will not suffice; he must allege specific facts supporting an inference of fraud. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).

Fagan does not adequately plead the elements of his fraud claim with particularity.  As explained above, the alleged false representations related to account security vis-à-vis third party threat actors, not theft by Nexo. Fagan does not plead when and where he read these representations, whether such statements were made before the conduct at issue (as noted above the various printouts  attached to his complaint are dated 2024), and whether he actually relied on such representations. Nor does Fagan plausibly allege that Nexo's representations about account security were false when made. *See Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 351 (S.D.N.Y.

2023) (dismissing fraud claim because "the allegations made by Plaintiff—that a single account (Plaintiff's own) was compromised and that Defendant failed to respond sufficiently timely to an outside attack—do not demonstrate that the impression was false when Uphold communicated that [the platform was secure] to consumers."). Because he does not plead the elements of his fraud claims, Plaintiff's claim must be dismissed.

### E.      The Court Should Dismiss the EFTA Claim.

The EFTA provides "a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693. It protects consumers with accounts "established primarily for personal, family, or household purposes." *Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 165 (5th Cir. 2015) (citing 15 U.S.C. § 1693a(2)). Generally, 15 U.S.C. § 1693m imposes civil liability on an institution that fails to comply with the provisions of the EFTA. 15 U.S.C. § 1693m(a). Fagan's EFTA claim is barred as a matter of law for five independent reasons—(1) it is time barred under 15 U.S.C. § 1693m(g); (2) an "unauthorized electronic fund transfer" does not include a transfer initiated "[b]y the financial institution or its employee" under 12 C.F.R. § 1005.2(m)(3); (3) Fagan's investment account does not qualify as an "account" for purposes of the EFTA under 15 U.S.C. § 1693a(2); (4) Fagan's securities allegations trigger the security/commodity exclusion of 15 U.S.C. § 1693a(7)(C); and (5) cryptocurrency does not constitute "funds" for purposes of 15 U.S.C. § 1693a(7). If the Court agrees with Nexo's position that Fagan's claim is time barred, it need not address the remaining arguments concerning the scope of the EFTA.

First, the Court should dismiss the EFTA claim with prejudice because it is time barred. An EFTA claim must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1693m(g). The timeliness of an EFTA claim, therefore, depends upon when the

21

occurrence of the alleged violation took place. *Whittington v. Mobiloil Fed. Credit Union*, No. 1:16-CV-482, 2017 U.S. Dist. LEXIS 184463, at *33 (E.D. Tex. Sep. 14, 2017). "Under the EFTA, the statute of limitations began to run when the allegedly erroneous transfers were made, because that is when [the plaintiff] had a complete and present cause of action." *Randolph v. Comerica Bank*, No. 3:13-CV-4810-B-BH, 2014 U.S. Dist. LEXIS 60129, at *6 (N.D. Tex. Mar. 3, 2014); *Soileau v. MidSouth Bancorp Inc*., No. 6:19-CV-00537, 2020 U.S. Dist. LEXIS 47763, at *8 (W.D. La. Feb. 26, 2020) ("in the case of purely unauthorized transfers, such as the instant case, the one-year time limitation is triggered by each individual transfer"). "[T]he discovery rule does not apply to the EFTA." *Soileau v. MidSouth Bancorp, Inc*. 2020 U.S. Dist. LEXIS 47763 at *9 (W.D. La. Feb. 26, 2020). Fagan alleges that the unauthorized transfers at issue occurred between February 28 and March 5, 2023. FAC ¶ 70. The statute of limitations for Fagan's EFTA claim therefore expired, at the latest, on March 5, 2024.  Yet Fagan did not file the present action until over a year later on May 22, 2024. ECF No. 1.  Consequently, his EFTA claim is time barred.

Second, Fagan alleges that Nexo stole his cryptocurrency; however, an "unauthorized electronic fund transfer" does not include a transfer initiated "[b]y the financial institution or its employee" under 12 C.F.R. § 1005.2(m)(3).  Given this exclusion, Fagan's allegation that "someone at Nexo Capital accessed Dr. Fagan's account and stole nearly all of Dr. Fagan's funds over the course of seventeen transactions" is outside the scope of the EFTA. FAC ¶ 69.

Third, the Court should dismiss the EFTA claim because Fagan's Nexo account, established primarily for-profit making purposes, is not covered by the EFTA. The EFTA only applies to accounts established primarily personal, family or household purposes. 15 U.S.C. § 1693a(2) (defining "account" as "demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section

22

1602(i) of this title), as described in regulations of the Bureau, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement.").   If the purpose for which the account was established "was for investment, which has an inherent profit motive," and was not used to receive paychecks or to hold funds earmarked to pay household or other personal expenses, then it is not covered. *Yuille*, 686 F. Supp. at 341. Fagan's Nexo account does not qualify for "account" coverage under the EFTA because Fagan concedes throughout the FAC that it was an investment account. *E.g.* FAC ¶ 35; *Yuille*, 686 F. Supp. at 341 (holding cryptocurrency investment account "established primarily" for profit-making purposes does not qualify as an "account" subject to EFTA).

Fourth, given Fagan's allegation that the EIP is a security and his claims against Nexo for securities fraud, he has pleaded himself out of Court with respect to the EFTA, which does not apply to "any transaction the primary purpose of which is the purchase or sale of securities or commodities through a broker-dealer registered with or regulated by the Securities and Exchange Commission." 15 U.S.C. § 1693a(7)(C). While Nexo acknowledges that one court has narrowly construed the scope of the security/commodity exclusion with respect to cryptocurrency accounts, *Nero v. Uphold HQ Inc.*, 688 F. Supp. 3d 134, 144 (S.D.N.Y. 2023), Nexo respectfully disagrees with the Nero court's narrow interpretation of the statute and also contends that this case is distinguishable on its facts because Fagan pleads that the unauthorized transactions at issue involved the sale of his EIP, which he pleads to be a security.

Finally, Nexo contends more broadly that the cryptocurrency and alleged securities in Fagan's account does not constitute "funds" for purposes of the EFTA. 15 U.S.C. § 1693a(7). Read in the context of the EFTA statute as a whole, the statutory reference to "funds" refers to legal

23

tender (*i.e.*, dollars) in traditional financial accounts used for personal household purposes—such as checking and savings accounts containing cash used for normal personal expenditures like buying groceries and paying bills. If Congress intended the EFTA to reach cryptocurrency investment accounts, it would have said so in the text of the statute. At the time these unauthorized transfers occurred, the EFTA regulations and federal regulators did not take the position that cryptocurrency accounts fall within the scope of the EFTA.

Nexo acknowledges the existence of adverse, out-of-district authority on this point (decided by the same district court judge) but respectfully contends that those cases reached the incorrect conclusion as to that issue. *Nero*, 688 F. Supp. 3d at 142 (Cote, J.) (citing *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 499 (S.D.N.Y. 2023) (Cote, J.)). Nexo believes that, if presented with the issue, the Fifth Circuit would narrowly construe the statutory term "funds" to exclude the alleged cryptocurrency transactions at issue here. To the extent the Court considers the issue in its statutory interpretation, the policy reasons that animate heightened protection for unauthorized transactions in checking and savings accounts used for everyday personal expenditures do not apply to cryptocurrency accounts used for investment purposes.

### F.      The Court Should Dismiss Plaintiff's Equitable Claims.

The Court should dismiss the equitable claims for money had and received, unjust enrichment, and constructive trust, because the parties' relationship is governed by contract, Fagan has an adequate remedy at law, and certain equitable claims are not stand-alone causes of action. It should dismiss the TTLA, conversion, and constructive trust claims because there is no identifiable *res*.

In *Villarreal v. First Presidio Bank*, the Fifth Circuit concluded that plaintiff could not validly bring a money had and received claim when express terms of a contract governed the

24

money at issue. *Villarreal*, 744 F. App'x 204, 205 (5th Cir. 2018). "[W]hen a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory[.]" *Id*. The existence of express contracts—the Earn and Services Terms—precludes equitable relief under the theory of money had and received. *See TIB-The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 672 (N.D. Tex. 2014). Nor can Fagan plead legal and equitable claims in the alternative because he does not dispute the existence of these contracts. *Payne v. Wells Fargo Bank, N.A.*, No. 3:12-CV-5219-M (BF), 2015 U.S. Dist. LEXIS 39325, at *14 (N.D. Tex. Jan. 20, 2015)

Additionally, the Court should dismiss the equitable claims because an adequate legal remedy is available, including the various claims for money damages Fagan has brought in this action and the breach of contract action that Fagan has opted not to assert. *Stonebridge Life Ins. Co., v. Pitts*, 236 S.W.3d 201, 203 n.1 (Tex. 2007) *(citing BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005)); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (holding that unjust enrichment is inapplicable when the parties have an express contract covering the subject matter of their dispute).

The Court should also dismiss the claims for unjust enrichment and constructive trust because Texas law characterizes them as remedies, not independent causes of action. *Ranieri v. AdvoCare Int'l, L.P.*, 336 F. Supp. 3d 701, 723 (N.D. Tex. 2018) ("Courts in the Northern District of Texas tend to agree that unjust enrichment is not a standalone cause of action, finding instead that it is a theory of liability that a plaintiff can pursue through several equitable causes of action."); *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010) ("A constructive trust is not a cause of action under Texas law.").

25

## CONCLUSION

For the foregoing reasons, Defendants Nexo Capital Inc. and Antoni Trenchev respectfully request that this Court dismiss Defendant Trenchev for lack of personal jurisdiction and dismiss Plaintiff's claims for failure to state a claim, and for any other relief the Court may deem appropriate.

Dated:  August 26, 2024

Respectfully submitted,

*/s/ Ian S. Shelton*
Ian S. Shelton (SBN 24056305)
BAKER & MCKENZIE LLP
800 Capitol Street, Suite 2100
Houston, TX 77002
Phone: (713) 427-5029
Fax: (713) 427-5099
ian.shelton@bakermckenzie.com


Alexander P. Fuchs (*pro hac vice* forthcoming)
EVERSHEDS SUTHERLAND (US) LLP
1114 Avenue of Americas
The Grace Building, 40th Floor
New York, NY 10036
Phone: (212) 389-5000
Fax: (212) 389-5099
alexfuchs@eversheds-sutherland.com

*Attorneys for Defendants Nexo Capital Inc. and Antoni Trenchev*

26

## DESIGNATION OF LEAD ATTORNEY

Pursuant to Local Rule CV-11, Defendants designate Mr. Ian S. Shelton of Baker & McKenzie LLP as lead attorney for the matter.


*/s/ Ian S. Shelton*
Ian S. Shelton

27

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 26, 2024, the foregoing document was filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Ian S. Shelton
Ian S. Shelton

28