# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| PETER FAGAN, | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | Cause No. 4:24-cv-00466 |
| | § | |
| NEXO CAPITAL, INC. and ANTONI | § | |
| TRENCHEV, | § | JURY TRIAL DEMANDED |
| | § | |
| **Defendants.** | § | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS ON FORUM *NON CONVENIENS* GROUNDS OR IN THE ALTERNATIVE MOTION TO TRANSFER

Plaintiff Peter Fagan ("Dr. Fagan") files this Response to Defendants' Motion to Dismiss on Forum *Non Conveniens* Grounds or in the Alternative Motion to Transfer. Doc. 5.

**TABLE OF CONTENTS**

Introduction ........................................................................................................................1

Background Facts ...............................................................................................................1

I.      Dr. Fagan opens an account with Nexo Capital's EIP. ...........................................2

II.     Nexo Capital amends its Earn Terms. ....................................................................2

III.    Nexo Capital sells unregistered securities and is barred from doing business in the United States. ..........................................................................................................3

IV.     Nexo Capital unlawfully misappropriates millions of dollars' worth of Dr. Fagan's crypto assets. ...........................................................................................................3

V.      Nexo Capital opts for a Cayman Islands forum selection clause ............................4

Responses to Statement of the Issues ................................................................................4

Argument ...........................................................................................................................5

I.      The Court should not dismiss this case based on *forum non conveniens* because Nexo Capital has not identified an enforceable forum-selection clause ...................5

        A.      The Earn Terms and Service Terms are contained within browsewrap agreements, which do not form a valid contract between Nexo and Dr. Fagan. ......................................................................................................5

        B.      Alternatively, the Earn Terms govern this dispute and those terms did not include an enforceable forum selection clause when Dr. Fagan opened his account ...................................................................................................7

                1.      Any amendments to the Earn Terms are unenforceable browsewrap agreements .....................................................................................8

                2.      Even if Dr. Fagan was notified of the amended Earn Terms, those terms are illusory and cannot form a valid contract ..........................9

                3.      Alternatively, the forum-selection clause is unreasonable and should not be enforced ...........................................................................10

II.     The Court should not transfer this case to the Northern District of Texas. ..........12

        A.      The private interest factors do not weigh in favor of transfer. ...................13

                1.      The "relative ease of access to sources of proof" factor is neutral...13

                2.      The "availability of compulsory process" factor is neutral ..............14

                3.      The "cost of willing witnesses" factor is neutral. ...........................15

                4.      The "all other practical problems" factor is neutral .........................15

        B.      The public interest factors do not weigh heavily in favor of transfer ..........16

Conclusion .......................................................................................................................17

## INTRODUCTION

Dr. Fagan filed this lawsuit after losing millions of dollars' worth of cryptocurrency due to Defendants Nexo Capital, Inc. and Antoni Trenchev's (collectively, "Nexo") misconduct. Nexo tries to effectively escape liability by requesting that the Court dismiss this lawsuit under *forum non conveniens* based on a London forum-selection clause in a superseded version of Nexo's terms and conditions, which Nexo has the unilateral right to modify at any time without giving notice to its users. Nexo offers no evidence to show that Dr. Fagan had actual or constructive knowledge of Nexo's terms and conditions, let alone any amendments to those terms and conditions. Thus, Nexo has failed to show that Dr. Fagan assented to a valid contract containing a forum-selection clause. Alternatively, enforcement of a forum-selection clause would be unreasonable under the circumstances of this case.

Nexo's request to transfer this case to the Northern District of Texas, Fort Worth Division, "for the convenience of parties and witnesses" is equally unsupported. Nexo does not identify a single witness who would benefit from transfer. At best, Nexo argues it would be more convenient for Dr. Fagan to litigate this case in the Northern District. But Dr. Fagan, as the plaintiff in this case, has the right to choose his forum. Nexo cannot overcome that right by claiming to know what is best for Dr. Fagan. The Court should therefore deny Nexo's Motion in its entirety.

## BACKGROUND FACTS

Nexo Capital is a Cayman Islands entity that operates an international cryptocurrency platform. Doc. 2 ¶ 1. In that capacity, Nexo Capital offers various financial

services and products related to crypto assets, including an "Earned Interest Product" ("EIP"). *Id.* ¶¶ 1, 35. The EIP allows investors to tender to Nexo Capital certain crypto assets, which Nexo Capital then deposits into interest-yielding accounts. *Id.* ¶ 36. Nexo Capital claims that investors who purchase an EIP "will start earning compounding interest after a minimum of 24 hours of [the] transfer" [sic]. *Id.* ¶ 37.

## I.    Dr. Fagan opens an account with Nexo Capital's EIP.

Dr. Fagan is an occupational medicine specialist residing in Comanche County, Texas. Doc. 2 ¶¶ 1, 9. Dr. Fagan opened an account with Nexo Capital's EIP in February 2021 on fixed terms. *Id.* ¶ 51. Nexo does not allege that Dr. Fagan affirmatively manifested an intent to agree to any of Nexo Capital's terms and conditions (via clicking, checking a box, etc.) when he opened his account. *See generally* Doc. 5.

When Dr. Fagan opened his account, the Nexo Earn Interest Product General Terms and Conditions ("Earn Terms")—which, as discussed below, are the relevant terms and conditions—included the following forum selection clause:

> Any dispute arising out of or in connection with the Agreement, including with these General Terms, unless amicably settled between the Parties, shall be referred to the competent court or other dispute resolution authority, determined as per the procedural law of Nexo jurisdiction.

Doc. 5-3 at 8. "Nexo jurisdiction" is an undefined term. *Id.*

## II.   Nexo Capital amends its Earn Terms.

After Dr. Fagan opened his account, he proceeded to buy and deposit certain cryptocurrencies through Nexo Capital, and Nexo Capital held those assets in its custody. Doc. 2 ¶ 51. According to Nexo Capital, sometime after February 2021 but before March

9, 2021, Nexo Capital amended its Earn Terms to include the following forum selection clause:

> Any dispute arising out of or in connection with the Agreement (the [Earn] Terms), unless amicably settled between the Parties, shall be referred to a competent court in London, England, determined as per the procedural law of England and Wales.

Doc. 5-5 at 9. Nexo Capital does not claim (let alone prove) that it gave notice of this amendment to its users. *See generally* Doc. 5.

### III.  Nexo Capital sells unregistered securities and is barred from doing business in the United States.

Nexo Capital's EIP was effectively a Ponzi scheme. Doc. 2 ¶ 47. On January 19, 2023, the Securities Exchange Commission released a Cease-and-Desist Order against Nexo Capital Inc. (the "SEC Order"). *See* Doc. 2-12. As part of the SEC Order, the SEC determined that Nexo Capital, via its EIP product, was selling an unregistered security. *Id.* ¶ 49. As a result, per agreement, the SEC ordered Nexo Capital to (1) pay $22.5 million to the SEC, (2) cease the EIP as to all U.S. investors by April 1, 2023, and (3) exit the United States shortly thereafter. *Id.*

### IV.  Nexo Capital unlawfully misappropriates millions of dollars' worth of Dr. Fagan's crypto assets.

In late January or early February 2023, Nexo Capital notified Dr. Fagan that Nexo was ceasing operations in Texas and that he was required to transfer his account balance from the Nexo platform by April 1, 2023. Doc. 2 ¶ 52. When Dr. Fagan attempted to withdrawal his assets, however, Nexo Capital froze him out of his account. *Id.* ¶ 60. Despite several requests, Nexo Capital did not restore Dr. Fagan's access to his account until approximately May 2023. *Id.* ¶¶ 66–76. At that time, Dr. Fagan reviewed his account's

transaction history and saw approximately $2 million of cryptocurrency had been transferred out of his account. *Id.* ¶¶ 69, 76. Dr. Fagan did not request, authorize, or approve any of these transactions. *Id.* Dr. Fagan's attorney sent Nexo Capital a demand letter on November 9, 2023, to resolve this issue. *Id.* ¶ 78. Nexo Capital failed to resolve the issue, thus necessitating this lawsuit. *Id.*

**V.    Nexo Capital opts for a Cayman Islands forum selection clause.**

According to Nexo Capital, on November 30, 2023—only three weeks after Dr. Fagan sent Nexo Capital a demand letter—Nexo Capital amended its Earn Terms to include the following forum selection clause:

> Any dispute arising out of or in connection with the Agreement (the General Terms), unless amicably settled between the parties, shall be referred to the competent court in the Cayman Islands, determined as per the procedural law of the Cayman Islands.

Doc. 5-2 ¶ 27; Doc. 2 ¶¶ 27, 78. Again, Nexo Capital does not argue that it gave notice of this amendment to its users. *See generally* Doc. 5.

## RESPONSES TO STATEMENT OF THE ISSUES

Per Local Rule CV-7(1), Dr. Fagan responds to Nexo's Statement of the Issues as follows:

1. The Court should not dismiss the action under *forum non conveniens* because Nexo Capital has not identified a valid contract that contains an enforceable forum-selection clause.

2. The Court should not transfer this case to the Northern District of Texas, Fort Worth Division, pursuant to 28 U.S.C. § 1404(a) because Nexo has not shown that

4

the Northern District is clearly a more convenient venue than the Eastern District, as is necessary to disregard Dr. Fagan's choice of forum.

## ARGUMENTS

**I.    The Court should not dismiss this case based on *forum non conveniens* because Nexo Capital has not identified an enforceable forum-selection clause.**

A forum-selection clause pointing to a state or foreign forum can be enforced only if "the forum-selection clause is part of a valid contract." *Scrum Alliance, Inc. v. Scrum, Inc.*, Civ. A. No. 4:20-CV-227, 2021 WL 798310, at *2 (E.D. Tex. Feb. 26, 2021) (citation omitted). If the moving party satisfies that burden, the Court must determine the enforceability of the clause. *Id.*; *see also Bournes v. Greystar Mgmt. Servs., L.P.*, Civ. A. No. H-05-2849, 2006 WL 8448179, at *2 (S.D. Tex. May 31, 2006).[1] A forum selection clause is not enforceable unless it "contain[s] language that clearly designates a forum as the exclusive one." *Jeong v. Nexo Fin. LLC*, Case No. 21-cv-02392, 2022 WL 174236, at *28 (N.D. Cal. Jan. 19. 2022).

Here, Nexo Capital has not shown that the forum-selection clause is part of a valid contract. Even if Nexo Capital could make that showing, the forum-selection clause is unenforceable.

**A.    The Earn Terms and Service Terms are contained within browsewrap agreements, which do not form a valid contract between Nexo and Dr. Fagan.**

As explained above, to be enforceable, a forum-selection clause must be part of a valid contract. *Id.* Under Texas law, a binding contract requires, among other things,

---

[1] As *Bournes* states, "a party seeking to compel a litigant to arbitrate a case bears the burden of establishing that a valid contract of arbitration exists." 2006 WL 8448179, at *2. This logic applies to forum-selection clauses, given that "in relevant aspects, there is little difference between" arbitration clauses and forum-selection clauses. *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 36 (5th Cir. 1997).

5

mutual assent. *Hackaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018). Nexo contends that the "parties' relationship with respect to the EIP and the various services associated with [Dr.] Fagan's Nexo account are governed by" the Earn Terms and the Nexo Services General Terms and Conditions ("Services Terms"). Those terms are posted on Nexo's website, and Nexo Capital contends that Dr. Fagan was bound by those terms "[a]s a condition of using Nexo's platform." *See* Mot. 3, 7. Courts have labeled these types of agreements as "browsewrap" agreements. *See Sw. Airlines Co. v. BoardFirst, L.L.C.*, Civ. A. No. 3:06-CV-08910B, 2007 WL 4823761, at *4 (N.D. Tex. Sept. 12, 2007) (citation omitted).

Browsewrap agreements "do not require the user to manifest assent to the terms and conditions expressly." *Id.* In other words, "the user need not sign a document or click on an 'accept' or 'I agree' button." *Id.* Courts find browsewrap agreements valid only when "a website user has actual or constructive knowledge of a site's terms and conditions prior to using the site." *Id.* "Absent actual knowledge, a website owner can show constructive notice by showing that: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Masry v. Lowe's Companies, Inc.*, Case No. 24-cv-00750-CRB, 2024 WL 3228086, at *6 (N.D. Cal. June 28, 2024) (citation and internal quotation marks omitted).

Nexo has not alleged that Dr. Fagan had actual or constructive knowledge of Nexo's terms and conditions.[2] Nor could it. Nexo's terms and conditions are buried at the bottom of its website amongst thirty-five similar links.[3] To view those links, users must scroll to the bottom of the page. *Id.* The "login" and "sign up" buttons, however, are in the top right corner of the website. *Id.* Therefore, users would have no reason to scroll through the webpage looking for inconspicuous links to various "terms." *Id.*; *see also Masry*, 2024 WL 3228086, at *6.

Courts routinely refuse to enforce these types of terms and conditions. *See, e.g.*, *id.* at *7 (refusing to enforce terms when they are "found at the bottom of the [page], require the user to open the page on a different screen, and are accessible via a conspicuous hyperlink"); *see also Hunt v. CheapCaribbean.com, Inc.*, No. 3:09-CV-0622-K, 2009 WL 10704881, at *4 (N.D. Tex. June 23, 2009) (declining to enforce a browsewrap agreement where the hyperlink to the terms was "mixed in with thirty-two similar links at the bottom of the webpage"). The Court, therefore, should deny Nexo's motion to dismiss for *forum non conveniens* on this basis alone.

**B.    Alternatively, the Earn Terms govern this dispute and those terms did not include an enforceable forum selection clause when Dr. Fagan opened his account.**

Even if Nexo could show that Dr. Fagan had actual or constructive knowledge of the Earn Terms when Dr. Fagan opened his account, Nexo has not shown that any amendments to those terms were reasonably communicated to Dr. Fagan. As a threshold

---

[2] Nexo's website currently requires users to affirmatively assent to the terms and conditions governing the website. But Nexo does not allege, as it must, that this action was necessary when Dr. Fagan signed up for Nexo's platform.

[3] *See* https://nexo.com/ (last visited Sept. 30, 2024).

matter, the Earn Terms—not the Services Terms—are at issue in this case. Dr. Fagan's allegations pertain to Nexo's EIP, "which pays interest . . . on certain cryptocurrencies that are deposited on the Nexo platform." Doc. 5-2 ¶ 3. The Earn Terms "provide the more specific provisions governing [the EIP]," and therefore "should govern over the more general provisions of the [Services] Terms." *Jeong*, 2022 WL 174236, at *28.[4]

Nexo concedes that when Dr. Fagan opened his account, the Earn Terms included the following forum-selection clause:

> Any dispute arising out of or in connection with the Agreement . . . shall be referred to the competent court or other dispute resolution authority, determined as per the procedural law of Nexo jurisdiction.

Doc. 5-3 at 8. "Nexo jurisdiction" is undefined and it is unclear what this ambiguous term means. Because "this clause does not clearly designate a forum as the exclusive one," it is not enforceable as a mandatory forum selection clause. *Jeong*, 2022 WL 174236, at *29 (cleaned up). The motion should be denied on this basis as well.

### 1. *Any amendments to the Earn Terms are unenforceable browsewrap agreements.*

Nexo claims that the Earn Terms governing the dispute are those that were in effect between March 9, 2021, and June 3, 2023. Doc. 5 at 3. But as Nexo concedes, those were not the Earn Terms in effect when Dr. Fagan opened his account. Doc. 5-2 ¶ 6. Rather, sometime after Dr. Fagan opened his account but before March 9, 2021, Nexo amended its Earn Terms to include a London, England forum-selection clause. Doc. 5 at 4. Nexo

---

[4] Even if the Services Terms applied to this dispute, those terms are illusory because they give Nexo the right to amend the agreement at any time. *See* Doc. 5-4 at 16, Doc. 5-6 at 16, Doc. 5-8 at 18, Doc. 5-10 at 18. Therefore, there is no valid contract and thus no valid forum-selection clause. This is discussed in detail in Section I.B.2.

argues this version of the Earn Terms governs the proceedings because it was in effect during "the time period when [Dr.] Fagan's Fixed Terms were first created and then auto-renewed." *Id.* Even if that this is correct, Dr. Fagan is not bound by amendments to the Earn Terms unless he assented to those amendments.

Nexo does not have "carte blanche to make any kind of change whatsoever [to a contract] as long as a specified procedure is followed." *Pliszka v. Axos Bank*, Case No. 24-cv-445-RSH-SBC, 2024 WL 4194338, at *5 (S.D. Cal. Sept. 13, 2024). Nor does Dr. Fagan have an "obligation to check the terms on a periodic basis to learn whether they have been changed by the other side." *Id.* Rather, "in order for changes in terms to be binding pursuant to a change-of-terms provision in the original contract, both parties to the contract—not just the drafting party—must have notice of the change in contract terms." *Id.* (quoting *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020)). Nexo, therefore, has the burden to show that Dr. Fagan had notice of and assented to the amendment to the forum-selection clause in the Earn Terms. Nexo has not put forth any allegations (let alone evidence) of such notice and assent.

> **2.** ***Even if Dr. Fagan was notified of the amended Earn Terms, those terms are illusory and cannot form a valid contract.***

The latest version of the Earn Terms that Nexo contends is applicable to this dispute renders the agreement illusory. That section states:

> Nexo shall reserve its right to amend or supplement these [Earn] Terms from time to time. Any such amendments or supplements shall become valid and in full force as of the date of their publishing on the Nexo Platform, unless otherwise indicated. You shall regularly check the Nexo Platform to inform yourself about any such amendments or supplements. By continuing to use the Nexo Earn Interest Product, after any such amendments or supplements have taken effect, you thereby indicate your acceptance of the amended or

9

> supplemented [Earn] Terms. If you do not wish to be bound by any amendments or supplements to these [Earn] Terms, you shall discontinue your use of the Nexo Earn Interest Product immediately.[5]

Greaves Aff. Ex. 7 at 10. Nexo, therefore, could unilaterally avoid its obligations under any purported forum-selection clause. "In effect, the agreement allows [Nexo] to hold [its users] to the promise to [abide by the forum-selection clause] while reserving its own escape hatch." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 206 (5th Cir. 2012). Under these circumstances, Nexo cannot invoke the forum-selection clause. *Id.*; *see also Jacob v. Steward Ptrs. Global Advisory, LLC*, No. 1-23-CV-01179-DII, 2024 WL 3440455, at *4–5 (W.D. Tex. July 17, 2024) (declining to compel arbitration where the purported contract gave the defendant the sole power to modify terms and was thus illusory); *Harris v. Blockbuster Inc.*, 622 F. Supp. 2d 396, 399 (N.D. Tex. 2009) (holding that "Terms and Conditions" were "illusory" because Blockbuster could "unilaterally change any part of the contract" by posting modifications on its website). Nexo's motion to dismiss should therefore be denied.

### 3. *Alternatively, the forum-selection clause is unreasonable and should not be enforced.*

Nexo identifies eight different contracts that were purportedly in effect at various relevant points in time. As this Court has explained, however, the relevant forum-selection clause is the one in effect at the beginning of the litigation because "venue is determined at the time a complaint is filed." *Scrum*, 2021 WL 798310, at *3. When Dr. Fagan filed his

---

[5] The Services Terms have included a version of this clause since Dr. Fagan opened his account. *See* Doc. 5-4 at 16, Doc. 5-6 at 16, Doc. 5-8 at 18, Doc. 5-10 at 18.

complaint, the Earn Terms and the Services Terms included mandatory forum-selection clauses pointing to the Cayman Islands. *See* Doc. 5 at 8 n.4.

This is unenforceable because the clause was procured by fraud. *See Weber Aircraft, L.L.C. v. Krishnamurthy*, No. 4:12CV666, 2013 WL 1898280, at *4 (E.D. Tex. Apr. 12, 2013) (explaining "a forum-selection clause is unenforceable if the inclusion of that clause in the contract was the product of fraud or coercion"). In January 2023, the SEC issued a Cease-And-Desist Order finding that Nexo's EIP was an unregistered security being sold to United States investors and ordering that Nexo (and its affiliated entities) cease the EIP as to all United States investors by April 1, 2023, and exit the United States entirely shortly thereafter. Doc. 2 ¶ 31. Moreover, Dr. Fagan sent Nexo a demand letter on November 9, 2023, alerting Nexo that suit was imminent. *Id.* ¶ 78. On November 30, 2023, *days* after Dr. Fagan sent the demand letter, Nexo amended its Earn Terms to change the mandatory forum selection clause from London to the Cayman Islands. Doc. 5 at 8 n.4. Nexo made that change likely fearing an onslaught of lawsuits by United States investors, including Dr. Fagan. Thus, the forum-selection clause is unenforceable.

Moreover, it would be unreasonable to enforce a Cayman Islands forum-selection clause in this case. *See Franklin v. Cleo AI Inc.*, Civ. No. 1:24-cv-00146-JMC, 2024 WL 3487778, at *7 (D. Md. July 19, 2024). Dr. Fagan lost millions of dollars in assets as a result of Nexo's conduct. *See generally* Doc. 2. It would be fundamentally unfair to force him to use the resources he has left to hire a lawyer and litigate this lawsuit in the Cayman Islands. *See Franklin*, 2024 WL 3487778, at *7 (declining to enforce a forum-selection clause when it would "be gravely inconvenient" and "result in forcing Plaintiffs to litigate

11

their claims in a forum with little connection to th[e] case"). For these reasons, Nexo's motion to dismiss for *forum non conveniens* should be denied.

## II.    The Court should not transfer this case to the Northern District of Texas.

Nexo—a Cayman Islands entity—next argues that the Court should transfer this case to the Northern District of Texas under 28 U.S.C. § 1404(a). Dr. Fagan agrees that this action could have been brought in the Northern District of Texas since "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3). Thus, the relevant question is whether a transfer would serve the "convenience of parties and witnesses" and be "in the interest of justice." *See* 28 U.S.C. 1404(a). Nexo bears the burden of showing that the transferee venue (here, the Northern District of Texas, Fort Worth Division) is "clearly more convenient" than the transferor venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

The Fifth Circuit has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Id.* The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* All these factors are neutral. Nexo, therefore, has not

12

met its burden to show that the Northern District of Texas, Fort Worth Division is "clearly more convenient" than the Eastern District of Texas, Sherman Division. *Id.*

> ### A.   The private interest factors do not weigh in favor of transfer.
> #### 1.   *The "relative ease of access to sources of proof" factor is neutral.*

"Courts analyze this factor in light of the distance that documents or other evidence must be transported from their existing location to the trial venue." *VanHauen v. Am. Home Mortg. Servicing, Inc.*, No. 4:11-CV-461, 2011 WL 6955708, at *3 (E.D. Tex. Dec. 15, 2011) (citation omitted). As this Court has explained, "[t]his factor will rely on which party has a greater volume of documents relevant to the litigation, and their presumed location in relation to the transferee and transferor venues." *Id.*

"[W]hen the vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis." *Implicit, LLC v. Wayfair Inc.*, Civ. A. No. 4:22-cv-00940, 2024 WL 3878421, at *3 (E.D. Tex. Aug. 20, 2024) (cleaned up). This case involves the theft of cryptocurrency that Dr. Fagan invested in Nexo's online platform. *See* Doc. 2. Given the nature of the dispute, "most of the relevant evidence is electronically stored." *See Open Foundation v. Local Ventures & Investments, LLC*, Case No. 6:18-cv-1322-Orl-37DCI, 2019 WL 13126191, at *3 (M.D. Fla. Jan. 31, 2019) (finding this factor neutral in a cryptocurrency dispute).

Nexo concedes that it "maintains any relevant records outside of the United States that would be available in either district." Doc. 5 at 18. Moreover, Dr. Fagan, as an individual, likely has few relevant documents stored on his devices. Because those documents are not "so voluminous that their transport is a major undertaking," the

13

location of those documents has minimal weight in the transfer analysis. *Francis v. Api Tech. Servs., LLC*, Case No. 4:13-CV-627, 2014 WL 11462447, at \*7 (E.D. Tex. Apr. 29, 2014). In any event, taking those devices to the Fort Worth federal courthouse—located approximately 120 miles from Dr. Fagan's hometown—is hardly "clearly more convenient" than taking them to the Sherman courthouse—located approximately 200 miles from Dr. Fagan's hometown. Therefore, this factor is neutral. *See id.* (finding this factor neutral where "there are documents located in many locations" and "many of these documents can be produced to the opposing party electronically").

### 2. *The "availability of compulsory process" factor is neutral.*

Nexo does not identify a single witness who is outside of the Court's subpoena power. *See* Doc. 5 at 19; *see also VanHauen*, 2011 WL 6955708, at \*3 (finding this factor neutral where defendant did not identify "any third-party witnesses that reside within 100 miles of either the Eastern or Northern Districts"). Nevertheless, Nexo claims that "[m]ost if not all domestic witnesses to this matter likely reside in Comanche County, Texas." Doc. 5 at 19. Nexo does not explain how those witnesses—if they even exist—are subject to the subpoena power of the Northern District of Texas, Fort Worth Division, considering Fort Worth is more than 100 miles from some parts of Comanche County.[6] To the extent that Nexo is referring to Dr. Fagan, he is, of course, within the subpoena power of either court as the named plaintiff. Therefore, this factor is neutral.

---

[6] https://www.google.com/maps/dir/Comanche+County,+Texas/Fort+Worth,+Texas/data=!4m8!4m7!1m2!1m1!1s0x8650fee88ca9b4b7:0xf59640e69e1a22c5!1m2!1m1!1s0x864e6e122dc807ad:0xa4af8bf8dd69acbd!3e0?sa=X&ved=1t:2040&ictx=111 (last visited Oct. 1, 2024).

### 3. *The "cost of willing witnesses" factor is neutral.*

Again, Nexo has failed to identify any "specific witnesses that may have relevant knowledge and who would have to travel to testify." *Id*. This alone renders this factor neutral. *Id*. In any event, the Fifth Circuit looks to the "100-mile" rule to determine the convenience of the transferee district to the witnesses and parties. *Id*. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the convenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id*. Nexo distracts the Court with a claim that "[t]he Northern District of Texas is approximately half the distance to Comanche County than the Eastern District of Texas, Sherman Division." Doc. 5 at 19. But that is not the test. The test asks whether the existing venue for trial (here, Sherman) is more than 100 miles from the proposed venue (here, Fort Worth). *VanHauen*, 2011 WL 6955708, at *3. According to Google Maps, Sherman is approximately 90 miles from Fort Worth. Thus, this factor is neutral.

### 4. *The "all other practical problems" factor is neutral.*

Nexo devotes a single sentence to this factor, claiming that "trial in the Eastern District would be inconvenient and difficult for all involved." Doc. 5 at 19. This statement is conclusory, unsupported, and false. Dr. Fagan chose to litigate this case in the Eastern District, indicating that litigating in this district would not be "inconvenient and difficult" for him. And Nexo, a Cayman Islands entity represented by New York, Washington, DC, and Houston attorneys, is equally "inconvenienced" by traveling to Sherman as it would be traveling to Fort Worth. Thus, this factor is neutral.

15

**B.    The public interest factors do not weigh heavily in favor of transfer.**

Nexo concedes that (1) the administrative difficulties flowing from court congestion; (2) the familiarity of the forum with the law that will govern the case; and (3) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law are neutral in this analysis. Doc. 5 at 20. Dr. Fagan agrees. Thus, the only factor at issue is the local interest in having localized interests decided at home.

Dr. Fagan resides in the Northern District and experienced injury there, which weighs slightly in favor of transfer. *See Francis*, 2014 WL 11462447, at *10. But this is not the type of case where there is a special localized interest in the outcome, such as a claim that "call[s] into question the reputation of individuals that work and conduct business in the community." *Id.* Additionally, Nexo conducted business across the United States for years. Individuals who reside in the Eastern District and used the Nexo platform have an interest in the resolution of this case. Therefore, while this factor may weigh slightly in favor of transfer, it does not rise to the good cause necessary to transfer a case under § 1404(a).

In summary, Nexo makes only two real arguments to support its motion to transfer venue: (1) Dr. Fagan's computer and phone are physically in Comanche County, Texas, and (2) Dr. Fagan experienced injury in Comanche County, Texas. As explained above, when documents are electronically stored (as here), the location of documents bears little weight. *Implicit, LLC v. Wayfair Inc.*, Civ. A. No. 4:22-cv-00940, 2024 WL 3878421, at *3 (E.D. Tex. Aug. 20, 2024) (cleaned up). Moreover, residents across the United States— including those in the Eastern District—have an interest in the resolution of this case. For these reasons, Nexo has not shown that the Northern District of Texas, Fort Worth Division is "clearly more convenient" than the Eastern District of Texas, Sherman

16

Division—Dr. Fagan's chosen forum. *See In re Volkswagen*, 545 F.3d at 315. The Court should therefore deny Nexo's request to transfer venue.

## CONCLUSION

For these reasons, Dr. Fagan requests that the Court deny Nexo's Motion in its entirety.

October 7, 2024                                 Respectfully submitted,


                                                **REESE MARKETOS LLP**


                                                By: */s/ Tyler J. Bexley*
                                                     Tyler J. Bexley
                                                     Texas Bar No. 24073923
                                                     tyler.bexley@rm-firm.com
                                                     Jamison M. Joiner
                                                     Texas Bar No. 24093775
                                                     jamison.joiner@rm-firm.com
                                                     Allison N. Cook
                                                     Texas Bar No. 24091695
                                                     allison.cook@rm-firm.com
                                                     750 N. Saint Paul St. Ste. 600
                                                     Dallas, Texas 75201-3201
                                                     Telephone: (214) 382-9810
                                                     Facsimile: (214) 501-0731


                                                **ATTORNEYS FOR PLAINTIFF**


### CERTIFICATE OF SERVICE

        I hereby certify that on October 7, 2024, a true and correct copy of this document was served on all counsel of record pursuant to the Federal Rules of Civil Procedure.


                                                 */s/ Tyler J. Bexley*
                                                Tyler J. Bexley


18