UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| PETER FAGAN, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Cause No. 4:24-cv-00466 |
| | § | |
| NEXO CAPITAL, INC. and ANTONI | § | |
| TRENCHEV, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS UNDER RULES 12(b)(2) and 12(b)(6)**

Plaintiff Peter Fagan ("Dr. Fagan") responds to Defendants' Motion to Dismiss

Under Rules 12(b)(2) and 12(b)(6) as follows:

**TABLE OF CONTENTS**

Introduction ...........................................................................................................................1

Statement of the issues ........................................................................................................2

Argument ..............................................................................................................................2

I.    The Court should exclude the evidence that Nexo improperly attached to its
motion. ......................................................................................................................2

II.    Trenchev is subject to personal jurisdiction. ..........................................................3

    A.    Dr. Fagan need only make a prima facie showing of personal jurisdiction...3

    B.    The Court has specific jurisdiction over Trenchev. ......................................4

III.    Dr. Fagan adequately pleaded his claims. ...............................................................9

    A.    Dr. Fagan adequately pleaded his claims against Nexo for violation of the
Texas Theft Liability Act and conversion. ....................................................9

    B.    Dr. Fagan adequately pleaded his claim against Nexo for negligence.........13

        1.    The economic loss rule does not bar Dr. Fagan's negligence claim..14

        2.    Dr. Fagan can plead negligence and fraud in the alternative. ..........16

    C.    Dr. Fagan adequately pleaded his claims against Nexo and Trenchev for
violation of federal and Texas securities laws. ...........................................18

        1.    Dr. Fagan's securities fraud claims are not "founded solely on
conversion." ....................................................................................18

        2.    Dr. Fagan adequately pleaded his securities fraud claims under Rule
9(b)..................................................................................................19

        3.    Dr. Fagan pleaded a recoverable loss. .............................................22

        4.    Dr. Fagan's purchase of the EIP product was a domestic transaction.
........................................................................................................23

    D.    Dr. Fagan adequately pleaded his claim against Nexo for fraud. ...............25

    E.    Dr. Fagan adequately pleaded his claim against Nexo for violation of EFTA.
........................................................................................................................26

    F.    Dr. Fagan adequately pleaded his claims against Nexo for equitable relief.
........................................................................................................................29

IV.    Alternatively, the Court should grant Dr. Fagan leave to amend to cure any
pleading deficiencies. ............................................................................................30

Conclusion ..........................................................................................................................30

**INTRODUCTION**

Defendant Nexo Capital, Inc. is a cryptocurrency platform founded by Defendant Antoni Trenchev, who supervises its day-to-day operations, including compliance with applicable legislation, rules, and regulations. *See, e.g.*, Doc. 2 ¶¶ 1, 16. Through just one of its multiple product lines—the Earn Interest Product (EIP), which purportedly worked as interest bearing savings accounts where crypto assets could be deposited to earn interest income—Nexo generated some $2.7 billion from 112,000 U.S. investors, including over $70 million from more than 5,700 Texas investors. *Id.* ¶¶ 3, 20, 35–37.

But there was a major problem with the EIP: it was illegal. *Id.* ¶ 21. Worse still, Nexo made serious misrepresentations to investors about the safety of the assets they deposited with Nexo to "earn interest." *Id.* ¶¶ 40–46. To resolve mounting regulatory pressure, Nexo—with Trenchev signing on behalf of both Nexo and himself—entered settlements with federal and state regulators, including the SEC, Texas State Securities Board, and Texas Department of Banking. *Id.* ¶¶ 4, 20–22. As part of its settlements with Texas regulators, Nexo had to email its Texas investors and instruct them to remove all their assets by April 1, 2023. *Id.* ¶ 23.

Dr. Fagan was one of those Texas investors. *Id.* ¶ 51. When he tried to withdraw his assets as instructed, Nexo froze him out of his account. Dr. Fagan repeatedly requested access to the account and expressed concern that his assets were being stolen. *Id.* ¶¶ 52–81. Nexo did nothing. *Id.* When Dr. Fagan finally regained access to the account, his fears were confirmed—the assets were gone. *Id.*

Defendants agree that Dr. Fagan deposited assets with Nexo, was frozen out of his account, and then had his assets stolen. *See, e.g.*, Doc. 6 at 4. Despite all that, Defendants

Plaintiff's Response to Defendants' Motion                                                                                    1
to Dismiss Under Rules 12(b)(2) and 12(b)(6)

still suggest that they should escape liability on the pleadings alone, arguing first that Trenchev somehow is not subject to personal jurisdiction (*id.* at 7–12) then asserting a kitchen sink's worth of 12(b)(6) arguments. *Id.* at 12–25. None withstands scrutiny.

Trenchev is subject to personal jurisdiction in Texas—as he conceded in Nexo's settlement with Texas regulators. *See, e.g.*, 2-5 at 3, 17. And Dr. Fagan's 36-page First Amended Complaint adequately puts Defendants on notice of the claims against them. Accordingly, and for the reasons detailed below, the Court should deny Defendants' motion and allow this case to be decided on its merits.

## STATEMENT OF THE ISSUES

Dr. Fagan responds to Defendants' statement of the issues as follows:

- The Court should deny Trenchev's Rule 12(b)(2) motion because it has specific jurisdiction over him.

- The Court should deny Defendants' Rule 12(b)(6) motion because Dr. Fagan adequately pleaded—and put Defendants' on notice of—his claims.

## ARGUMENT

**I.    The Court should exclude the evidence that Nexo improperly attached to its motion.**

Nexo submitted two affidavits in support of its motion to dismiss, one from Trenchev (Doc. 6-1), the other from its director Augustus Greaves (Doc. 6-2). As addressed below, the Trenchev affidavit is appropriate, albeit unconvincing, because it concerns personal jurisdiction. The Greaves affidavit, however, violates settled law by purporting to inject disputed factual statements and evidence to support Defendants' 12(b)(6) motion. Fifth Circuit precedent is clear that "a court cannot look beyond the pleadings in deciding a 12(b)(6) motion." *Mathis v. City of Dall.*, No. 3:20-cv-0655-M-BH, 2020 WL 8172748, at \*2 (N.D. Tex. Dec. 30, 2020). The Greaves affidavit is neither incorporated nor

referenced in Dr. Fagan's First Amended Complaint. Doc. 2. It is thus "not proper for the Court to consider this affidavit without first converting the motion to dismiss into a motion for summary judgment," which the Court should not do at this early stage where the parties have yet to exchange initial disclosures, let alone engage in full discovery. *Wydermyer v. Janssen Pharma. Inc.*, No. 6:16-cv-1000-RWS-KNM, 2017 WL 3836143, at *1–2 (E.D. Tex. July 19, 2017). The Court should therefore "not consider the affidavit." *Id*. at *2.

## II.    Trenchev is subject to personal jurisdiction.

### A.    Dr. Fagan need only make a prima facie showing of personal jurisdiction.

To defeat Trenchev's 12(b)(2) motion, Dr. Fagan need only make a prima facie showing that the Court has personal jurisdiction. *Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). To that end, Dr. Fagan's allegations "are taken as true except to the extent that they are contradicted by [Defendants'] affidavits. Further, any genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for purposes of determining whether a prima facie case exists." *Lahman v. Nationwide Provider Solutions*, No. 4:17-cv-0305-ALM, 2018 WL 3035916, at *4 (E.D. Tex. June 19, 2018) (citations omitted).

Because the Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution, "the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees." *Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 477 (E.D. Tex. 2019) (citations omitted). "The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant" when the defendant has "minimum contacts with the forum state such that

Plaintiff's Response to Defendants' Motion                                                    3
to Dismiss Under Rules 12(b)(2) and 12(b)(6)

maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* Minimum contacts may "be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction." *Id.*

"Specific jurisdiction is proper when a plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state." *AT&T Mob. LLC v. T-Mobile USA Inc.*, No. 4:22-cv-0760-ALM, 2023 WL 186809, at *3 (E.D. Tex. Jan. 13, 2023). To make that determination, "courts consider: (1) whether the defendant has purposefully directed its activities towards the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Id.* (citations omitted). In short, "the Court's focus is on the relationship between the defendant, the forum, and the litigation" to determine whether the defendant "should reasonably anticipate being haled into court" in Texas for his contacts there. *Id.* (citations omitted). "If the plaintiff successfully satisfies the first two prongs of the specific jurisdiction analysis, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable. It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *Id.* at *4 (citations omitted).

### B.   The Court has specific jurisdiction over Trenchev.

Dr. Fagan asserts two claims against Trenchev: violation of federal securities law and violation of Texas securities law. *See* Doc. 2 ¶¶ 101–16. As detailed below, Trenchev is jointly and severally liable with Nexo for its securities fraud because he is a control

person. *Id*. ¶¶ 107, 115; *see also* 15 U.S.C. § 78t(a); Tex. Gov't Code § 4008.055(a). Trenchev nonetheless contends he is beyond the Court's jurisdiction to impose liability. Trenchev's argument boils down to three points, none of which withstand scrutiny.

*First*, Trenchev submitted an affidavit that purports to show his lack of contacts with Texas. Doc. 6-1. But that affidavit misses the mark because it does not contradict any of the jurisdictional allegations in Dr. Fagan's Complaint. *See* Doc. 2 ¶¶ 12–25; *see also* Doc. 2-5; Doc. 2-6. So Dr. Fagan's allegations are thus still taken as true, and are sufficient to establish specific jurisdiction over Trenchev. *See AT&T Mob*., 2023 WL 186809, at *2.

*Second*, Trenchev claims that if he had any contacts with Texas, they were only in his role as "director" of Nexo and thus somehow do not count for personal jurisdiction. Doc. 6 at 9–11. Yet under settled law, a party's status as a corporate officer "does not bar the exercise of personal jurisdiction." *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 794–95 (5th Cir. 2007) (rejecting argument that the court lacked jurisdiction "because [the defendant's] only contacts with Texas were in a corporate capacity"). Simply put, Trenchev cannot "hide behind his corporate status" to avoid jurisdiction "simply because he is an officer of a corporation." *Id*. at 795. Trenchev's conduct is not at the behest of Nexo; *he directs* Nexo. Trenchev is not a mere employee; he is Nexo's co-founder, director, and manager who controls Nexo and supervises its day-to-day operations, including its operations in Texas. *See, e.g.*, Doc. 2 ¶¶ 16–25; *see Peticure, LLC v. Telebrands Corp*., No. 4:08-cv-345, 2009 WL 2356120, at *3 (E.D. Tex. July 30, 2009). What's more, Dr. Fagan alleges—and Trenchev does not rebut or contradict—that Trenchev and Nexo operated as alter egos that abused their corporate form to perpetrate

Plaintiff's Response to Defendants' Motion
to Dismiss Under Rules 12(b)(2) and 12(b)(6)

5

fraud and achieve inequitable results. And Nexo does not contest jurisdiction. *See Peticure*, 2009 WL 2356120, at \*3 ("Personal jurisdiction may also be established over the corporate officer by establishing that the individual is an alter ego of a corporation over which the district court has established personal jurisdiction.").

*Third*, Trenchev urges the Court to rubber stamp the analysis of *Cress v. Nexo Financial LLC*, No. 23-cv-0882-TSH, 2023 WL 6609352, at \*7–8 (N.D. Cal. Oct. 10, 2023), which held that Trenchev was not subject to personal jurisdiction in California for defrauding another Nexo customer. Doc. 6 at 11–12. *Cress*, however, involved a wholly different jurisdictional record. And as always, "[o]ther cases presenting different allegations and different records may lead to different conclusions." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 507 (2023) (Jackson, J., concurring).

In *Cress*, the plaintiff made two jurisdictional allegations: (1) Trenchev knew the plaintiff "lived in California"; and (2) Trenchev "exercised control over Nexo and directed and/or authorized the sale of Nexo Tokens" to him. 2023 WL 6609352, at \*8. Those allegations were "conclusory" and the plaintiff failed to "point to any evidence" to support them. *Id*. So the court granted Trenchev's motion to dismiss. *Id*.

Here, by contrast, Dr. Fagan not only provided more detailed allegations but also attached supporting evidence showing Trenchev's contacts with Texas. Trenchev "is a co-founder and Managing Partner of Nexo Group, including [Defendant] Nexo Capital." Doc. 2 ¶ 16; *see also* Doc. 2-5 at 1, 4. He "is responsible for supervising day-to-to business activities of the Nexo Group companies, ensuring their compliance with applicable legislation, rules, and regulations." *Id*. That includes Texas, where Defendant Nexo Capital

sold its Earn Interest Product to more than 5,700 Texans, including Dr. Fagan, for over $70 million. Doc. 2 ¶¶ 17–20; *see also* Doc. 2-5 at 5. But Trenchev fell short in his compliance responsibilities for Texas law. In early 2023, Trenchev and Nexo were subject to intense pressure and scrutiny from regulators in Texas because of their violations of financial and securities laws. Doc. 2 ¶¶ 20–22; *see* Doc. 2-5, Doc. 2-6. And by March 2023, they had entered into settlements with both the Texas State Securities Board and the Texas Department of Banking for violating Texas law. *Id.*

There are several relevant aspects to the settlement agreements. *First*, both are signed by Trenchev. Doc. 2-5 at 19; Doc. 2-6 at 6. And while Trenchev was not a party to the settlements, their effects extended to him. Indeed, in its settlement with the Texas State Securities Board, Nexo Capital (represented by Trenchev) "consent[ed] to" entry of the agreement "on behalf of" not only "itself," but also "the Nexo Group, Nexo Inc., Nexo Financial LLC, *and Antoni Trenchev*." Doc. 2-5 at 17 (emphasis added). The Texas Department of Banking agreement likewise made plain that Trenchev had "full authority to enter into and bind [Nexo] to the terms and conditions" of the settlement. Doc. 2-6 at 1. *Second*, the agreements, like Dr. Fagan's Complaint, highlight Trenchev and Nexo's disregard and abuse of the corporate form. Doc. 2-5 at 3–6; *see also* Doc. 2 ¶¶ 16–25. *Third*, the agreements highlight various misconduct and misrepresentations by Nexo, including multiple misrepresentations from Trenchev, and explain how they violated Texas law and harmed Texas consumers. Doc. 2-5 at 4–12. *Fourth*, and perhaps most importantly, in both settlements Trenchev admits and consents to Texas jurisdiction. Doc. 2-5 at 3, 17; Doc. 2-6 at 1.

One of the conditions of the settlement with the Texas Department of Banking was that Nexo "notify all Texas customers that they are required to withdraw the entirety of their assets from the Nexo platform by April 1, 2023." Doc. 2-6 at 5. As Nexo's control person "responsible for . . . ensuring [] compliance with applicable legislation, rules, and regulations," this was Trenchev's responsibility. Doc. 2-5 at 4. Following entry of the settlement agreements, Nexo sent a targeted "Update for Clients from Texas" to its Texas customers, including Dr. Fagan. Doc. 2 ¶ 23. That update not only acknowledged the Texas settlements but also expressly acknowledged that Texas law could apply to Nexo's Texas customer's assets. *Id.* ¶¶ 23–24. Critically here, the notice also lit the fuse on Dr. Fagan being forced to withdraw assets from his Nexo accounts, which sparked the events that gave rise to this dispute. *Id.* ¶¶ 23–24, 47–85.

At bottom, Trenchev has minimum contacts with Texas. *AT&T Mob.*, 2023 WL 186809, at *3. He purposefully directed activities at Texas and availed himself of the state's benefits by, among other things, overseeing and directing Nexo's violation of Texas state law. Then, on behalf of both himself and Nexo, to try to mitigate liability for those violations, he invoked the benefits of Texas law and jurisdiction to enter into settlements with Texas regulators where he expressly consented to Texas jurisdiction. *See Frank's Casing Crew & Rental Tools, Inc. v. PMR Tech., Ltd.*, 292 F.3d 1363, 1372 (Fed. Cir. 2002) (holding that one who "voluntarily invoke[s] the jurisdiction" of a forum waives challenges to jurisdiction for related claims); *cf. Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 594 (E.D. Tex. 2019) (emphasis added) (holding that failure to challenge jurisdiction "in a previous, *unrelated* case" did not waive jurisdictional

challenge). Trenchev could anticipate being haled into court here because he consented to it. *AT&T Mob.*, 2023 WL 186809, at *3.

What's more, Dr. Fagan's claims arise from and relate to Trenchev's Texas contacts. *Id.* As discussed above, the notice that Dr. Fagan received as a result of the settlement Trenchev entered into with Texas regulators prompted the events that led to the loss of Dr. Fagan's assets and revealed Nexo's material misrepresentations and omissions. For all these reasons, Trenchev is subject to specific jurisdiction.[1]

### III.   Dr. Fagan adequately pleaded his claims.

**A.   Dr. Fagan adequately pleaded his claims against Nexo for violation of the Texas Theft Liability Act and conversion.**

Dr. Fagan's claims for conversion and violation of the Texas Theft Liability Act ("TTLA") are adequately pleaded and not barred by the economic loss rule.

*First,* Nexo argues that Dr. Fagan has not properly pleaded that Nexo unlawfully appropriated the cryptocurrency in question. Doc. 6 at 13. But Dr. Fagan's allegations on this issue are far from conclusory. Dr. Fagan alleges that:

(1) He opened an account with Nexo in February 2021 on fixed terms, meaning he could not withdraw the funds until the end of his fixed term in mid-March 2023. Doc. 2 ¶¶ 51, 55.

(2) Nexo locked him out of his account from March to May 2023. *Id.* ¶¶ 60-76.

(3) Nexo did not let him back into his account despite several requests. *Id.*

---

[1] If the Court is inclined to grant Trenchev's motion to dismiss, Dr. Fagan requests leave to conduct jurisdictional discovery into Trenchev's Texas contacts in relation to Nexo's Texas business, the Texas settlement agreements, and the communications that issued to Nexo's Texas customers as a result of those settlement agreements. This discovery would support Dr. Fagan's contention that Trenchev had minimum contacts with, and purposefully availed himself to the benefits of, Texas. *See Elevacity U.S., LLC v. Schweda*, No. 4:22-cv-0042-ALM, 2022 WL 2345741, at *2 (E.D. Tex. June 29, 2022) (exercising "broad discretion" to order jurisdictional discovery).

(4) While he was locked out of his account and before the end of his fixed term, his cryptocurrency was stolen. *Id.*

(5) Nexo's internal policies prevented withdrawals or transfers from his account while the fixed term was in place. *Id.* ¶ 71.

(6) When Nexo finally allowed him back into his account, nearly all of his assets were gone. *Id.* ¶¶ 76-77.

These facts go beyond simply stating that Nexo "stole" Dr. Fagan's cryptocurrency and are more than sufficient to give Nexo "fair notice" of Dr. Fagan's claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).[2]

*Second*, Nexo argues that Dr. Fagan has not adequately pleaded that Nexo intended to appropriate his cryptocurrency. Doc. 6 at 13. Allegations of intent, however, may be "averred generally" as long as the pleadings "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Versata Software, Inc. v. Internet Brands, Inc.*, 2012 WL 226640, at *3 (E.D. Tex. Jan. 17, 2012). Dr. Fagan alleges that Nexo intended to deprive him of his cryptocurrency, coupled with facts detailing the "words, actions, [and] conduct of [Nexo]" and the suspicious timing of the activity. *See Natour v. Bank of Am., N.A.*, Civ. A. No. 4:21-CV-00331, 2022 WL 2252590, at *6 (E.D. Tex. June 22, 2022); *see also* Doc. 2 ¶¶ 51–71, 82-85. This is sufficient to meet the pleading requirement for intent under TTLA.

*Third*, Nexo contends that Dr. Fagan's claims against it for conversion and violation of the TTLA are barred by the economic loss rule. "The economic loss rule generally

---

[2] Nexo seems to contend that it is equally possible that a third party stole Dr. Fagan's funds. Doc. 6 at 13. Even if that is true, it is not appropriate to dismiss a claim under 12(b)(6) because the misconduct can be explained by an alternative plausible theory. *See, e.g., Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009) (noting the court cannot determine whether plaintiff's "plausible inference . . . is equally or more plausible than other competing inferences" at the motion to dismiss stage).

precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists of only economic loss of a contractual expectancy. But it does not bar all tort claims arising out of a contractual setting." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (citations omitted). The economic loss rule does not apply here.

At the outset, the doctrine is not implicated because the Terms and Conditions that Nexo contends govern (Doc. 6 at 16) are unenforceable. *See, e.g.*, Doc. 2 ¶¶ 28–33. There is no allegation or proof that Dr. Fagan ever agreed—by "click," signature, or otherwise— to the Terms and Conditions Nexo offers. What's more, the Terms and Conditions are illusory because Nexo retains the unilateral right to "amend or supplement" them at its whim by merely posting changes to its website with no notice. Doc. 2-4 at 13; *see also Harris v. Blockbuster Inc.*, 622 F. Supp. 2d 396, 399 (N.D. Tex. 2009) (holding that "Terms and Conditions" were "illusory" because Blockbuster could "unilaterally change any part of the contract" by posting modifications on its website). Because the Terms and Conditions are not enforceable, the economic loss rule cannot be invoked. *See Velasquez v. Ramirez*, No. 04-13-00319-CV, 2014 WL 5175716, at *7 n.6 (Tex. App.—San Antonio Oct. 15, 2014, no pet.) ("Appellants also argue that the damages sought by Ramirez could only be recovered under her contract claim and not her tort claim under the economic loss rule. We disagree because we have held there was no valid contract at all.").

Even if the Terms and Conditions were enforceable, Dr. Fagan's conversion and TTLA claims turn on separate and independent duties and are thus proper. *See, e.g., Nat'l Union Fire Ins. of Pitt. v. Care Flight Ambulance Serv., Inc.*, 18 F.3d 323, 326 (5th Cir.

1994) (collecting authority) ("Texas courts have specifically recognized that because the law of conversion and bailment imposes legal duties outside any contractual agreements, separate causes of action for breach of contract and conversion may arise from the same facts."). "Contractual duties are those that arise from an agreement between the parties. Tort duties are those imposed by law—apart from and independent of promises made in a contract—to avoid injury to others." *MSMTBR, Inc. v. Mid-Atl. Fin. Co.*, No. 01-12-00501-CV, 2014 WL 3697736, at *4 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citations omitted). The economic loss rule thus does not apply "if the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties." *Id.* The court's analysis in *MSMTBR* illustrates this point.

There, the plaintiff bought car installment sales contracts and held title to the vehicles as collateral. *Id.* at *2. As here, the alleged contract aimed to generate profit off an underlying asset. *Id.* The defendant then sold vehicles for its own benefit. *Id.* Like Dr. Fagan, the plaintiff sued for conversion and violation of the TTLA. *Id.* at *4. And like Nexo, the defendant contended those claims were barred by the economic loss rule "because the duties [it] allegedly breached are based on contractual obligations that arise from an agreement between the parties and, therefore, constitute contract claims only, and do not sound in tort." *Id.* The court disagreed and held that the economic loss rule did not apply because the "duty to refrain from unlawfully or wrongfully appropriating the property of another" was independent of the contract and "ar[ose] under statutory and common law." *Id.* Other cases hold similarly. *See, e.g., Cass v. Stephens*, 156 S.W.3d 38, 69 (Tex. App.—El Paso 2004, pet. denied) (holding that the "legal duty to avoid converting" property

Plaintiff's Response to Defendants' Motion                                                    12
to Dismiss Under Rules 12(b)(2) and 12(b)(6)

"exist[ed] outside the contract" so economic loss rule did not apply); *Vickery v. Tex. Carpet Co.*, 792 S.W.2d 759, 762–63 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (holding that plaintiff could recover for conversion despite existence of contract when defendants failed to pay invoice for carpet installation then sold the building without allowing the plaintiff to retrieve the carpet). For all these reasons, the economic loss rule does not apply. *See Nat'l Union Fire*, 18 F.3d at 326–28.

*Finally*, Nexo claims that Dr. Fagan's cryptocurrency is "not specifically identifiable" and therefore not subject to a conversion or TTLA claim. Doc. 6 15. Nexo's argument hinges on its purported right to convert Dr. Fagan's cryptocurrency into a "Digital Asset" per Nexo's Earn Terms. This argument fails for several reasons. First, Nexo points to a clause that says Nexo "***might*** convert [cryptocurrency]." *Id.* (emphasis added). Nexo does not claim (nor could it at this point) that Nexo did, in fact, convert Dr. Fagan's cryptocurrency assets. And as discussed above, those terms are unenforceable. Nexo cannot rely on its actions after-the-fact under an unenforceable agreement to escape liability. Even if those terms were enforceable, Dr. Fagan's Complaint specifies the precise cryptocurrency that was unlawfully appropriated. Doc. 2 ¶ 69. At a minimum, these allegations are sufficient to survive a motion to dismiss.

### B.   Dr. Fagan adequately pleaded his claim against Nexo for negligence.

Dr. Fagan asserts a claim against Nexo for negligence. Doc. 2 ¶¶ 134–37. Nexo argues that claim is barred by the economic loss rule and Dr. Fagan's allegations of fraud. Doc. 6 at 16. Neither argument holds up.

1.   ***The economic loss rule does not bar Dr. Fagan's negligence claim.***

To start, the economic loss rule is not implicated here because, as explained above, the Terms and Conditions that Nexo contends govern (Doc. 6 at 16) are unenforceable. *See* Doc. 2 ¶¶ 28–33; Doc. 2-4 at 13; *Harris*, 622 F. Supp. at 399; *Velasquez*, 2014 WL 5175716, at *7 n.6. And even if the Terms and Conditions were enforceable, the economic loss rule "does not apply" when the alleged duty is independent of the contract and the alleged damages "extend[] beyond the economic loss of any anticipated benefit under the contract." *A-1 Am. Fence, Inc. v. Wells Fargo Bank, N.A.*, No. 1:20-cv-441, 2021 WL 7184973, at *5 (E.D. Tex. May 5, 2021) (citations omitted). That is the case here.

Assuming the Terms and Conditions are enforceable, the contract at issue here is for Nexo's EIP. Doc. 2 ¶¶ 35–42, 51–52. Dr. Fagan and other investors deposited cryptocurrency assets with Nexo. *Id.* Nexo's duty under the contract was to generate "interest" to return to those investors. *Id.*; *see also* Doc. 2-4 at 4–5. Dr. Fagan's negligence claim is based on a duty independent from that contract—the duty of ordinary care not to lose the assets that Dr. Fagan deposited with Nexo in the first place.

"The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Smocks v. United States*, No. 4:22-cv-1028-ALM-KPJ, 2024 WL 3589270, at *13 (E.D. Tex. July 2, 2024) (citations omitted). "Texas courts may impose a general duty of ordinary care on a defendant, upon consideration of certain factors, including: the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Hernandez v. Servis*

*One, Inc.*, No. 4:15-cv-0596-ALM-CAN, 2017 WL 9250311, at *3–4 (E.D. Tex. Jan. 25, 2017), *adopted by* 2017 WL 9250311 (E.D. Tex. June 20, 2017).

All those factors support imposing a general duty of care on Nexo not to lose deposited assets. From the depositor's perspective, the risk, foreseeability, and likelihood of injury are exceedingly low—if someone deposits an asset with a financial institution to earn interest, they do not expect to lose the principal. That is especially so here given Nexo's representations that risk to its investors is "very low" and that the "security of the assets held in your Nexo account is guaranteed." Doc. 2 ¶¶ 40–44. The social utility of imposing the same duty Nexo purports to hold itself to is high. *See, e.g.*, *Bd. of Gov. of Fed. Res. Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 1001 (5th Cir. 1994) ("[T]he government has an important interest in maintaining public confidence in the integrity of financial institutions."). The burden and negative consequences on Nexo, by contrast, are low. That is why the common law has imposed such a duty in similar situations for a hundred years. *See, e.g.*, *First State Bank of Lyford v. Parker*, 27 S.W.2d 279, 281 (Tex. Civ. App.—San Antonio 1930, writ dism'd w.o.j.) (citing *Glasscock v. First Nat'l Bank*, 266 S.W. 393 (Tex. 1924)) ("A bank is liable for money deposited with it, regardless of how it may be lost."); *Gilstrap v. Beakley*, 636 S.W.2d 736, 741 (Tex. App.—Corpus Christi 1982, no writ) ("A creditor in possession of property securing a debt owes a duty of ordinary care to secure and preserve the property."). For all these reasons, the Court should impose a general duty of care on Nexo to preserve the assets that Dr. Fagan deposited. *See Hernandez*, 2017 WL 9250311, at *3–4.

Dr. Fagan has likewise pleaded injury and damages that "extend[] beyond the

economic loss of any anticipated benefit under the contract." *A-1 Am. Fence*, 2021 WL 7184973, at *5 (citations omitted). The anticipated benefit under the contract was interest earned on Dr. Fagan's deposits. *See* Doc. 2 ¶¶ 40–44. Dr. Fagan's negligence claim focuses on a separate harm: the loss of his underlying cryptocurrency assets. What's more, Dr. Fagan seeks damages to compensate him for all "harm that has been caused" by Nexo's negligence. Doc. 2 at 35. That includes, for example, out-of-pocket damages that are necessarily beyond the contract. *See Hernandez*, 2017 WL 9250311, at *3–4.

In sum, the economic loss rule does not apply because the Terms and Conditions that Nexo contends govern are not enforceable and, even if they were, Dr. Fagan's negligence claim presents an independent duty and damages.

### 2. *Dr. Fagan can plead negligence and fraud in the alternative.*

The lion's share of Dr. Fagan's claims admittedly focus on alleged intentional conduct by Defendants. There is a reason for that focus: Nexo contends that it "has never been hacked," suggesting that whoever took Dr. Fagan's assets was internal to Nexo. Doc. 2 ¶ 69 n.2. But aware of the possibility that statement was false—or even that someone at Nexo made an unintentional mistake in the absence of a hack—Dr. Fagan asserted an alternative claim for negligence premised on Nexo "transferring and/or withdrawing Dr. Fagan's funds and redirecting them to an account that does not belong to Dr. Fagan and that Dr. Fagan does not have access to." *Id.* ¶ 136; *see also True Believers Ink 2, Corp. v. Russel Brands, LLC*, No. 4:18-cv-0432-ALM, 2019 WL 4039888, at *3 (E.D. Tex. Aug. 27, 2019) (citations omitted) (explaining that "it is unnecessary" for a party to "clearly indicate that it was pleading in the alternative" because "magic words are not required to

take advantage of utilizing Rule 8 . . . which specifically authorizes alternative, hypothetical, or inconsistent pleading").

Defendants argue that Dr. Fagan is barred from asserting claims for negligence and fraud in the alternative. Doc. 6 at 16. Yet the Rules expressly contemplate and allow pleading alternative claims, even if they are "inconsistent." Fed. R. Civ. P. 8(d); *True Believers Ink 2*, 2019 WL 4039888, at *3. The Rules also make plain that "pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). With that guidance in mind, the Court should allow Dr. Fagan to pursue alternative claims for fraud and negligence.

No one disputes that (1) Dr. Fagan's assets were deposited in a Nexo account; and (2) those assets are now gone. Who took them and where they went are the core issues in this case. If the evidence shows intentional conduct, then Dr. Fagan will pursue his intentional tort claim; if it does not, he will pursue his negligence claim.

But that decision requires evidence. And Dr. Fagan cannot obtain evidence without the benefit of discovery. *See* Wright & Miller, 5 Fed. Prac. & Proc. § 1283 (4th ed.) ("[F]requently a party, after reasonable inquiry and for proper purposes, must assert contradictory statements when he or she legitimately is in doubt about the factual background of the case or the legal bases that underlie affirmative recovery or defense. . . . The present practice under Rule 8(d)(2) permits a party to seek inconsistent remedies in a claim for relief without being required to elect between them at the pleading stage of litigation."); *see also Mosser v. Aetna Life Ins.*, No. 4:15-cv-430-ALM, 2016 WL 125591, at *3 (E.D. Tex. Jan. 12, 2016) (denying motion to dismiss inconsistent claims at pleading stage). Accordingly, and to do justice in recovering assets that all parties agree Dr. Fagan

was wrongfully deprived of (*see* Doc. 6 at 6), the Court should permit Dr. Fagan to pursue alternative claims for fraud and negligence.[3]

    **C.   Dr. Fagan adequately pleaded his claims against Nexo and Trenchev for violation of federal and Texas securities laws.**

    **1.   *Dr. Fagan's securities fraud claims are not "founded solely on conversion."***

Nexo first contends that Dr. Fagan cannot assert a securities fraud claim because the fraud was "predicated entirely on the theft of the cryptocurrency placed with Nexo as part of the EIP." Doc. 6 at 17. Dr. Fagan agrees that, as Judge Fitzwater framed it in Nexo's lead authority, "a claim founded solely on conversion or theft of securities is not recognizable under § 10(b) and Rule 10b-5." *Adv. Laser Prods., Inc. v. Signature Stock Transfer, Inc.*, No. 3:98-cv-1624-D, 1999 WL 222385, at *3 (N.D. Tex. Apr. 12, 1999). In that case, for instance, a company's former officer issued himself 300,000 shares of stock without authorization. *Id.* at *1. Judge Fitzwater held that a securities fraud claim was not viable because the plaintiff and defendant "were not part of a transaction in connection with the purchase or sale of any security." *Id.* (citations omitted). But that's not this case.

Dr. Fagan's securities fraud claims are distinct from his claims for conversion and under the TTLA. Dr. Fagan alleges that Nexo made multiple misrepresentations and omissions to induce Dr. Fagan and other investors into investing in the EIP, that Dr. Fagan relied on those representations and omissions to invest in the EIP, and that he would not have done so otherwise. Doc. 2 ¶¶ 51, 103–06, 111–14. Dr. Fagan specifically alleges that

---

[3] As detailed below, if the Court is inclined to dismiss Dr. Fagan's alternative negligence claim as foreclosed by his claim for fraud, Dr. Fagan seeks leave to amend to cure any pleading deficiencies and clarify that negligence is an alternative theory based on the premise that Nexo improperly transferred Dr. Fagan's assets rather than misappropriating the assets for themselves.

Plaintiff's Response to Defendants' Motion              18
to Dismiss Under Rules 12(b)(2) and 12(b)(6)

Nexo misrepresented that the security of its customers' assets was "guaranteed," that fixed-term EIPs would be withdrawn only on the term's due date, that customers would have "instant access" to their funds, and that withdraws must be confirmed by customers who received log-in alerts to their accounts. *Id.* Dr. Fagan likewise alleges that Nexo failed to disclose risks to his investment through unauthorized withdrawals and transfers. *Id.*

In short, Dr. Fagan contends Nexo made material misrepresentations and omissions to him about the riskiness of investing in the EIP to induce him into so investing. *See SEC v. Mapp*, 240 F. Supp. 3d 569, 580 (E.D. Tex. 2017) (explaining that a "fact is material if there is a substantial likelihood that a reasonable investor would consider the information important in making an investment decision"); *CFTC v. Mirror Trading Int'l Proprietary Ltd.*, No. 1:22-cv-635-LY, 2023 WL 3190336, at *11 (W.D. Tex. Apr. 24, 2023) (citations omitted) ("Any fact that enables an investor to assess independently the risk inherent in their investment and the likelihood of profit is a material fact[, including] misstatements and omissions regarding . . . risk of loss . . . because a reasonable investor would have relied on these statements in determining whether to invest."). Because those misrepresentations and omissions were in connection with the purchase and sale of a security (the EIP) and not founded solely on conversion, they support claims for securities fraud.

### 2.   *Dr. Fagan adequately pleaded his securities fraud claims under Rule 9(b).*

To prevail on his federal securities claim, Dr. Fagan "must allege facts that, if true, establish: (1) a misstatement or omissions (2) of material fact (3) in connection with the purchase or sale of a security (4) made with scienter." *Mapp*, 240 F. Supp. 3d at 578. Dr. Fagan must allege similar facts to prevail on his claim under the Texas Securities Act

("TSA") with two key exceptions: (1) the TSA "does not require reliance by the purchaser on the seller's material misrepresentation or omission"; and (2) Dr. Fagan need not "demonstrate scienter under the TSA." *Ginsburg v. ICC Hold., LLC*, No. 3:16-cv-2311-D, 2017 WL 5467688, at *18 (N.D. Tex. Nov. 13, 2017).[4]

"Rule 9(b)'s particularity requirement generally means that the pleader must set forth the 'who, what, when, where, and how' of the fraud alleged." *Penny v. Bos. Sci. Corp.*, No. 4:20-cv-0834-ALM, 2021 WL 781539, at *2 (E.D. Tex. Mar. 1, 2021) (citations omitted). "The statement of fraud with particularity does not require detailing every instance of circumstances thought to be actionable. And surely a procedural rule ought not be read to insist that a plaintiff plead the level of detail required to prevail at trial." *Stevens v. Ford Motor Co.*, No. 2:18-cv-456, 2020 WL 12573279, at * 4 (S.D. Tex. Nov. 2, 2020) (citations omitted). Instead, "[c]ourts are to read Rule 9(b)'s heightened pleading requirement in conjunction with Rule 8(a)'s insistence on simple, concise, and direct allegations." *Penny*, 2021 WL 781539, at *2. A plaintiff's "allegations are sufficient" if they place the defendant "on notice of the nature of the fraud claim and demonstrate that [the plaintiff] ha[s] a factual basis for the allegations." *Stevens*, 2020 WL 12573279, at *4.

---

[4] Dr. Fagan additionally alleges that Trenchev is liable for securities fraud as a control person. Doc. 2 ¶¶ 107, 115; *see also* 15 U.S.C. § 78t(a); Tex. Gov't Code § 4008.055(a). Defendants' motion does not challenge this theory of liability, so it is waived. *See, e.g.*, *Loyalty Conv. Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 811 (E.D. Tex. 2014) ("Failure to raise an argument in a motion waives the argument; raising it for the first time in a reply memorandum is too late."). In any event, "[p]leading standards for control person liability are relaxed; the heightened pleading standards of Rule 9(b) do not apply, as neither fraud nor scienter is an element of such a claim. Moreover, in the Fifth Circuit the plaintiff only has to allege that the defendant possessed the power to control the primary violator, not that he exercised that power." *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 842 (S.D. Tex. 2016). Dr. Fagan clears that bar though both his allegations and the documentation attached to his First Amended Complaint, which show Trenchev co-founded and controls Nexo and supervises its day-to-day operations, including ensuring compliance with applicable legislation, rules, and regulations. Doc. 2 ¶¶ 16–25; *see also* Doc. 2-5 at 4.

Plaintiff's Response to Defendants' Motion                                                                 20
to Dismiss Under Rules 12(b)(2) and 12(b)(6)

Nexo attacks Dr. Fagan's securities fraud claims under Rule 9(b) in two ways. First, it contends that the misrepresentations identified by Dr. Fagan are irrelevant because his claims hinge on Nexo's alleged theft of his assets. Doc. 6 at 18. As detailed above, that is not true. Dr. Fagan's securities fraud claims are distinct from his claims for conversion and under the TTLA and turn on allegations that Nexo made material misrepresentations and omissions about the riskiness of his investment with Nexo. Doc. 2 ¶¶ 103–04, 111–12; *see Mapp*, 240 F. Supp. 3d at 580; *Mirror Trading*, 2023 WL 3190336, at *11.

Second, Nexo asserts that Dr. Fagan "does not allege when the purported misleading statements were made" or "that he reviewed them prior to purchasing the EIP." Doc. 6 at 18–19. Again, Nexo misreads Dr. Fagan's complaint. Dr. Fagan expressly alleges that Nexo (*who*) made the representations (*what*) "on its publicly available website" (*where* and *how*). Doc. 2 ¶¶ 51, 103–06, 111–14. He also alleges that Nexo made those representations and omissions to induce investors to buy the EIP, that he "purchased the EIP from Nexo [] based on" those representations and "would not have purchased the EIP" otherwise, and that he began investing with Nexo "in February 2021" (*when*). *Id.* That is all Rule 9(b) requires. *See, e.g.*, *Lee v. Samsung Elec. Am., Inc.*, —F. Supp. 3d—, 2024 WL 578572, at *4 (S.D. Tex. 2024) (denying motion to dismiss under Rule 9(b) because "while Plaintiffs' pleadings do not explicitly state that 'X Plaintiff saw X misrepresentation on X date on X website,' Plaintiffs do provide their dates of purchase and include citations to and screenshots and quotes of Defendant's alleged misrepresentations on various websites").

Nexo goes on to argue that the continued presence of these misrepresentations and omissions on its website somehow undermines Dr. Fagan's claim. Doc. 6 at 19 ("[T]he FAC

states that the information was gathered when Fagan's attorneys 'last visited May 22, 2024.'"). To the contrary, this bolsters Dr. Fagan's claim—especially since Nexo purports to have unilateral authority to amend its website and Terms and Conditions to its benefit. Despite the ability to take corrective action, Nexo persisted in the same misrepresentations that Dr. Fagan viewed and relied on in February 2021. Doc. 2 ¶¶ 51, 103–06, 111–14. Dr. Fagan alleged that he viewed and relied on Nexo's misrepresentations on its website to invest in the EIP in February 2021. He need not allege more. *Lee*, 2024 WL 578572, at *4.[5]

In sum, Dr. Fagan's securities fraud allegations "are sufficient to put Defendant[s] on notice of the nature of the fraud claim and demonstrate that [he] has a factual basis for [his] allegations." *Lee*, 2024 WL 578572, at *4. Rule 9(b) is thus satisfied.

### 3.   *Dr. Fagan pleaded a recoverable loss.*

In a single paragraph, Defendants claim that Dr. Fagan did not "plead any recoverable loss." Doc. 6 at 19. Their only authority for that claim is *Cress*, the California district court case against another of Nexo's defrauded investors. 2023 WL 6609352, at *15. But Defendants' argument, and their reliance on *Cress*, is off base. *Cress* held only that

---

[5] *See also Carder v. Graco Children's Prods., Inc.*, 558 F. Supp. 3d 1290, 1310–11 (N.D. Ga. 2021) (cleaned up) ("Plaintiffs have also alleged that Defendant made these representations in various places, including on Defendant's website . . . and other websites. . . . [T]he Court is unpersuaded by Defendant's suggestion that Plaintiff's claims fail under Rule 9(b) insofar as some Plaintiffs do not plead . . . the exact time, date, and price of their purchases. Defendant does not cite any authority suggesting such details are necessary for a Rule 9(b) analysis."); *Ridings v. Am. Fam. Ins.*, No. 20-cv-5715, 2021 WL 722856, at *3 (N.D. Ill. Feb. 24, 2021) (citations omitted) (rejecting argument "under Rule 9(b)" that plaintiff did "not allege how or when she supposedly saw the allegedly fraudulent statements on American Family's website or that the alleged fraud caused her to take, or refrain from taking, any action" because she "isn't required to provide the precise date, time, and location that she saw the statement or every word that was included; she must simply plead that the representation was made to her before she allegedly suffered damage"); *McGregor v. Uponor, Inc.*, No. 09-1136-ADM, 2010 WL 55985, at *4 (D. Minn. Jan. 4, 2010) (holding that allegations were sufficient under 9(b) when they "stated the misrepresentations were made . . . on the defendants' website" even though "many of plaintiffs' allegations do not identify a specific date or month" because a "plaintiff is not required to plead the exact date on which misrepresentations were made" so long as the defendant can "ascertain what is alleged" and "adequately craft a response").

Plaintiff's Response to Defendants' Motion                                    22
to Dismiss Under Rules 12(b)(2) and 12(b)(6)

the plaintiff failed to properly allege out-of-pocket damages under a California statutory provision. *Id.* Defendants provide no authority to show the same standard should apply here. Yet even if it did, "out-of-pocket damages are not the only measure of damages available in 10b-5 cases" or under the TSA. *Hanley v. First Inv. Corp.*, 793 F. Supp. 719, 723 (E.D. Tex. 1992); *see* Tex. Gov. Code §§ 4008.051, .052 (allowing recovery of rescission or damages for violations of the TSA). To the contrary, "[w]here a violation of Section 10(b) and Rule 10b-5 results in injury to a purchaser or seller of securities, federal courts may use *any available remedy to make good the wrong done*." *John R. Lewis, Inc. v. Newman*, 446 F.2d 800, 805 (5th Cir. 1971); *see also Pelletier v. Stuart-James Co.*, 863 F.2d 1550, 1558 (11th Cir. 1989) (applying Fifth Circuit precedent to hold rescission and "benefit of the bargain" damages are available under 10(b)); *Mazuma Hold. Co. v. Bethke*, 21 F. Supp. 3d 221, 235 (E.D.N.Y. 2014) (collecting authority showing that benefit of the bargain, consequential, gross economic loss, and rescissionary damages are available under 10(b)). Simply put, Defendants argue an inapt case applying the wrong law should limit Dr. Fagan's recovery. That position is wrong and should be rejected.

### 4.   *Dr. Fagan's purchase of the EIP product was a domestic transaction.*

In another single paragraph to end their argument against Dr. Fagan's securities fraud claims, Defendants make the sweeping assertion that they are not subject to federal or state securities laws because their sales of the EIP to U.S. investors such as Dr. Fagan were not "domestic transactions." Doc. 6 at 19–20. As its placement and lack of attention in their brief suggests, this strains credulity and should be rejected.

"[A] domestic transaction occurs when the purchaser incurred irrevocable liability within the United States to take and pay for a security," or "the seller incurred liability within the United States to deliver a security." *SEC v. Traffic Monsoon, LLC*, 245 F. Supp. 3d 1275, 1295 (D. Utah 2017). In other words, a transaction is domestic if there is "[e]ither a domestic purchaser or a domestic seller of a security." *Id.*; *see also SEC v. Balina*, No. 1:22-cv-0950-DAE, 2024 WL 2332965, at *8 (W.D. Tex. May 24, 2024), *appeal filed* No. 24-50726 (5th Cir. Sept. 17, 2024) ("Courts in the Second and Tenth Circuit have found that a domestic transaction occurs when either the seller or the buyer is present in the United States . . . Here, even if Balina and the relevant companies are technically located outside the United States, many of the 'buyers' in Balina's pool were in the United States . . . Accordingly, the Court finds Balina's broader challenge domesticity fails.").

Dr. Fagan is a Texas resident and U.S. citizen who bought Nexo's EIP while in the United States. *See, e.g.*, Doc. 2 ¶¶ 9, 20, 33, 51–52. The transaction was thus domestic. Common sense and a short review of the record drive this point home. By March 2022, for its EIP alone, Nexo had 112,000 U.S. investors and $2.7 billion in U.S. assets from those investors—including over 5,700 Texas investors who invested over $70 million. *Id.* ¶ 20, 33. Nexo's transactions with those investors violated federal and state securities laws. *Id.* ¶¶ 21–25, 47–50. When regulators pressed Nexo and Trenchev about those violations, did they thumb their noses and claim to be outside the reach of securities laws? No. They settled with virtually every domestic authority imaginable—the SEC, all 50 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands—for $45 million. *Id.*; *see also* Doc. 2-5 at 2. Dr. Fagan's claims arise out of the same domestic transactions at issue there.

Allowing Nexo to pick and choose when it claims to be subject to U.S. laws not only subverts U.S. law but undermines basic principles of fairness and public policy. *Balina*, 2024 WL 2332965, at *8. For all these reasons, the Court should find that Dr. Fagan's purchase of the EIP was a domestic transaction subject to domestic securities laws.

### D.   Dr. Fagan adequately pleaded his claim against Nexo for fraud.

Dr. Fagan asserts a common-law fraud claim against Nexo. Doc. 2 ¶¶ 51, 103–06, 111–14. Nexo argues that claim violates Rule 9(b) because it inadequately pleads falsity, intent, and the "when and where." Doc. 6 at 20–21. These arguments mirror Nexo's attack on Dr. Fagan's securities fraud claims and fall short for similar reasons.

Dr. Fagan's fraud claim turns on both misrepresentations and omissions that Nexo made about the riskiness of his investment in Nexo's EIP, including that the security of his assets was "guaranteed." Doc. 2 ¶¶ 51, 103–06, 111–14. Unlike the lone authority Nexo cites—where the plaintiff complained of mere "puffery" and failed to allege "any [] facts that suggest that the specific representations made by [the defendant] were in fact false" (*Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 344–45 (S.D.N.Y. 2023); *see also* Doc. 6 at 20)—Nexo's representations were demonstrably false. Doc. 2 ¶¶ 40–85. Dr. Fagan's assets are gone, so their security was anything but guaranteed.

Dr. Fagan likewise alleges that Nexo, now a known securities law violator (*see, e.g.*, *id.* ¶¶ 21–22, 47–50), made these representations and omissions on its website to induce him and other investors to buy the EIP. Doc. 2 ¶¶ 51, 103–06, 111–14. Dr. Fagan bought the EIP in February 2021 based on the representations and omissions on Nexo's website

and would not have done so otherwise. *Id.* Those allegations put Nexo on notice and are thus sufficient under Rule 9(b). *Lee*, 2024 WL 578572, at \*4; *see supra* n. 4.

### E.   Dr. Fagan adequately pleaded his claim against Nexo for violation of EFTA.

Nexo makes five cursory arguments as to why Dr. Fagan's EFTA claim should be dismissed. Not one has merit. *First*, Nexo claims that Dr. Fagan's EFTA claim is barred by limitations. The statute of limitations is an affirmative defense, and therefore, dismissal on that basis is appropriate only if "its applicability appears on the face of the pleadings. *Source Network Sales & Marketing, LLC v. Ningbo Desa Elec. Mfg. Co., Ltd.*, No. 3:14-CV-1108-G, 2015 WL 2341063, at \*11 (N.D. Tex. May 15, 2015). Nexo argues that because the transactions in question occurred more than a year before the date Dr. Fagan filed this lawsuit, his EFTA claims are barred. Doc. 6 at 21–22 (citing 15 U.S.C. § 1693m(g)). But the date of the transactions is not the relevant triggering event. Rather, under EFTA's failure to investigate provision (which Dr. Fagan invokes), "the statute of limitations begins to run ten days after the consumer provides the oral or written notice of the alleged error to the financial institution." *Apostolidis v. JP Morgan Chase & Co.*, No 11-CV-5664 (JFB) (WDW), 2012 WL 5378403, at \*6 (E.D.N.Y. Nov. 2, 2012)[6]; *see* Doc. 2 ¶ 126 (alleging that Nexo failed to investigate the unauthorized electronic funds).

It is not clear from the face of Dr. Fagan's complaint that he alerted Nexo to the alleged errors prior to May 22, 2023. The Complaint states that Dr. Fagan couldn't log in to his account until May 2023, at which time he learned of the unauthorized transfers and

---

[6] In *Randolph v. Comerica Bank et al.*, the only case cited to support Nexo's argument regarding the accrual of Dr. Fagan's claim, the plaintiff did not allege that the defendant failed to conduct a good faith investigation into his complaints. No. 3:13-CV-4810-B, 2014 WL 1694914, at \*3 (N.D. Tex. Apr. 29, 2014). Rather, the plaintiff complained strictly about the transactions themselves. *Id.* Therefore, *Randolph* is inapt.

Plaintiff's Response to Defendants' Motion                                     26
to Dismiss Under Rules 12(b)(2) and 12(b)(6)

withdrawals at issue here. Doc. 2 ¶ 76. Assuming Dr. Fagan alerted Nexo after May 22, 2023 (which is not foreclosed by the Complaint), Dr. Fagan's claim is not time barred. *See Chen v. Bank of Am., N.A.*, Case No. CV 19-6941-MWF-SK, 2019 WL 9633650, at *7 (C.D. Cal. Oct. 29, 2019) (declining to dismiss EFTA claims when the transfers occurred more than one year before the filing date but the plaintiff did not learn of the transfers until several weeks later). Therefore, the Complaint should not be dismissed on this basis.

*Second*, Nexo claims that EFTA does not apply because Dr. Fagan alleges that Nexo (rather than a third party) stole his cryptocurrency. Doc. 6 at 22. EFTA does exempt "an electronic fund transfer initiated by the financial institution or its employee" from its reach. 12 C.F.R. § 1005.2(m)(3). But as explained above, Dr. Fagan is allowed to plead alternative claims. Fed. R. Civ. P. 8(d). If the evidence shows that Nexo (or its employees) did not steal Dr. Fagan's assets, then he will pursue his EFTA claim; if the evidence shows that Nexo (or its employees) did steal Dr. Fagan's assets, then he will pursue his theft claims. Accordingly, and to do justice in recovering assets that all parties agree Dr. Fagan was wrongfully deprived of (*see* Doc. 6 at 6), the Court should permit Dr. Fagan to pursue alternative claims for conversion/violations of the Texas Theft Liability Act and violations of EFTA.[7]

For its remaining three arguments, Nexo claims that (1) Dr. Fagan's Nexo account is not covered by EFTA, (2) EFTA does not apply because the EIP is a security, and (3) EFTA does not apply to cryptocurrency generally. Doc. 6 at 23. Yet as Nexo concedes,

---

[7] As detailed below, if the Court is inclined to dismiss Dr. Fagan's EFTA claim as foreclosed by his claims for theft, Dr. Fagan seeks leave to amend to cure any pleading deficiencies and clarify that EFTA is an alternative theory based on the premise that Nexo failed to follow the requisite procedures after Dr. Fagan reported the unauthorized transfers.

Plaintiff's Response to Defendants' Motion                                                            27
to Dismiss Under Rules 12(b)(2) and 12(b)(6)

two well-reasoned opinions from the Southern District of New York rejected these exact arguments. Doc. 6 at 24 (citing *Nero v. Uphold HQ Inc.*, 688 F. Supp. 3d 134, 143 (S.D.N.Y. 2023); *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 498–99). This Court should do the same.[8]

As *Nero* explained, EFTA "cover[s] the electronic transfer of funds such as cryptocurrency" that are held in accounts that are "established primarily for personal, family, or household purposes." 688 F. Supp. 3d at 142-43 (citing 15 U.S.C. §§ 1697a(7), 1693a(2)). For what a "personal" account is, the court reasoned that "[u]nder its plain meaning, . . . an account is established primarily for a personal purpose where the natural person established the account for their individual or family use, as opposed to for a business or commercial endeavor." *Id.* As to the defendant's argument that securities are exempted from EFTA, the court explained that EFTA excludes "any *transaction* the primary purpose of which is the purchase or sale of securities or commodities through a broker-dealer registered with or regulated by the [SEC]." *Id.* By its terms, this exclusion does not apply to accounts. *Id.* Additionally, here the SEC found that Nexo never filed a registration statement for the offer and sale of the EIP; therefore, the EIP was not sold through a "broker-dealer registered with or regulated by the SEC." Doc. 2-12 at 2. The Court should adopt Judge Cote's reasoning in *Nero* and *Rider* and decline to dismiss Dr. Fagan's EFTA claims.[9]

---

[8] Judge Cote's analysis in *Nero* addressed a threshold legal question about the characterization of cryptocurrency under EFTA. Unlike the fact-bound jurisdictional analysis from *Cress* that Defendants urge the Court to adopt (Doc. 6 at 11–12) to allow Trenchev to escape liability, Judge Cote's holding is not affected by the differing allegations and records in that case and here. *Cf. Taamneh*, 598 U.S. at 507 (Jackson, J., concurring)

[9] *Nero* disagreed with the *Yuille* opinion, cited in Nexo's brief. Doc. 6 at 23 (citing *Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 341 (S.D.N.Y. 2023). As the court in *Nero* explained, the *Yuille* court improperly

**F.    Dr. Fagan adequately pleaded his claims against Nexo for equitable relief.**

Defendants contend that Dr. Fagan's equitable claims should be dismissed because they are barred by either the existence of, or potential relief afforded by, Nexo's Terms and Conditions. Doc. 6 at 24–25. But as detailed above, those Terms and Conditions are illusory and unenforceable. And as the parties alleging Dr. Fagan's equitable claims are barred by a contract, Defendants bear the burden to prove that a *valid* agreement exists that covers the scope of Dr. Fagan's claims. *See, e.g.*, *Fortune Prod. Co. v. Conoco*, 52 S.W.3d 671, 685 (Tex. 2000); *see also French v. Moore*, 169 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("A plaintiff may recover under the equitable doctrine of unjust enrichment if a contemplated agreement is unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons."). Dr. Fagan contests the validity of the Terms and Conditions. Dismissal is thus unwarranted. *See STP Invs. LLC v. NeoTek Energy, Inc.*, No. 4:22-cv-0361-SDJ-CAN, 2023 WL 2606584, at *4 (E.D. Tex. Mar. 2, 2023) (citations omitted) (denying motion to dismiss unjust enrichment claim because the "validity of the contract may be an issue later in litigation"); *Waller v. DB3 Holds., Inc.*, No. 3:07-cv-0491-D, 2008 WL 373155, at *6 (N.D. Tex. Feb. 12, 2008) (holding that it would "be premature to dismiss the unjust enrichment claim as being foreclosed by existing contracts" when "it is possible that the contracts will later be held invalid").[10]

---

applied a "profit motive test" to exempt a cryptocurrency account from the scope of EFTA. *Nero*, 686 F. Supp. 3d at 146. The *Nero* court explained that such test "has little or no utility here because the [complaint] plausibly alleges that the asset accounts were stablished primarily for a personal and not a business purpose." *Id.* So too here. Doc. 2 ¶ 124 ("Dr. Fagan's Nexo account was established for personal purposes; he did not use the account for any commercial reasons.").

[10] Defendants also argue that Dr. Fagan's claims for unjust enrichment and constructive trust are not recognized under Texas law. They are mistaken. This Court has already "h[eld] that Texas law does allow unjust enrichment as an independent cause of action." *VocalSpace, LLC v. Lorenso*, No. 4:09-cv-350-ALM, 2010 WL 11527374, at *7 (E.D. Tex. Jan. 29, 2010); *see also CHU de Quebec – Universite Laval v.*

**IV.  Alternatively, the Court should grant Dr. Fagan leave to amend to cure any pleading deficiencies.**

If the Court is inclined to dismiss any of his claims, Dr. Fagan alternatively requests leave to amend to cure any pleading deficiencies identified by the Court. "[G]iven the nature and severity of" Dr. Fagan's allegations, "it would be improper to render a final decision based on the sufficiency of [his] pleadings rather than the merits of his claims. And while [Dr. Fagan] has already amended [his] Complaint, this is the first time the Court has addressed whether [his] pleadings sufficiently state a claim on which relief can be granted." *Meyer v. Coffey*, 231 F. Supp. 3d 137, 152 (N.D. Tex. Jan. 31, 2017). Accordingly, the Court should grant him leave to replead. *Id.*; *Ruiz de Balderas v. ETX Successor Athens*, No. 6:19-cv-58-JSK-KNM, 2020 WL 1478563, at *1 (E.D. Tex. Mar. 26, 2020) (granting leave to amend "to cure pleading deficiencies" identified by court).

## CONCLUSION

For all these reasons, the Court should (1) deny Trenchev's motion to dismiss for lack of personal jurisdiction or, alternatively, grant leave to conduct jurisdictional discovery; and (2) deny Defendants' motion to dismiss for failure to state a claim or, alternatively, grant leave to amend to cure any pleading deficiencies.

---

*DreamScape Dev. Grp. Holds., Inc.*, No. 4:21-cv-182-SDJ, 2022 WL 344872, at *6 (E.D. Tex. Aug. 16, 2022) (denying motion to dismiss because Fifth Circuit and "Texas Supreme Court precedent suggest[] unjust enrichment can be an independent cause of action."). The same is true of Dr. Fagan's claim for constructive trust, though authorities are more split on that issue. *EEMSO, Inc. v. Compex Tech., Inc.*, No. 3:05-cv-0897-P, 2006 WL 8437456, at *2 (N.D. Tex. Apr. 20, 2006) ("Iomed asserts that the proposed amendment is futile because a constructive trust is an equitable remedy and not a separate cause of action. But this assertion is contrary to Texas law, as courts have repeatedly recognized a cause of action for constructive trust."). In any event, the purpose of Plaintiff's claim for constructive trust was to place Defendants on notice that Dr. Fagan seeks such a remedy.

October 7, 2024                          Respectfully submitted,


                                         **REESE MARKETOS LLP**


                                         By: */s/ Tyler J. Bexley*
                                              Tyler J. Bexley
                                              Texas Bar No. 24073923
                                              tyler.bexley@rm-firm.com
                                              Jamison M. Joiner
                                              Texas Bar No. 24093775
                                              jamison.joiner@rm-firm.com
                                              Allison N. Cook
                                              Texas Bar No. 24091695
                                              allison.cook@rm-firm.com
                                              750 N. Saint Paul St. Ste. 600
                                              Dallas, Texas 75201-3201
                                              Telephone: (214) 382-9810
                                              Facsimile: (214) 501-0731


                              **ATTORNEYS FOR PLAINTIFF**


                              **CERTIFICATE OF SERVICE**

       I hereby certify that on October 7, 2024, a true and correct copy of this document was served on all counsel of record pursuant to the Federal Rules of Civil Procedure.


                                          */s/ Tyler J. Bexley*
                                         Tyler J. Bexley


Plaintiff's Response to Defendants' Motion                                    31
to Dismiss Under Rules 12(b)(2) and 12(b)(6)